Shaun Setareh (SBN 204514)
 shaun@setarehlaw.com
H. Scott Leviant (SBN 200834)
 scott@setarehlaw.com
**SETAREH LAW GROUP**
9454 Wilshire Boulevard, Suite 907
Beverly Hills, California  90212
Telephone:      (310) 888-7771
Facsimile:      (310) 888-0109

Attorneys for Plaintiff EARL FRONDA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARL FRONDA on behalf of himself, all others similarly situated, and the general public,<br><br>*Plaintiff,*<br><br>vs.<br><br>STAFFMARK HOLDINGS, INC., a Delaware Corporation; CEVA LOGISTICS, U.S., INC., a Delaware corporation; and DOES 1-50, inclusive,<br><br>*Defendants.* | Case No.: 3:15-cv-02315-MEJ<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          November 9, 2017<br>Time:          10:00 a.m.<br>Courtroom:  Courtroom B – 15th Floor<br>Judge:         Hon. Maria Elena James |

TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 2

II.   BACKGROUND .......................................................................................................... 3

III.  SUMMARY OF SETTLEMENT TERMS .................................................................. 5

IV.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL ................................... 7

      A.    Plaintiff's Claims Merit Class Action Treatment ........................................... 8

            1.    Numerosity ........................................................................................... 8

            2.    Commonality and Predominance of Common Issues ........................... 9

            3.    Typicality ............................................................................................ 10

            4.    Adequate Representation .................................................................... 11

            5.    Superiority .......................................................................................... 11

      B.    At This Stage, Plaintiff Need Only Establish That the Settlement Falls Within the
            Range of Reasonableness .............................................................................. 12

            1.    The Value of the Settlement to Class Members Is Fair, Reasonable and
                  Adequate ............................................................................................. 14

            2.    The Agreed Upon Fees and Costs Are Reasonable ............................ 17

                  a)    Plaintiff seeks reasonable fees and costs ................................. 17

                  b)    A lodestar crosscheck will support the requested fee. ............. 17

            3.    The Enhancement Award Is Reasonable ............................................ 18

            4.    The Class Notice ................................................................................ 19

V.    THE COURT SHOULD SCHEDULE A FAIRNESS HEARING ............................ 20

VI.   CONCLUSION .......................................................................................................... 21

TABLE OF AUTHORITIES

**FEDERAL CASES**

*Acosta v. Trans Union LLC*, 243 F.R.D. 377 (C.D. Cal. 2007) ...................................................7

*Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305 (6th Cir. 1980) .......7, 8

*Baldwin & Flynn v. Nat'l. Safety Associates*, 149 F.R.D. 598 (N.D. Cal. 1993) .......................................8

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ..............................................................8, 9, 10

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171 (9th cir. 1990) ........................10

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001) ..............10, 12

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ..............................................................8

*Elkins v. Equitable Life Ins. Of Iowa*, 1998 WL 133747 (M.D. Fla. 1998) ............................................12

*Hammon v. Barry*, 752 F.Supp 1087 (DDC 1990)...............................................................13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)......................................... 8, 9, 10, 11

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)....................................................10

*In re Armored Car Anti-Trust Litigation*, 472 F.Supp 1357 (ND GA 1979) ...........................................13

*In re Computer Memories Sec. Litig.*, 111 F.R.D. 675 (N.D. Cal. 1986)....................................................9

*In re Immune Response Securities Litigation*, 497 F.Supp.2d 1166 (S.D. Cal. 2007) ......................13, 14

*In re Mercury Interactive Securities Litigation*, 618 F.3d 988 (9th Cir. 2010) ................................18, 20

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993) .........................................20

*In re Southern Ohio Correctional Facility*, 175 F.R.D. 270 (S.D. Ohio 1997).......................................18

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001).............................................................18

*Lewis v. Gross*, 663 F.Supp. 1164 (E.D.N.Y. 1986) ..............................................................9

*Linney v. Cellular Alaska Partnership*, 1997 WL 450064 (N.D. Cal. 1997).....................................13, 14

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 677 (7th Cir. 1987) ...13

*Mendoza v. United States*, 623 F.2d 1338 (9th Cir. 1980)...............................................................20

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)....................................................19

*Officers for Justice v. Civil Service Commission of City and County of San Francisco*, 688 F.2d 615 (9th

   Cir. 1982)..............................................................................................................13

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) .................................17

*Pridd v. Edelman*, 883 F.2d 438 (6th Circuit 1989) ................................................................13

*Riordan v. Smith Barney*, 113 F.R.D. 60 (N.D. Ill. 1986)........................................................9

*Silber v. Mabo*, 18 F.3d 1449 (9th Cir. 1994)........................................................................19

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ................17

*Sommers v. Abraham Lincoln Federal Savings & Loan Association*, 79 F.R.D. 571 (ED PA 1978).....13

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ......................................................8, 12, 13

*Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688 (M.D. Fla. 2005) ....................11

*Valentino v. Carter-Wallace*, 97 F.3d 1227 (9th Cir. 1996) ...................................................12

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976).............................................7

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)..................................19

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ...........................................17, 18

*Wang v. Chinese Daily News*, 231 F.R.D. 602 (C.D. Cal. 2005) ........................................9, 10

*Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188 (9th Cir. 2001) .............................10

**CALIFORNIA CASES**

*Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1 (2014) ..............................................................14

**RULES**

Fed. R. Civ. P. 23.......................................................................................................... passim

**STATUTES**

Labor Code § 2699 .................................................................................................................15

**TREATISES**

*Manual for Complex Litigation Second* § 30.44 (1985)...........................................................7

**OTHER AUTHORITIES**

*Findings of the Study of California Class Action Litigation*, 2000-2006 ..................................................16

**TO THE COURT, TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

Please take notice that on November 9, 2017, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom B of the United States Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff EARL FRONDA ("Plaintiff") will and hereby does move the Court for an order granting preliminary approval of the STIPULATION AND AGREEMENT TO SETTLE CLASS ACTION AND LIMITED RELEASE ("Agreement") reached with Defendants CBS Personnel Services, LLC and Staffmark Holdings, Inc. (the "CBS Defendants"), a true and correct copy of which is attached as Exhibit 1 to the Declaration of H. Scott Leviant submitted herewith. Specifically, Plaintiff moves for an order to:

1. Grant preliminary approval of the terms of the Agreement as fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure, including the amount of the settlement; the amount of distributions to class members; the procedure for giving notice to class members; the procedure for opting out of the settlement; and the amounts allocated to the enhancement payments and attorney's fees and costs;

2. Preliminarily certify for settlement purposes the settlement Class described in the Agreement as follows: any and all individuals employed by CBS Defendants at CEVA Freight, LLC, CEVA Logistics U.S., Inc. and/or any other location of CEVA, CEVA's parents or any CEVA-related entity operating in California during the Class Period (April 17, 2011 through the date of preliminary approval of this Settlement by the Court).  Expressly excluded from the definition of "Class" or "Class Member" are any individuals directly hired by any CEVA-related entity, including CEVA Freight, LLC and CEVA Logistics U.S., Inc. for the period of time that the individuals were employed directly by any CEVA related entity, including CEVA Freight, LLC and CEVA Logistics U.S., Inc.

3. Appoint Plaintiff as representative for the settlement Class;

4. Appoint Setareh Law Group as counsel for the settlement Class;

5. Approve KCC, LLC as the settlement administrator;

6. Direct that notice issue to members of the settlement Class as provided in the Agreement; and,

7.   Schedule a final approval and fairness hearing on a date approximately 180 days after preliminary approval (April 26, 2018 is proposed) to consider whether the Agreement should be finally approved as fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure and to rule on the motion for attorney's fees, costs, and Enhancement Award submitted by Plaintiff.

Plaintiff's motion is based on this Notice, the following Memorandum of Points and Authorities, the Declarations of H. Scott Leviant and Shaun Setareh submitted herewith, all other pleadings and papers on file in this action, and any oral argument or other matter that may be considered by the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   <u>INTRODUCTION</u>

This is a putative wage and hour class action on behalf of any and all individuals employed by the CBS Defendants (temporary staffing companies) at CEVA Freight, LLC, CEVA Logistics U.S., Inc. and/or any other location of CEVA, CEVA's parents, or any CEVA-related entity operating in California during the Class Period (April 17, 2011 through the date of preliminary approval of this Settlement by the Court).  The core issues in the case were based on allegations by Plaintiff EARL FRONDA ("Plaintiff") that security checkpoints at various CEVA facilities in California resulted in legally deficient meal and rest periods and time under employer control that was not fully compensated.  CBS Defendants dispute these claims.

After discovery, the exchange of data informally, and mediation, Plaintiff and the CBS Defendants (Plaintiff and CBS Defendants collectively referred to herein as the "Parties") reached a proposed class action settlement valued at $5,600,000.00 for approximately 4,407 putative class members.[1]  The Parties believe the Settlement to be fair and reasonable, to adequately reflect the potential liability, and the result of a thorough factual and legal analyses and arms-length negotiations.

Through this Motion, Plaintiff requests certification of a settlement Class pursuant to Federal Rule

---

[1] This is the most accurate number currently, but could theoretically change very slightly when dates of employment for all Class members are confirmed for transmission to the settlement administrator.

of Civil Procedure 23 and preliminary approval of the proposed class action settlement.

This proposed settlement does not resolve the matter as to Defendant CEVA LOGISTICS, U.S., INC., though it does resolve claims by the settlement Class against any joint employers of the CBS Defendants, including CEVA Freight, LLC and CEVA Logistics U.S., Inc., to the extent that any of the claims settled as to the CBS Defendants would apply to any CEVA defendant. Excluded from the definition of "Class" or "Class Member" are any individuals directly hired by any CEVA-related entity, including CEVA Freight, LLC and CEVA Logistics U.S., Inc., for the period of time that the individuals were employed directly by any CEVA related entity, including CEVA Freight, LLC and CEVA Logistics U.S., Inc.

## II.   **BACKGROUND**

On April 17, 2015, Plaintiff filed a complaint in the Alameda County Superior Court entitled *Earl Fronda v. Staffmark Holdings, Inc., CEVA Logistics U.S., Inc., Amazon.com LLC and Does 1 through 50, inclusive*, Alameda County Superior Court Case No. RG15766849. The Litigation was brought by Plaintiff on behalf of the above-referenced Class Members and other putative class members directly employed by CEVA but not included in this proposed settlement. The following causes of action were asserted in the Complaint: (1) Failure to Provide Meal Periods; (2) Failure to Pay Hourly Wages; (3) Failure to Provide Accurate Written Wage Statements; (4) Failure to Timely Pay All Final Wages; (5) Failure to Pay Wages Without Discount; and (6) Unfair Competition. (Declaration of H. Scott Leviant ["Leviant Decl."], at ¶ 4.) On May 19, 2015, Plaintiff filed a First Amended Complaint containing the following causes of action: (1) Failure to Provide Meal Periods; (2) Failure to Pay Hourly Wages; (3) Failure to Provide Accurate Written Wage Statements; (4) Failure to Timely Pay All Final Wages; (5) Failure to Pay Wages Without Discount; (6) Unfair Competition; and (7) Civil Penalties Under the Private Attorneys General Act.

On May 22, 2015, Defendant, CEVA Logistics U.S. Inc., removed this action to the federal District Court of California, Northern District, where it was assigned Case No. 3:15-CV-02315- MEJ. (Leviant Decl., at ¶ 5.)

On June 12, 2015, pursuant to stipulation, an Order was entered dismissing Defendant,

Amazon.com LLC as a defendant in this action. (Leviant Decl., at ¶ 6.) On July 13, 2015, Plaintiff filed a Second Amended Complaint, setting forth the following causes of action: (1) Failure to Provide Meal Periods; (2) Failure to Provide Rest Breaks; (3) Failure to Pay Hourly Wages; (4) Failure to Provide Accurate Written Wage Statements; (5) Failure to Timely Pay All Final Wages; (6) Failure to Pay Wages Without Discount; (7) Unfair Competition; and (8) Civil Penalties Under the Private Attorneys General Act. (*Id*.) On October 19, 2015, an Order was entered adding Defendant CBS Personnel Services LLC as a defendant in this action. (*Id*.)

On December 27, 2015, Plaintiff filed a Third Amended Complaint, setting forth the following causes of action: (1) Failure to Provide Meal Periods; (2) Failure to Provide Rest Breaks; (3) Failure to Pay Hourly Wages; (4) Failure to Provide Accurate Written Wage Statements; (5) Failure to Timely Pay All Final Wages; (6) Failure to Pay Wages Without Discount; (7) Unfair Competition; and (8) Civil Penalties Under the Private Attorneys General Act. (Leviant Decl., at ¶ 7.) The CBS Defendants filed an Answer to the Third Amended Complaint. (*Id*.) Through the Litigation, Plaintiff and the Class sought damages, wages, penalties, restitution, disgorgement, punitive and exemplary damages, costs, interest and attorneys' fees. The CBS Defendants deny the allegations asserted in the Litigation and assert that they have no liability for any of Plaintiff's or the Class Members' claims under any statute, wage order, rule, regulation, common law, or equitable theory. (*Id*.)

On January 4, 2017, mediation was held between the Parties with mediator, Hon. Edward A. Infante (Ret.). (Leviant Decl., at ¶ 8.) The mediation included discussion and examination of the Parties' respective positions on the legal and factual issues raised in the Litigation. (*Id*.) The matter was not resolved that day. (*Id*.) Instead, Judge Infante continued to communicate with the Parties, and a second mediation was scheduled. (*Id*.) A second day of mediation was held on April 26, 2017 between the Parties with Judge Infante acting as mediator. (*Id*.) The mediation included discussion and examination of the Parties' respective positions on the legal and factual issues raised in the Litigation. (*Id*.) After the two days of mediation, which included arms' length negotiations, the Parties agreed to settle this matter for the Settlement Sum of five million six hundred thousand dollars ($5,600,000.00). (*Id*.) There are approximately 4,407 settlement Class Members. (*Id*.)

Plaintiff and Class Counsel concluded, after taking into account the sharply disputed factual and

legal issues involved in this Litigation, the risks attending further prosecution, the discovery and investigation conducted to date, and the substantial benefits received and to be received pursuant to the compromise and settlement of the Litigation, that settlement on the terms discussed herein is in the best interests of Plaintiff and the Class. (Leviant Decl., at ¶ 9.)  Plaintiff and Class Counsel are mindful of the problems of proof they face, many of which were discussed during the mediation.  As such, Class Counsel believes that the Settlement reached is fair to the Class and confers substantial benefits on the Class, providing all Class Members with recoveries in the near term.  Based on their evaluation, Class Counsel determined that the settlement set forth in the Agreement discussed herein is in the best interest of the Class.  (*Id.*)  The Agreement, if approved by the Court, will resolve the claims of the settlement Class. (*Id.*)  The Class Representative will also execute a general release of all claims as to the CBS Defendants. (*Id.*)

III.   **SUMMARY OF SETTLEMENT TERMS**

The full terms of the settlement are set forth in the Agreement.  The primary material terms are as follows:

(a)    The settlement Class is:  any and all individuals employed by the CBS Defendants at CEVA Freight, LLC, CEVA Logistics U.S., Inc. and/or any other location of CEVA, CEVA's parents or any CEVA-related entity operating in California during the Class Period (April 17, 2011 through the date of preliminary approval of this Settlement by the Court).  Excluded from the definition of "Class" or "Class Member" are any individuals directly hired by any CEVA-related entity, including CEVA Freight, LLC and CEVA Logistics U.S., Inc. for the period of time that the individuals were employed directly by any CEVA related entity, including CEVA Freight, LLC and CEVA Logistics U.S., Inc.  (Agreement, § 1.1(b)(4).)

(b)    The Parties agree that $5,600,000.00 represents the maximum amount that the CBS Defendants will pay out under this Agreement, inclusive of the following: (a) Payments to Participating Class Members; (b) Class Counsel's attorneys' fees and litigation costs, (c) Any Administration Costs, (d) Any Enhancement

Award to the Plaintiff, and (e) The payment to the California LWDA. (Agreement, § 1.1(b)(25), (27).) The CBS Defendants will *separately* pay the employer share of payroll tax costs to the Settlement Administrator.

(c) Each Class Member who does not opt out will be paid his/her share of the Net Settlement Sum, subject to certain taxes and withholdings. (Agreement, § 3.6(b).)

(d) Class Counsel will not seek an amount greater than $1,866,666.67 for Attorney's Fees and Costs. (Agreement, § 3.6(e).)

(e) Settlement Administration costs are estimated at $25,000 and will be paid out of the Settlement. (Agreement, § 3.6(d).)

(f) The Class Representative enhancement award will be no more than $10,000. (Agreement, § 3.6(f).)

(g) The sum of $75,000 shall be paid to the Labor and Workforce Development Agency to resolve claims arising under PAGA. (Agreement, § 3.6(g).)

(h) If checks remain uncashed after ninety (90) days, a reminder postcard will be sent to those Class Members with uncashed checks, advising them to cash the check or request a replacement check. If checks remain uncashed after 150 days, a similar postcard will be sent to those Class Members with uncashed checks. At 180 days, all uncashed checks will be voided, and the funds representing the amount of voided checks will be paid as follows: 25% of the funds will be paid to the California State Equal Access Fund, 25% of the funds will be paid to the California State Treasury for deposit in the Trial Court Improvement and Modernization Fund, and 50% to Legal Aid at Work (https://legalaidatwork.org/), a non-profit organization supporting low wage earners with employment issues, which is a cy pres distribution which has been agreed to by the Parties as a directly related to the goals reflected by the statutes and regulations underlying the Class Member Claims in this litigation and

consistent with recent changes to California law governing cy pres distributions.

(Agreement, § 3.6(c)(4).)

(Leviant Decl., ¶ 10.)  A true and correct copy of the STIPULATION AND AGREEMENT TO SETTLE CLASS ACTION AND LIMITED RELEASE is attached to the Leviant Declaration as Exhibit "1."

## IV.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

The law favors settlement, particularly in class actions and other complex cases, where substantial resources can be conserved by avoiding the time, cost, and the rigors of formal litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).   These concerns apply in a case such as this, where allegedly wrongful practices potentially affected approximately 4,407 employees, in relatively small amounts.

Any settlement of class litigation must be reviewed and approved by the court.  This is done in two steps:  (1) an early (preliminary) review by the court, and (2) a final review after notice has been distributed to the class for their comment or objections.  The *Manual for Complex Litigation Second* states at § 30.44 (1985):

> A two-step process is followed when considering class settlements … if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.

When parties reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Acosta v. Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007).

"The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is '*within the range of possible approval*.'  This hearing is not a fairness hearing; its purpose, rather is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (6th Cir. 1980) [quoting Manual for Complex Litigation s 1.46, at 53-55 (West 1977)] (emphasis added).  "[T]he district court must assess whether a class exists," *Staton v. Boeing Co.*, 327 F.3d

938, 952 (9th Cir. 2003), *i.e.*, whether the lawsuit qualifies as a class action under Rule 23.  *See, e.g.,* *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (reviewing settlement to ensure compliance with requirements of Rule 23(a) and Rule 23(b)(3)).

At the second stage of the approval process, after class members have had an opportunity to object to the settlement, the court makes a final determination whether the settlement is "fair, reasonable and adequate" under Rule 23(e).  *Armstrong*, 616 F.2d at 314; *see Staton*, 327 F.3d at 952; *see also* Rule 23(e)(C)(1), which provides that a court may finally approve a settlement of a class action if it finds after a hearing that the settlement is "fair, reasonable, and adequate" and Rule 23(e)(C)(4), which provides that any class member may object to a proposed settlement.

### A.     Plaintiff's Claims Merit Class Action Treatment

At the preliminary approval stage, a plaintiff need only make a "prima facie showing" of the requirements of Rule 23.[2]  In determining the propriety of class certification, a court may not delve into the underlying merits of the claims.  The fundamental question "is not whether . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

The Ninth Circuit has established that, when ruling on the propriety of class certification, a district court "is bound to take the substantive allegations of the complaint as true."  *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).  A court "may not require plaintiffs to make a preliminary proof of their claim; it requires only sufficient information to form a reasonable judgment."  *Baldwin & Flynn v. Nat'l. Safety Associates*, 149 F.R.D. 598, 600 (N.D. Cal. 1993).  Under these standards, this action meets the requirements for certification under Rule 23(a) and Rule 23(b)(3).

#### 1.     Numerosity

Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous that joinder of all members is impracticable."  In determining whether joinder would be impracticable, a court may consider not only the sheer number of class members, *Riordan v. Smith Barney*, 113 F.R.D. 60, 62

---

[2] *See*, Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 10:573 (The Rutter Group 2006).

(N.D. Ill. 1986) (numbers alone may be dispositive), but also "the nature of the action, the size of the individual claims, [and] the inconvenience of trying individual suits." *Wang v. Chinese Daily News*, 231 F.R.D. 602, 606 (C.D. Cal. 2005). "A class action may proceed upon estimates as to the size of the proposed class." *Lewis v. Gross*, 663 F. Supp. 1164, 1169 (E.D.N.Y. 1986). *See also, In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986) (class certified where plaintiffs did not establish exact size, but demonstrated that class would "obviously be sufficiently numerous").

In this action, the Class is composed of approximately 4,407 individuals. (Leviant Decl., ¶ 35.) It is sufficiently numerous that the individual joinder of all members is impracticable.

### 2.    Commonality and Predominance of Common Issues

Federal Rule of Civil Procedure 23(a)(2) requires that there be "questions of law or fact common to the class." This commonality requirement is "construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Plaintiff need not demonstrate that all questions of fact and law are common. "The existence of shared legal issues with divergent factual predicates is sufficient." *Id.* Where a class is united by a common interest in determining whether a defendant's broad course of conduct is actionable, commonality is not defeated "by slight differences in class members' positions." *Blackie,* 524 F.2d at 901 n.17.

In this litigation, all Class Members have shared a common interest in determining whether facility security policies and procedures resulted in legally deficient meal periods and rest breaks for Class Members; whether security policies and procedures resulted in uncompensated time under the employer's control; whether, as a result of these issues, the CBS Defendants violated the itemized wage statement provisions of Labor Code § 226 by not providing accurate information as to wages; and whether the CBS Defendant's policies and practices violated California Business & Professions Code sections  17200 *et seq.*

Given the permissive standard that courts in the Ninth Circuit employ when determining commonality, certification of the Class for settlement purposes is appropriate as Rule 23(a)(2) is satisfied.

Once it is established that common issues of law or fact exist, for Rule 23(b)(3) purposes, the Court next examines whether those common issues predominate. The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender*

*Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).  Central to predominance is

"the notion that the adjudication of common issues will help achieve judicial economy."  *Zinser v. Accufix*

*Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001).  When common questions represent a

significant aspect of the case and they can be resolved for all members of the class in a single adjudication,

there is clear justification for handling the dispute on a representative rather than on an individual basis."

*Hanlon*, 150 F.3d at 1022.  It is well settled that the need for determining differing amounts of damages

suffered by different class members does not preclude class certification.  *See*, *Blackie*, 524 F.2d at 905;

*Wang*, 231 F.R.D. at 613.

There are common issues that may predominate over individual issues in this litigation.  For

example: (1) Whether CEVA facility security policies and procedures resulted in legally deficient meal

periods and rest breaks for Class Members; (2) Whether CEVA facility security policies and procedures

resulted in uncompensated time under the employer's control; (3) Whether, as a result of these issues, CBS

Defendants violated the itemized wage statement provisions of Labor Code section 226 by not providing

accurate information as to wages; and (4) Whether the CBS Defendants' policies and practices violated

California Business & Professions Code sections 17200 *et seq*.

### 3.    Typicality

Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims . . . of the

class." This factor is also construed permissively.  *See Hanlon*, 150 F.3d at 1019-20.  Representative

claims are typical "if they are reasonably co-extensive with those of absent class members; they need not

be identical."  *Id.* at 1020.  In other words, named plaintiffs need not be "identically situated" with all other

class members.  "It is enough if their situations share a common issue of law or fact and are sufficiently

parallel to insure a vigorous and full presentation of all claims for relief."  *Cal. Rural Legal Assistance,*

*Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990).

Typicality refers to the "nature of the claim . . . of the class representative, and not to the specific

facts from which it arose."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  The

typicality requirement is satisfied where "the named Plaintiffs raise the same Labor Code violations as

other putative class members."  *Id.*  Here, Plaintiff is raising the same claims as the putative class members

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND
CERTIFICATION OF SETTLEMENT CLASS**

and has alleged no other individual claims in this matter.  (Leviant Decl., ¶ 36.)

### 4.    Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Adequate representation turns on whether the named plaintiff and his counsel "have any conflicts of interest with other class members," and whether the named plaintiff and his counsel will "prosecute the action vigorously on behalf of the class."  Adequacy may be established by the mere fact that counsel are experienced practitioners.  *Hanlon*, 150 F.3d at 1020.

There are no conflicts of interest between Plaintiff and Class Members.  The similarity of the claims asserted and remedies sought by Class Members and Plaintiff do not suggest any divergent interests held by Plaintiff.  CBS Defendants did not assert unique defenses against Plaintiff that they could not assert against any other Class Member.  Also, there are no conflicts with Plaintiff's counsel.

Plaintiff's counsel has substantial class action experience and can adequately represent the Class.  They have been appointed class counsel in many wage and hour class actions against major employers.  (Leviant Decl., ¶¶ 21-26; Declaration of Shaun Setareh.)

### 5.    Superiority

In deciding whether to certify a class for settlement purposes, a court considers the following factors to determine whether a class action is superior: (a) Class members' interests in individually controlling the prosecution or defense of separate actions; (b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class; and (c) The desirability or undesirability of concentrating the litigation of the claims in the particular forum.[3]  Some courts have found that the third Rule 23(b)(3) factor is "conceptually irrelevant in the context of a settlement."  See *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005).

---

[3] Rule 23(b)(3)(A)-(C). When a court reviews a class action settlement, it does *not* consider Rule 23(b)(3)(D), the fourth factor, regarding difficulties of managing a class action. *Amchem Products Inc. v. Woodward* (1997) 521 U.S. 591, 620 (in deciding whether to certify a class for settlement purposes, a district court "need not inquire whether the case, if tried, would present intractable management problems").

1    "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious."

2    *Elkins v. Equitable Life Ins. Of Iowa*, 1998 WL 133747, at *19 (M.D. Fla. 1998).

3            To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court compares

4    a class action with alternative methods for adjudicating the parties' claims.  Lack of a viable alternative to

5    a class action necessarily means that it satisfies the superiority requirement.  *See Valentino v. Carter-*

6    *Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing

7    litigation if no realistic alternative exists").  "[I]f a comparable evaluation of other procedures reveals no

8    other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied."

9    *Culinary/Bartender Trust Fund*, 244 F.3d at 1163.  In *Culinary/ Bartender Trust Fund*, the Ninth Circuit

10   held that the "case involve[d] multiple claims for relatively small sums" and that the class action clearly

11   served as the only method that would "'permit the plaintiffs to pool claims which would be uneconomical

12   to litigate individually.'"  *Id.* at 1163.

13           The class action is superior here as it is on the only method that will allow Class Members "to pool

14   [their individual] claims which would be uneconomical to litigate individually."  *Id.*

15           The factors articulated in Rule 23(b)(3)(A), (B) and (C) also favor class certification.  It is difficult

16   to believe that any Class Members have an interest in individually controlling the prosecution of separate

17   actions, given the relatively small sums involved for any one Class Member.  Any Class Member who

18   wants to pursue a separate action can opt out of the Settlement.

19           Also, it is desirable to concentrate the issues in this forum.  The Settlement allows all individuals to

20   resolve any claims against the CBS Defendants through a process that does not even require the

21   submission of a claim form.

22

23   **B.      At This Stage, Plaintiff Need Only Establish That the Settlement Falls Within the**

24   **Range of Reasonableness**

25           No single criterion determines whether a class action settlement meets the requirements of Rule

26   23(e).  The Ninth Circuit has directed district courts to consider a variety of factors without providing an

27   "exhaustive list" or suggesting which factors are most important.  *See, Staton*, 327 F.3d at 959.  "The

28   relative degree of importance to be attached to any particular factor will depend upon and be dictated by

the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Service Commission of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "'an amalgam of delicate balancing, gross approximations and rough justice.'" *Id.* at 625. The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole." *Staton*, 327 F.3d at 961.

As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective. *Officers for Justice*, 688 F.2d at 625. Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Id.* Accordingly, the Ninth Circuit will not reverse a district court's approval of a class action settlement "unless the fees and relief provisions clearly suggest the possibility that class interests gave way to self interest." *Staton*, 327 F.3d at 961.

There is a presumption that the negotiations were conducted in good faith. Newberg, §11.51; *Pridd v. Edelman*, 883 F.2d 438, 447 (6th Circuit 1989); *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987). Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation. *Hammon v. Barry*, 752 F. Supp. 1087 (D.D.C. 1990); *In re Armored Car Anti-Trust Litigation*, 472 F. Supp. 1357 (N.D. GA 1979); *Sommers v. Abraham Lincoln Federal Savings & Loan Association*, 79 F.R.D. 571 (E.D. PA 1978). The fact that settlement results from arms-length negotiations following "relevant discovery" creates "a presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership*, 1997 WL 450064, *5 (N.D. Cal. 1997); *See In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases).

Here, the Parties reached a non-collusive settlement after months of negotiations. The settlement was finally reached after two days of arm's length negotiations before Hon. Edward A. Infante (Ret.), a highly-respected mediator skilled at helping parties attempting to negotiate reasonable settlements in wage

and hour class actions.  Obtaining class certification and establishing liability posed significant hurdles for the class that justified the settlement.  The Agreement falls well within the range of reasonable outcomes and merits approval under Rule 23(e).  (Leviant Decl., ¶¶ 8, 10, 12-19.)

## 1.   The Value of the Settlement to Class Members Is Fair, Reasonable and Adequate

The Parties reached a Settlement in good faith after negotiating at arm's length with a professional mediator.  (Leviant Decl., ¶ 8.)  Settlement occurred only after discovery commenced.  That discovery included multiple sets of interrogatories and comprehensive requests for production to all Defendants.  The Defendants (including both the settling CBS Defendants and Defendant CEVA) in this matter produced thousands of pages in response to formal discovery (followed by still more data about class composition requested and produced prior to mediation) and video footage.  The information produced in discovery, and the additional, detailed data about class composition produced for mediation, were sufficient to permit Plaintiff's counsel to adequately evaluate the settlement. And, notably, approval of a class action settlement does not require that discovery be exhaustive.  *See*, *e.g.*, *In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases).  The fact that settlement results from arm's length negotiations following "relevant discovery" creates "a presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at *5 (N.D. Cal. 1997).

With respect to the claims asserted on behalf of the settlement Class in this case, there are significant risks that support the reduced compromise amount. These risks include, but are not limited to: (i) the risk that Plaintiff would be unable to establish liability for allegedly unpaid straight time or overtime wages, *see Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1, 39 & fn. 33 (2014) ("*Duran*"), *citing Dilts v. Penske Logistics, LLC* 2014 WL 205039 (S.D. Cal. 2014) (dismissing certified off-the-clock claims based on proof at trial); (ii) the risk that Defendants' challenged employment policies might not ultimately support class certification or a class-wide liability finding, *see*, *Duran*, 59 Cal. 4th at 14 & fn. 28 *(*citing Court of Appeal decisions favorable on class certification issue without expressing opinion as to ultimate viability of proposition); (iii) the risk that uncertainties pertaining to the ultimate legality of Defendants'

policies and practices could preclude class-wide awards of statutory penalties under Labor Code sections 203 and 226(e); (iv) the risk that individual differences between settlement Class Members could be construed as pertaining to liability, and not solely to damages, *see*, *Duran*, 59 Cal. 4th at 19; (v) the risk that any civil penalties award under the PAGA could be reduced by the Court in its discretion, see Labor Code section 2699(e)(1); (vi) the risk that class treatment could be deemed improper as to one or more claims except for settlement purposes; (vii) the risk that lengthy appellate litigation could ensue, and (viii) the very substantial risk that some claims would be deemed legally *de minimis* under California law (the existence of said defense being an issue that is currently pending before the California Supreme Court). The CBS Defendants strongly deny any liability and the propriety of class certification for any reason other than settlement.  (Leviant Decl., ¶¶ 15.)  Continued litigation of this lawsuit presented Plaintiff and CBS Defendants with substantial legal risks that were (and continue to be) very difficult to assess.

In light of the uncertainties of protracted litigation, the settlement amount reflects a fair and reasonable recovery for the settlement Class Members.  (Leviant Decl. ¶¶ 12-18.)  The settlement amount is, of course, a compromise figure.  (Leviant Decl. ¶ 16.)  By necessity it took into account risks related to liability, damages, and all the defenses asserted by the CBS Defendants.  (*Id*.)  Moreover, each settlement Class Member will be given the opportunity to opt out of the Settlement, allowing those who feel they have claims that are greater than the benefits they can receive under this Settlement, to pursue their own claims. (*Id*.)  For the 4,407 members of the Class, the average gross recovery before taxes is approximately $1,270 per class member.  (Leviant Decl., ¶ 16.)  The value of this amount reflects a fair compromise well within the range of reasonableness.  Given the strong case that CBS Defendants could bring to bear to challenge certification and liability, this is not an inconsequential sum in these challenging economic times.  And, confirming the fundamental fairness of the settlement, each Class Member will be compensated ratably based on the number of workweeks they worked during the class period. (*Id*.)

The Class Settlement Amount is approximately equal to the risk-adjusted recovery at this stage in the litigation.  While Plaintiff would certainly have preferred to recover more (and CBS Defendants would have preferred to pay less), this outcome is in line with a carefully constructed estimate of the current fair value of the case.  (Leviant Decl., ¶ 17.)  On that basis, it would be unwise to pass up this settlement opportunity.  The maximum damage values are estimates based on average wage rates, numbers of

1    employees, and the amount of time covered by the class period.  (*Id*.)

2           After analyzing the claims in this matter, Plaintiff has concluded that the value of this Settlement is

3    fair, adequate and reasonable.  For example, the estimated exposure for off the clock work spent in

4    security check stations over the class period was calculated to be approximately $1,200,000.  With risk

5    factor discounts for certification and liability proof, the value of that claim is estimated by Plaintiff's

6    counsel to be approximately $400,000. And, the estimated exposure for meal period violations over the

7    class period was calculated to be approximately $3,200,000. With risk factor discounts for certification

8    and liability proof, the value of that claim is estimated by Plaintiff's counsel to be approximately

9    $1,000,000.   A similar valuation applies to the rest period claim.  Performing similar risk-adjusted

10   valuations for all claims yields a total value in the range of $5,000,000 – $7,000,000. (Leviant Decl., ¶ 18.)

11          This result here is fully supportable as reasonable.  First, rest break and meal period claims have

12   been challenging to certify for many years, even after *Brinker*.  (Leviant Decl., ¶ 19.)  Second, off-the-

13   clock pay claims have consistently proven challenging to certify.  Third, certification rates are lower than

14   conventional wisdom holds.  *See*, *e.g*., H. Scott Leviant, *Second Interim Report on class actions in*

15   *California sheds new light on certification* (February 19, 2010), www.thecomplexlitigator.com, available

16   at http://www.thecomplexlitigator.com/post-data/2010/2/19/second-interim-report-on-class-actions-in-

17   california-sheds-n.html; *see also*, *Findings of the Study of California Class Action Litigation*, 2000-2006,

18   available at http://www.courtinfo.ca.gov/reference/documents/class-action-lit-study.pdf (finding, at page 5,

19   and in Table 9, at page 15, that only 21.4 percent of all class actions were certified either as part of a

20   settlement *or* as part of a contested certification motion).  In estimating risk adjustments here, Plaintiff's

21   counsel has assumed estimated certification probabilities of 40 percent to 60 percent, depending on the

22   claim, assumptions that substantially *exceed* the average rate at which cases were certified in California

23   over the study years, based upon data available through the California Courts website.  (*Id*.)  Given that

24   well under 20 percent of all cases filed in California as proposed class actions are ultimately certified by

25   way of a contested motion, and a similar trend is seen in federal courts, it is fair to say that, if anything, the

26   use of high estimates for certification *overstates* the realistic current claim value.  (*Id*.)  It would also be

27   appropriate to evaluate the result by examining only the premium wages at issue, excluding penalties and

28

interest.[4]  Under that metric, the settlement recovered is higher than the realistic current claim value for the premium wages at issue (off-the-clock wages, meal period premiums, and rest break premiums). Viewed either way, this Settlement achieves the goals of the litigation.

By obtaining reasonable value for their claims in light of the substantial risks of litigation, Plaintiff clearly achieved a fair settlement that merits approval.

### 2.    The Agreed Upon Fees and Costs Are Reasonable

#### a)    *Plaintiff seeks reasonable fees and costs.*

The compensation sought for Plaintiff's counsel is also fair and reasonable.  The Ninth Circuit has directed that, to determine what constitutes a fair and reasonable percentage of the settlement for purposes of calculating common fund attorneys' fees, the courts should begin with a "benchmark" percentage of the total fund.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  The percentage can be adjusted upwards where the risks overcome, the benefits obtained and the work necessary to achieve those results supports such an adjustment of the benchmark.

Here, the Maximum Settlement Amount is $5,600,000.00.  Plaintiff's counsel has agreed to seek no more than $1,866,666.67 in fees **and** costs, which is appropriately in line with the risk-adjusted benchmark.  (Leviant Decl., ¶ 10.)

#### b)    *A lodestar crosscheck will support the requested fee.*

Plaintiff will provide the Court with information for the purposes of calculating attorney's fees under the lodestar method should the Court so desire for ruling on Plaintiff's fee application at the final

---

[4] The exclusion of interest and penalties from the fairness evaluation is proper because, first, PAGA penalties are discretionary (*see* Lab. Code § 2699(e)(2) (the court in its discretion "may award a lesser amount than the maximum civil penalty amount specified by this part…")), and, second, courts evaluate the strength of a proposed settlement without taking potential penalties or interest into consideration.  *See Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 955 (9th Cir. 2000); *see also Miller v. CEVA Logistics U.S.A., Inc.*, 2015 WL 729638, at *7 (E.D. Cal. Feb. 19, 2015) (court utilized calculation of a defendant's exposure exclusive of interest and penalties to determine whether the settlement fell within the range of possible approval).

1    fairness hearing.

2        The Ninth Circuit has recognized that the lodestar method "creates incentives for counsel to spend

3    more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar

4    method does not reward early settlement." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050, n.5 (9th Cir.

5    2002). The Ninth Circuit has thus cautioned that, while a lodestar method can be used as a cross check on

6    the reasonableness of fees based on a percentage of recovery method if a district court in its discretion

7    chooses to do so, a lodestar calculation is not required and it did "not mean to imply that class counsel

8    should necessarily receive a lesser fee for settling a case quickly." *Id.*

9        The fee requested by Plaintiff's counsel represents the fair market value of their labor, and it *is* fair

10   that every class member who benefits from the opportunity to claim a share of the settlement pay his or her

11   pro rata share of attorney's fees. The regular contingent fee contract of Plaintiff's counsel provides for

12   attorney's fees between 35 percent and 40 percent of any recovery obtained for the client. It would be

13   grossly unfair to compensate Plaintiff's counsel at any lesser rate than the amount requested because the

14   value of their labor is consistent with the requested fee.

15       Finally, as required by *In re Mercury Interactive*, 816 F.3d 988 (9th Cir. 2010), Plaintiff will file a

16   motion for fees and costs after the Court sets a hearing date for Plaintiff's Motion for Final Approval of

17   Class Action Settlement, and the proposed Notice advises Class Members of how to obtain a copy of this

18   motion.

19

20                    **3.    The Enhancement Award Is Reasonable**

21       Enhancement awards serve to reward the named plaintiff for the time and effort expended on

22   behalf of the class, and for exposing herself to the significant risks of litigation. "Courts routinely approve

23   incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred

24   during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D.

25   Ga. 2001); *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997). In *Coca-*

26   *Cola*, for example, the court approved incentive awards of $300,000 to each named plaintiff in recognition

27   of the services they provided to the class by responding to discovery, participating in the mediation process

28   and taking the risk of stepping forward on behalf of the class. *Coca-Cola*, 200 F.R.D. at 694; *see also Van*

*Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award).

Here, Plaintiff's counsel requests that the Court grant Plaintiff an incentive award of $10,000. The amount of the enhancement award requested for Plaintiff reasonable given the risks undertaken by Plaintiff. Taking the risk of filing a lawsuit against an employer deserves reward, especially in light of the settlement achieved by Plaintiff. Additionally, Plaintiff was actively involved in the litigation and settlement negotiations of this Action. Plaintiff worked diligently with counsel to prepare the action and conferred with counsel regarding settlement negotiations. (Leviant Decl., ¶ 31.) The requested amount is reasonable.

### 4.     The Class Notice

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the circumstances. Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabo*, 18 F.3d 1449, 1454 (9th Cir. 1994). Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, the Parties have agreed to provide notices through first class mail to class members, whose last known addresses are known to CBS Defendants. If any notices are returned with new forwarding addresses, or if new addresses are located in the NCOA database after a packet is returned, the Settlement Administrator will re-mail the Notice to the current address. This method of notice clearly suffices.

Rule 23(c)(2)(B) also sets forth requirements regarding the content of the notice. The notice must concisely and clearly state in plain, easily understood language:

- The nature of the action;
- The definition of the class certified;
- The class claims, issues, or defenses;
- That class member may enter an appearance through counsel;

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND
CERTIFICATION OF SETTLEMENT CLASS**

- That the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and

- The binding effect of a class judgment on class members under Rule 23(c)(3).

The proposed notice attached as Exhibit A to the Agreement complies fully with Rule 23(c)(2)(B). (Leviant Decl., Exhibit "A" attached to Exhibit "1".)  Here, a notice has been prepared that explains Class Member rights and describes how to participate, object, or withdraw from the Settlement.  Courts routinely approve class notices even when they provide only general information about a settlement.  *See*, *e.g.*, *Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir. 1980) ("very general description of the proposed settlement" sufficient); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (notice "need only describe the terms of the settlement generally.")  The class notices drafted by the Parties exceed the "general information" threshold, providing more than adequate notice about the Settlement.

Plaintiff also proposes to provide class members with notice of, and access to, Plaintiff's motion for attorney's fees.  Under Rule 23(h), class members must be given notice of the plaintiff's fee application separate and apart from the general notice given to the class after preliminary approval.  *See*, *In Re Mercury Interactive Securities Litigation*, 618 F.3d 988 (9th Cir. 2010).  To comply with this requirement, Class Counsel shall file its Motion for an award of Class Counsel Fees and Costs after the Notice is issued and with sufficient time to permit any Class Member to obtain and comment upon the requested Fees and Costs if they desire to do so.  The Motion shall be set for hearing on the same date set for hearing of Plaintiff's Motion for Final Approval of Class Action Settlement.  The notice procedure satisfies the due process requirements of Rule 23(h) established by the Ninth Circuit in *Mercury Interactive* (objection period for fee motion must end after motion is filed).

## V.   THE COURT SHOULD SCHEDULE A FAIRNESS HEARING

The last step in the settlement approval process is the fairness hearing, where the Court makes a final determination about the propriety of settlement.  Plaintiff requests that the fairness hearing in this case be scheduled for 180 days after issuance of the Court's Order granting preliminary approval of the Settlement.  Under the Settlement, the CBS Defendants will have 30 days to provide the mailing data to the Settlement Administrator, which will then have 30 days to mail out class notice.  Class Members have

1  30 days after mailing of the notice to submit exclusions or objections.  Since the final approval hearing

2  must be held at least 35 days after the filing of the final approval motion, Plaintiff proposes that the final

3  approval hearing should be scheduled for April 26, 2018, or the first available hearing date thereafter.

4

5  **VI.    CONCLUSION**

6        Plaintiff negotiated a settlement that resolves claims and recovers money for 4,407 class members.

7  This settlement is fair and reasonable, especially given the claims and the potential defenses to them and to

8  class certification.  Plaintiff asks the Court to grant preliminary approval of the settlement and adopt the

9  proposed order submitted herewith.

10

11                                            Respectfully submitted,

12  Dated: September 19, 2017                 **SETAREH LAW GROUP**

13

14                                            By: _____
                                                  Shaun Setareh
15                                                H. Scott Leviant

16                                            Attorneys for Plaintiff