1    Shaun Setareh (SBN 204514)
          shaun@setarehlaw.com
2    H. Scott Leviant (SBN 200834)
          scott@setarehlaw.com
3    **SETAREH LAW GROUP**
     9454 Wilshire Boulevard, Suite 907
4    Beverly Hills, California  90212
     Telephone:      (310) 888-7771
5    Facsimile:      (310) 888-0109

6    Attorneys for Plaintiff EARL FRONDA

7

8                    UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11   EARL FRONDA on behalf of himself, all others    Case No.: 3:15-cv-02315-MEJ
     similarly situated, and the general public,
12                                                    **DECLARATION OF H. SCOTT LEVIANT**
             *Plaintiff*,                             **IN SUPPORT OF PLAINTIFF'S MOTION**
13                                                    **FOR PRELIMINARY APPROVAL OF**
         vs.                                          **CLASS ACTION SETTLEMENT AND**
14                                                    **CERTIFICATION OF SETTLEMENT**
     STAFFMARK HOLDINGS, INC., a Delaware             **CLASS**
15   Corporation; CEVA LOGISTICS, U.S., INC., a
     Delaware corporation; and DOES 1-50, inclusive,
16                                                    Date:          November 9, 2017
             *Defendants*.                            Time:          10:00 a.m.
17                                                    Courtroom:     Courtroom B – 15th Floor
                                                      Judge:         Hon. Maria Elena James
18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF H. SCOTT LEVIANT

I, H. Scott Leviant, declare as follows:

1.      I am admitted, in good standing, to practice as an attorney in the State of California, the United States Supreme Court, the Eighth Circuit Court of Appeals, the Ninth Circuit Court of Appeals, and the United States District Courts for the Central, Eastern, Northern and Southern Districts of California.  I have never been subject to discipline by the State Bar of California.  I am a fully qualified, adult resident of the State of California, and, if called as a witness herein, I would testify truthfully to the matters set forth herein.  All of the matters set forth herein are within my personal knowledge, except those matters that are stated to be upon information and belief.  As to such matters, I believe them to be true.

2.      I am employed as a Senior Associate at the law firm of Setareh Law Group, LLP. My business address is 9454 Wilshire Blvd., Suite 907, Beverly Hills, California 91212 and my business telephone number is (310) 888-7771.  I am counsel for Plaintiff.

3.      This Declaration is submitted in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class.

BACKGROUND

4.      On April 17, 2015, Plaintiff filed a complaint in the Alameda County Superior Court entitled *Earl Fronda v. Staffmark Holdings, Inc., CEVA Logistics U.S., Inc., Amazon.com LLC and Does 1 through 50, inclusive*, Alameda County Superior Court Case No. RG15766849.  The Litigation was brought by Plaintiff on behalf of the above-referenced Class Members and other putative class members directly employed by CEVA but not included in this proposed settlement.  The following causes of action were asserted in the Complaint: (1) Failure to Provide Meal Periods; (2) Failure to Pay Hourly Wages; (3) Failure to Provide Accurate Written Wage Statements; (4) Failure to Timely Pay All Final Wages; (5) Failure to Pay Wages Without Discount; and (6) Unfair Competition.   On May 19, 2015, Plaintiff filed a First Amended Complaint containing the following causes of action: (1) Failure to Provide Meal Periods; (2) Failure to Pay Hourly Wages; (3) Failure to Provide Accurate Written Wage Statements; (4) Failure to

Timely Pay All Final Wages; (5) Failure to Pay Wages Without Discount; (6) Unfair Competition; and (7) Civil Penalties Under the Private Attorneys General Act.

5.      On May 22, 2015, Defendant, CEVA Logistics U.S. Inc., removed this action to the federal District Court of California, Northern District, where it was assigned Case No. 3:15-CV-02315-MEJ.

6.      On June 12, 2015, pursuant to stipulation, an Order was entered dismissing Defendant, Amazon.com LLC as a defendant in this action.  On July 13, 2015, Plaintiff filed a Second Amended Complaint, setting forth the following causes of action: (1) Failure to Provide Meal Periods; (2) Failure to Provide Rest Breaks; (3) Failure to Pay Hourly Wages; (4) Failure to Provide Accurate Written Wage Statements; (5) Failure to Timely Pay All Final Wages; (6) Failure to Pay Wages Without Discount; (7) Unfair Competition; and (8) Civil Penalties Under the Private Attorneys General Act.  On October 19, 2015, an Order was entered adding Defendant CBS Personnel Services LLC as a defendant in this action.

7.      On December 27, 2015, Plaintiff filed a Third Amended Complaint, setting forth the following causes of action: (1) Failure to Provide Meal Periods; (2) Failure to Provide Rest Breaks; (3) Failure to Pay Hourly Wages; (4) Failure to Provide Accurate Written Wage Statements; (5) Failure to Timely Pay All Final Wages; (6) Failure to Pay Wages Without Discount; (7) Unfair Competition; and (8) Civil Penalties Under the Private Attorneys General Act.  The CBS Defendants filed an Answer to the Third Amended Complaint.  Through the Litigation, Plaintiff and the Class sought damages, wages, penalties, restitution, disgorgement, punitive and exemplary damages, costs, interest and attorneys' fees.  The CBS Defendants deny the allegations asserted in the Litigation and assert that they have no liability for any of Plaintiff's or the Class Members' claims under any statute, wage order, rule, regulation, common law, or equitable theory.

8.      On January 4, 2017, mediation was held between the Parties with mediator, Hon. Edward A. Infante (Ret.).  The mediation included discussion and examination of the Parties' respective positions on the legal and factual issues raised in the Litigation.  The matter was not resolved that day.  Instead, Judge Infante continued to communicate with the Parties, and a second mediation was scheduled.  A second day of mediation was held on April 26, 2017 between the Parties with Judge

Infante acting as mediator.  The mediation included discussion and examination of the Parties' respective positions on the legal and factual issues raised in the Litigation.  After the two days of mediation, which included arms' length negotiations, the Parties agreed to settle this matter for the Settlement Sum of five million six hundred thousand dollars ($5,600,000.00).  There are approximately 4,407 settlement Class Members.

9.      Plaintiff and Class Counsel concluded, after taking into account the sharply disputed factual and legal issues involved in this Litigation, the risks attending further prosecution, the discovery and investigation conducted to date, and the substantial benefits received and to be received pursuant to the compromise and settlement of the Litigation, that settlement on the terms discussed herein is in the best interests of Plaintiff and the Class. Plaintiff and Class Counsel are mindful of the problems of proof they face, many of which were discussed during the mediation.  As such, we believe that the Settlement reached is fair to the Class and confers substantial benefits on the Class, providing all Class Members with recoveries in the near term.  Based on our evaluation, we determined that the settlement set forth in the Agreement discussed herein is in the best interest of the Class.  The Agreement, if approved by the Court, will resolve the claims of the settlement Class.  The Class Representative will also execute a general release of all claims as to the CBS Defendants.

## SUMMARY OF THE SETTLEMENT TERMS

10.      Key provisions of the proposed settlement include the following:

(a)      The settlement Class is:  any and all individuals employed by the CBS Defendants at CEVA Freight, LLC, CEVA Logistics U.S., Inc. and/or any other location of CEVA, CEVA's parents or any CEVA-related entity operating in California during the Class Period (April 17, 2011 through the date of preliminary approval of this Settlement by the Court).  Excluded from the definition of "Class" or "Class Member" are any individuals directly hired by any CEVA-related entity, including CEVA Freight, LLC and CEVA Logistics U.S., Inc. for the period of time that the individuals were employed directly by any CEVA related entity, including CEVA Freight, LLC and CEVA Logistics U.S., Inc.  (Agreement, § 1.1(b)(4).)

(b)   The Parties agree that $5,600,000.00 represents the maximum amount that the CBS Defendants will pay out under this Agreement, inclusive of the following: (a) Payments to Participating Class Members; (b) Class Counsel's attorneys' fees and litigation costs, (c) Any Administration Costs, (d) Any Enhancement Award to the Plaintiff, and (e) The payment to the California LWDA. (Agreement, § 1.1(b)(25), (27).)  The CBS Defendants will *separately* pay the employer share of payroll tax costs to the Settlement Administrator.

(c)   Each Class Member who does not opt out will be paid his/her share of the Net Settlement Sum, subject to certain taxes and withholdings.  (Agreement, § 3.6(b).)

(d)   Class Counsel will not seek an amount greater than $1,866,666.67 for Attorney's Fees and Costs.  (Agreement, § 3.6(e).)

(e)   Settlement Administration costs are estimated at $25,000 and will be paid out of the Settlement.  (Agreement, § 3.6(d).)

(f)   The Class Representative enhancement award will be no more than $10,000. (Agreement, § 3.6(f).)

(g)   The sum of $75,000 shall be paid to the Labor and Workforce Development Agency to resolve claims arising under PAGA.  (Agreement, § 3.6(g).)

(h)   If checks remain uncashed after ninety (90) days, a reminder postcard will be sent to those Class Members with uncashed checks, advising them to cash the check or request a replacement check.  If checks remain uncashed after 150 days, a similar postcard will be sent to those Class Members with uncashed checks.  At 180 days, all uncashed checks will be voided, and the funds representing the amount of voided checks will be paid as follows:  25% of the funds will be paid to the California State Equal Access Fund, 25% of the funds will be paid to the California State Treasury for deposit in the Trial Court Improvement and Modernization Fund, and 50% to  Legal Aid at Work (https://legalaidatwork.org/), a non-profit organization supporting low wage

1      earners with employment issues, which is a cy pres distribution which has been

2      agreed to by the Parties as a directly related to the goals reflected by the statutes

3      and regulations underlying the Class Member Claims in this litigation and

4      consistent with recent changes to California law governing cy pres distributions.

5      (Agreement, § 3.6(c)(4).)

6         11.     A true and correct copy of the STIPULATION AND AGREEMENT TO SETTLE

7 CLASS ACTION AND LIMITED RELEASE is attached hereto as Exhibit "1."

8

9 THE SETTLEMENT IS FAIR, JUST AND REASONABLE

10         12.     Plaintiff and his counsel have diligently investigated the claims of the Settlement Class

11 Members.  Plaintiff and Class Counsel concluded, after taking into account the disputed factual and

12 legal issues involved in this Action, the substantial risks attending further prosecution, including risks

13 related to the outcome of certification and possible summary judgment efforts, and the substantial

14 benefits to be received pursuant to the compromise and settlement of the Action as set forth in the

15 Settlement, that settlement on the terms agreed to are in the best interest of Plaintiff and the putative

16 Class and are fair and reasonable. Plaintiff's counsel brought to bear a great deal of experience with

17 class actions in negotiating the settlement of this case.

18         13.     One fundamental purpose of the class action device is to promote efficiency.

19 Resolution at this time will forestall the need for additional expensive and time-consuming litigation

20 that could very well result in an outcome less satisfactory than that proposed under this settlement.  But,

21 before any other consideration, we have agreed to this settlement because it is objectively reasonable.

22 The potential for resolution benefits the class members, since they do not have to wait additional years

23 for a similar recovery.  The efficiency of this litigation benefits the Court, the parties and their counsel.

24 A class-wide resolution is the most realistic method for addressing the claims raised in this matter.

25         14.     We have engaged in the necessary investigation in this case that made it possible for us

26 to exercise informed judgment in those aspects of the settlement process in which we were involved.

27 Settlement occurred only after discovery commenced.  That discovery included multiple sets of

28 interrogatories and comprehensive requests for production to all Defendants.  The Defendants

(including both the settling CBS Defendants and Defendant CEVA) in this matter produced thousands of pages in response to formal discovery (followed by still more data about class composition requested and produced prior to mediation) and video footage.  The information produced in discovery, and the additional, detailed data about class composition produced for mediation, were sufficient to permit Plaintiff's counsel to adequately evaluate the settlement. Plaintiff had more than enough information upon which to evaluate a fair and reasonable settlement amount.

15.     In addition to disputing the merits of Plaintiff's claims at trial, CBS Defendant intended to aggressively challenge Plaintiff's case at the certification stage.  The CBS Defendant believe that Plaintiff could not prevail on that certification motion.  Plaintiff believes that his case was viable through to a trial. However, while Plaintiff asserts his belief that this is a viable case for trial, Plaintiff realizes that there are always significant risks associated with certification and trials, and those risks, which cannot be eliminated in this case, are undeniable. Continued litigation of this lawsuit presented Plaintiff and CBS Defendant with substantial legal risks that were (and continue to be) very difficult to assess.  The risks associated with this matter include:

- the risk that Plaintiff would be unable to establish liability for allegedly unpaid straight time or overtime wages, *see Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1, 39 & fn. 33 (2014) ("*Duran*"), *citing Dilts v. Penske Logistics, LLC* 2014 WL 205039 (S.D. Cal. 2014) (dismissing certified off-the-clock claims based on proof at trial);

- the risk that CBS Defendant's challenged employment policies might not ultimately support class certification or a class-wide liability finding, *see*, *Duran*, 59 Cal. 4th at 14 & fn. 28 *(*citing Court of Appeal decisions favorable on class certification issue without expressing opinion as to ultimate viability of proposition);

- the risk that uncertainties pertaining to the ultimate legality of CBS Defendant's policies and practices could preclude class-wide awards of statutory penalties under Labor Code §§ 203 and 226(e);

- the risk that individual differences between Settlement Class Members could be construed as pertaining to liability, and not solely to damages, *see*, *Duran*, 59 Cal. 4th at 19;

- the risk that any civil penalties award under the PAGA could be reduced by the Court in its discretion, see Labor Code § 2699(e)(1);

- the risk that class treatment could be deemed improper as to one or more claims except for settlement purposes;

- the risk that lengthy appellate litigation could ensue; and,

- <u>the significant risk that some claims would be deemed legally *de minimis* under California law (the existence of said defense being an issue that is currently pending before the California Supreme Court)</u>.

These risks are non-exhaustive. While we remain confident that we possess credible strategies for responding to the legal and factual risks facing them, those risks cannot be disregarded. We carefully considered the risks created by all of these uncontrollable factors when evaluating the reasonableness of this proposed settlement. This Settlement provides a benefit to the Class Members that is very reasonable in light of these particular risks.

16.     The Settlement is the product of arm's-length negotiations between the Parties occurring throughout the litigation. In light of the uncertainties of protracted litigation and the state of the law regarding the legal positions of the Parties, the settlement amount reflects the best feasible recovery for the Settlement Class Members. The settlement amount is, of course, a compromise figure. By necessity it took into account risks related to liability, damages, and all the defenses asserted by the CBS Defendants. Moreover, each Settlement Class Member will be given the opportunity to opt out of the Settlement, allowing those who feel they have claims that are greater than the benefits they can receive under this Settlement, to pursue their own claims. For the 4,407 members of the Class, the average *gross* recovery before deductions for taxes, fees, and other costs, is approximately $1,270 per class member. The value of this amount reflects a fair compromise well within the range of reasonableness. Given the strong case that CBS Defendants could bring to bear to challenge certification and liability, this is not an inconsequential sum. And, adding to the fundamental fairness of the settlement, <u>each Class Member</u> will be compensated ratably based on the number of workweeks they worked during the class period.

17.     The Class Settlement Amount is approximately equal to the risk-adjusted recovery at this

stage in the litigation.  While Plaintiff would certainly have preferred to recover more (and CBS Defendants would have preferred to pay less), this outcome is in line with a carefully constructed estimate of the current fair value of the case.   On that basis, it would be unwise to pass up this settlement opportunity.  The maximum damage values are estimates based on average wage rates, numbers of employees, and the amount of time covered by the class period.

18.     After analyzing the claims in this matter, Plaintiff has concluded that the value of this Settlement is fair, adequate and reasonable.  For example, the estimated exposure for off the clock work spent in security check stations over the class period was calculated to be approximately $1,200,000.  With risk factor discounts for certification and liability proof, the value of that claim is estimated by Plaintiff's counsel to be approximately $400,000. And, the estimated exposure for meal period violations over the class period was calculated to be approximately $3,200,000. With risk factor discounts for certification and liability proof, the value of that claim is estimated by Plaintiff's counsel to be approximately $1,000,000.   A similar valuation applies to the rest period claim.  Performing similar risk-adjusted valuations for all claims yields a total value in the range of $5,000,000 – $7,000,000.

19.     This result here is fully supportable as reasonable.  Many risks are eliminated through settlement. First, rest break and meal period claims have been challenging to certify for many years, even after *Brinker*.  Second, off-the-clock pay claims have consistently proven challenging to certify.  Third, certification rates are lower than conventional wisdom holds.  *See, e.g*., H. Scott Leviant, *Second Interim Report on class actions in California sheds new light on certification* (February 19, 2010), www.thecomplexlitigator.com, available at http://www.thecomplexlitigator.com/post-data/2010/2/19/second-interim-report-on-class-actions-in-california-sheds-n.html; *see also*, *Findings of the Study of California Class Action Litigation*, 2000-2006, available at http://www.courtinfo.ca.gov/reference/documents/class-action-lit-study.pdf (finding, at page 5, and in Table 9, at page 15, that only 21.4% of all class actions were certified either as part of a settlement *or* as part of a contested certification motion).  In estimating risk adjustments here, Plaintiff's counsel has assumed estimated certification probabilities of 40 percent to 60 percent, depending on the claim, assumptions that substantially *exceed* the average rate at which cases were certified in California over the study years, based upon data available through the California Courts website.  Given that well under 20%

of all cases filed in California as proposed class actions are ultimately certified by way of a contested motion, and a similar trend is seen in federal courts, it is fair to say that, if anything, the use of high estimates for certification *overstates* the realistic current claim value.  It would also be appropriate to evaluate the result by examining only the premium wages at issue, excluding penalties and interest.  Under that metric, the settlement recovered is higher than the realistic current claim value for the premium wages at issue (off-the-clock wages, meal period premiums, and rest break premiums). Viewed either way, this Settlement achieves the goals of the litigation.

20.     To the best of my knowledge, other than this Action, there are no other like claims asserted or filed by Class Members.  To the best of my knowledge, no Class Member has refrained from bringing an action with claims similar to those raised in the Action, whether in reliance on the Action or otherwise, and who thus might be prejudiced by dismissal of the Action.

## THE EXPERIENCE OF CLASS COUNSEL

21.     Setareh Law Group LLP has been engaged in the practice of employment and labor law for roughly a decade.  The firm and its lawyers have handled hundreds of wage-related class actions between them.  The firm and its lawyers have successfully settled more than 100 cases during that time. Setareh Law Group is routinely appointed lead or co-lead class counsel (or counsel for representative plaintiffs in FLSA representative actions) in federal and state courts in California and elsewhere, by way of motion for class certification or motion for settlement approval.

22.     Mr. Shaun Setareh received his undergraduate degree at UCLA in 1996 and his law degree from Loyola Law School in 1999.  Since being admitted to the State Bar of California in 1999, he has actively practiced civil litigation for the entirety of that time period.

23.     Mr. Setareh has been involved as lead or co-lead class counsel in numerous wage and hour, consumer, and antitrust class action cases. The following is a sampling of class actions in which he has been appointed as class counsel:

(a)     *Padilla v. UPS*, U.S. District Court, Central District of California, Case No. 08-CV-1590 (granted final approval in a case involving claims for failure to provide meal periods to part time employees engaged in sort operations and

failure to pay final wages in a timely manner to terminated employees).

(b)     *Vang v. Burlington Coat Factory Warehouse Corp.*, U.S. District Court, Central District of California Case No. 09-CV-8061 (granted final approval in a case involving, among other things, vacation pay forfeitures, failures to provide meal and rest periods, and failures to pay overtime wages based on employee misclassification).

(c)     *Garcia v. Am. Gen. Fin. Mgmt. Corp.*, U.S. District Court, Central District of California, Case No. 09-CV-1916 (granted final approval in a case filed on behalf of account managers in case involving, among other things, alleged overtime miscalculations and meal and rest period violations).

(d)     *O'Neill v. Genesis Logistics, Inc.*, U.S. District Court, Northern District of California, Case No. 08-CV-4707 (granted final approval in a case involving claims for failure to provide meal periods to employees who worked as drivers delivering goods to 7-11 stores throughout California and failure to pay final wages in a timely manner to terminated employees).

(e)     *Spokes v. Lush Cosmetics, LLC*, Los Angeles Superior Court, Case No. BC391397 (granted final approval in a case alleged failures to provide meal and rest periods and failure to timely pay all final wages to California sales associates and key holders).

(f)     *Green v. Staples Contract and Commercial, Inc.*, Los Angeles Superior Court, Case No. BC389789 (granted final approval in a case involving claims for unprovided meal and rest periods, inaccurate wage statements, waiting time penalties, and unfair business practices on behalf of truck drivers delivering Staples office supplies in California).

(g)     *Green v. Universal Music Group*, Los Angeles Superior Court, Case No. BC374253 (granted final approval in a case involving misclassification claims of current or former IT Support employees, including engineers, server analysts, desktop support, and technical leads).

(h)   *Jones v. Shred-It USA, Inc.*, U.S. District Court, Central District of California, Case No. 11-CV-00526 (granted final approval in a case brought on behalf of customer service representatives and balers for alleged off-the-clock work and meal and rest period violations).

(i)   *Alvarez v. Gary Grace Enterprises, LP*, Marin Superior Court, Case No. CIV 1002553 (granted final approval in a case on behalf of hair salon employees for overtime miscalculation and related claims).

(j)   *Calderon v. GreatCall, Inc.*, San Diego Superior Court, Case No. 37-2010-00093743-CU-OE-CTL (granted final approval in a case on behalf of customer service employees for, among other things, alleged meal and rest period violations and overtime calculation errors).

(k)   *Douglas v. California Credit Union*, Los Angeles Superior Court, Case No. BC445050 (granted final approval in a case on behalf of customer service representatives alleging overtime miscalculation claims).

(l)   *Cerdenia v. USA Truck, Inc.*, U.S. District Court, Central District of California, Case No. 10-CV-1489-JVS (granted final approval in an action on behalf of truck drivers for meal and rest period violations, off-the-clock pre- and post-shift work, and unauthorized wage deductions).

(m)   *Butler v. Lexxiom, Inc.*, San Bernardino Superior Court, Case No. CIVRS 1001579 (granted final approval in an action on behalf of debt resolution center employees alleging, among other things, meal and rest period violations and overtime calculation errors).

(n)   *Valencia v. SCIS Air Security Corp.*, Los Angeles Superior Court, Case No. BC421485 (granted class certification through contested motion in case on behalf of former security workers based on late final wage payments in violation of Labor Code §§ 201–203; subsequently granted preliminary approval of proposed class action settlement).

(o)   *Sandoval v. Rite Aid Corp.*, Los Angeles County Superior Court, Case No.

BC431249 (granted class certification through contested motion in case on behalf of former pharmacy employees based on late final wage payments in violation of Labor Code §§ 201–203; subsequently granted final approval of class action settlement).

24.     I received my undergraduate degree from Occidental College. Graduating cum laude, I majored in economics and received a "minor" emphasis in mathematics. Along with my study of economics and mathematics, I also had an emphasis in physics. This combination of scientific and economic education has been of assistance during my litigation of complex civil actions.  I received my Juris Doctor degree from the University of Southern California Law Center.

25.     My experience relevant to class action litigation includes the following:

(a)     I have been involved in the litigation of class actions since 1997, working as a law clerk on a number of class action matters.  Since 1999, I have participated as an attorney in the litigation of well over 125 class actions, in California Superior Courts and in federal courts in California, Illinois, and Louisiana, and the number of class actions that I have helped to litigate is closer to 175 class actions.  I emphasized litigation of wage and hour class actions beginning in 2005, but I have focused on complex litigation of different types at all times since 1999.

(b)     Dating back to 1999, some of the earliest cases in which I contributed to my then-firm's efforts as co-lead/liaison counsel include:

i.     *In re Paradise Memorial Park Litigation*, Los Angeles Superior Court Lead Case No. BC130375; and,

ii.     *In re Lincoln Memorial Park Litigation*, Los Angeles Superior Court Lead Case No. BC133643.

(c)     I have prosecuted appeals in approximately 20 class action matters alone, arguing before the United States Court of Appeals for the Ninth Circuit Court and several of California's Courts of Appeal.  I have taken several appeals through to Petitions for Writs of Certiorari to the United States Supreme Court.

In connection with the appeals I have handled, I have participated in appeals resulting in decisions concerning or relating to class actions or wage and hour issues.  Among others, those include:

      i.   *Gillings v. Time Warner Cable LLC*, 583 Fed.Appx. 712 (9th Cir. 2014);

      ii.   *Ghazaryan v. Diva Limousine, LTD.*, 169 Cal.App.4th 1524 (2009), pet. for rev. denied;

      iii.   *Laliberte v. Pacific Mercantile Bank*, 147 Cal.App.4th 1 (2007), rev. denied, pet. for cert. denied;

      iv.   *Alvarez v. May Dept. Stores Co.*, 143 Cal.App.4th 1223 (2006), rev. denied, pet. for cert. denied;

      v.   *Johnson v. Glaxosmithkline, Inc.*, 166 Cal.App.4th 1497 (2008), rev. denied;

      vi.   *Howard, et al. v. America Online, Inc.,* 208 F.3d 741 (9th Cir. 2000), pet. for cert. denied;

      vii.   *Brown v. Ralphs Grocery Company*, 197 Cal. App. 4th 489 (2011) (amicus counsel);

      viii.   *D. R. Horton, Inc. and Michael Cuda*, Case 12–CA–25764, 357 NLRB No. 184 (January 3, 2012) (amicus counsel).  This NLRB matter is of particular note, as it is at the center of a dispute regarding the interplay between the Federal Arbitration Act (FAA) and two labor relations laws, the National Labor Relations Act (NLRA) and Norris-LaGuardia Act.  Cases highlighting that issue have been accepted by the United States Supreme Court.

(d)   I am currently the lead appellate author in a matter before the California Supreme Court and generating substantial interest in the field of wage and hour litigation.  That matter, *Troester v. Starbucks Corporation*, will likely resolve the significant issue of whether, under California law, a *de minimis* defense

1   exists to the employer's obligation to pay all wages for all compensable time

2   worked by an employee.

3   (e)   I am currently the lead appellate author in a matter before the Ninth Circuit that

4   focuses on wage and hour issues. That matter, *Rodriguez v. Taco Bell Corp.*,

5   will, of necessity, address a core aspect of the nature of meal period

6   requirements in California.

7   (f)   In addition to my work on complex litigation matters and class actions, I have

8   authored published articles and columns on issues related to class actions and

9   other litigation issues, including:

10   i.   H. Scott Leviant, *Unintended Consequences*, 6 U.C. Davis Bus. L.J.

11   18 (2006), at http://blj.ucdavis.edu/article.asp?id=636 (May 1,

12   2006);

13   ii.   Dennis F. Moss and H. Scott Leviant:   *Class Actions: One step

14   forward after two steps back*, DAILY JOURNAL (Los Angeles),

15   January 11, 2012;

16   iii.   H. Scott Leviant, *Arbitration: A Look Back, a Look Ahead*, DAILY

17   JOURNAL (Los Angeles), December 28, 2010;

18   iv.   H. Scott Leviant, *Witnesses Cannot Hide*, Daily Journal (Los

19   Angeles), April 21, 2010;

20   v.   H. Scott Leviant, *Divide and Conquer: The New Paradigm of Class

21   Action Defense?*, FORUM, January/February 2009

22   vi.   H. Scott Leviant, *Class Action Appellate Report*, FORUM, 2009-

23   2010 (Ongoing series);

24   vii.   H. Scott Leviant & Linh Hua, *Legislature Using Purse Strings to

25   Bind Judiciary*, Daily Journal (San Francisco), March 15, 2010;

26   viii.   H. Scott Leviant, *Wrongfully Recused?*, DAILY JOURNAL (Los

27   Angeles), December 2, 2009;

28

ix. H. Scott Leviant, *Cutting Class*, DAILY JOURNAL (Los Angeles), April 15, 2008;

x. H. Scott Leviant, *Leveling The Playing Field*, DAILY JOURNAL (Los Angeles), May 4, 2007;

xi. H. Scott Leviant, *A Bad Meal Deal: 'Brinker' Gets the Incentive Question Wrong*, DAILY JOURNAL (Los Angeles), August 6, 2008;

xii. H. Scott Leviant & Jason E. Barsanti, *Maximize Recovery in Unpaid Wage Cases*, FORUM, January/February 2008;

xiii. H. Scott Leviant, et al., *Electronic Evidence: No Longer an Optional Element in a Comprehensive Litigation Plan*, ADVOCATE, April 2006;

xiv. H. Scott Leviant, *Improving Rule 12(b)(6) survival odds: Some considerations for effective RICO pleading*, CIVIL RICO REPORT, Volume 15, Number 22, April 26, 2000 (LRP Publications).

(g) In addition to publications in industry newspapers, periodicals and journals, I am the Supervising Editor, primary author and founder of the legal blog The Complex Litigator (http://www.thecomplexlitigator.com). The Complex Litigator reports and comments on news and topics relevant to class action and complex litigation practice, with a primary emphasis on wage and hour litigation issues. Through my blog, I have also, on occasion, published podcasts of round table discussions with preeminent members of the wage and hour practice bar on both the plaintiff and defense sides. My blog has been cited to the California Supreme Court in at least one Petition for Review. The Complex Litigator has been in existence since 2008, having outlasted many other legal blogs, and it has a unique readership that numbers in the tens of thousands.

(h) I have also lectured on issues related to class actions and complex litigation, including the following educational seminars:

1          i. *Strategies for Settlement of Individual and Wage & Hour Class*

2           *Actions*, Bridgeport's Eighth Annual Wage & Hour Litigation

3           Conference (December 16, 2011)

4         ii. *The Year in Review – Staying Abreast of Current Cases*, Consumer

5           Attorneys of San Diego Class Action Symposium (October 14,

6           2011)

7        iii. *Concepcion v. AT&T and Derivative Wage & Hour Claims*,

8           Bridgeport's Mid Year Wage & Hour Litigation Conference (June 3,

9           2011)

10       iv. *Advanced Principles: UCL Remedies and Defenses*, 20th Annual

11          Golden State Antitrust and Unfair Competition Law Institute

12          (October 21, 2010)

13        v. *Refining Your Wage and Hour Practice*, 2010 CELA Annual

14          Conference (October 2, 2010)

15       vi. *Word v. WordPerfect Software, Tips, Tools and Tricks*: Legal

16          Technology for Plaintiffs Employment Lawyers (September 30,

17          2010)

18       vii. *California's 17200 -- Its Use and Abuse*, Federalist Society (May

19          19, 2010)

20      viii. *20 Tips for Successful Navigation of e-Discovery Requirements*, Los

21          Angeles County Bar Association's Thirtieth Annual Labor and

22          Employment Law Symposium (March 31, 2010)

23       ix. *Social Networking for Lawyers*: A Roadmap to Success, Los

24          Angeles County Bar Association's 2nd Annual two-day 2009 Small

25          Firm and Solo Practitioners Conference: MISSION POSSIBLE

26          (June 25, 2009)

27        x. *A Seminar Overview of the Current State of Employment Law*, The

28          Westchester/LAX/Marina Del Rey Chamber of Commerce

**DECLARATION OF H. SCOTT LEVIANT IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

(February 23, 2006)

(i)      I served three consecutive years as an elected member of the Board of

Governors of the Consumer Attorneys of California.  In that capacity, I worked

to preserve the right of California's consumers and employees to bring proposed

class actions.  For example, I provided assistance to CAOC in its successful

effort to defeat AB 298, which would have substantially impaired the ability of

plaintiffs to prosecute class actions in California.  More recently, on behalf of

CAOC, I co-authored several requests for publication of unpublished class

action decisions, including one such request in *Jaimez v. Daiohs USA, Inc*., 181

Cal. App. 4th 1286 (2010), and authored amicus briefs for CAOC in the Eighth

Circuit matter entitled *Avritt v. Reliastar Life. Ins. Co*., Case No. 09-2843, the

California Supreme Court matter entitled *Californians for Disability Rights v.*

*Mervyn's, LLC*, 39 Cal. 4th 223 (2006), and the California Court of Appeal

matter entitled *Brown v. Ralphs Grocery Company*, 197 Cal. App. 4th 489

(2011).

26.    My current contingent billing rate is consistent with my practice area, legal market and

accepted hourly rates:

(a)      In the December 8, 2008 article "Billable Hours Aren't the Only Game in Town

Anymore," *NATIONAL LAW JOURNAL*, the following hourly billing rates were

reported by Sheppard Mullin Richter & Hampton, a leading firm in the defense of

wage-and-hour class actions that I have frequently opposed when litigating wage-

and-hour class actions: Partners: $475-$795; Associates: 1st Year - $275, 2nd Year

- $310, 3rd Year - $335, 4th Year - $365, 5th Year - $390, 6th Year - $415, 7th

Year - $435, 8th Year - $455.

(b)      In 2009 I was retained as appellate counsel in the appeal of a denial of class

certification.  For the specialized work on that appeal, I charged an hourly rate of

$650.00 per hour, a rate the hiring co-counsel accepted.

(c)      In the wage and hour class action *Savaglio, et al, v. WalMart*, Alameda County

Superior Court No. C-835687-7, Order Granting Class Counsel's Motion for Attorneys' Fees, filed September 10, 2010, the Court approved hourly rates from $435 per hour for four years of experience to $875 per hour for 51 years of experience.

(d)   The 2016-17 Adjusted Laffey Matrix states that an attorney with 11 to 19 years experience can reasonably charge $685 per hour.  However, that rate is derived from the Washington, D.C. area and requires a costs of living correction for Los Angeles. Using federal statistics for average attorney salaries, attorney pay is 3.9% higher in Los Angeles, compared to Washington, D.C., indicating a 3.9% upward adjustment to the Laffey Matrix is appropriate. https://www.bls.gov/oes/current/oes231011.htm.[1]  However, using federal employee pay tables, federal employee wages are 2.0% higher in Los Angeles, compared to Washington, D.C., indicating a 2.0% upward adjustment to the Laffey Matrix is appropriate.  https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2017/general-schedule/.[2]  And, using Schedule 9 of 5 U.S.C. § 5332, there is a 3% differential. Thus, something in the range of a 2.0% to 4.0% locality increase appears appropriate here.  Applying the adjustment factor, the locality corrected Adjusted Laffey Matrix hourly rate for attorneys with 11 to 19 years of experience is $705.55.

(e)   I have been selected to Super Lawyers from 2012-2017.  I was selected for the Rising Stars edition of Super Lawyers in 2009.

(f)   Based upon my practice area, geographic market, experience, including all of the above information, reputation, and generally accepted hourly rates, my regular hourly billing rate is now $650.00.

---

[1] Last viewed March 3, 2017.

[2] Last viewed March 3, 2017.

<u>REASONABLENESS OF THE REQUESTED FEE AWARD</u>

27.     When this case was taken on a contingent fee basis, with the firm agreeing to assume responsibility for litigation costs, the ultimate result was far from certain.  In the course of this litigation, Setareh Law Group LLP paid filing fees, copy charges, Westlaw fees, and mailing, telephone and express mail charges.  There was never a guarantee that Setareh Law Group LLP would recoup those expenditures.

28.     Proposed Class Counsel contributed its experience, time, and resources with no guarantee that it would be compensated for its time and expenses.

29.     Class Counsel's experience in wage and hour class actions was integral in evaluating the strengths and weaknesses of the case against Defendant and the reasonableness of the settlement. Practice in the narrow field of wage and hour litigation requires skill and knowledge concerning the rapidly evolving substantive law (state and federal), as well as the procedural law of class action litigation.

30.     In the past 5 years, Setareh Law Group LLP has settled many dozens of wage & hour class actions.  Just as the Court in *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66, n.11 (2008) observed, it has been the experience at Setareh Law Group LLP that attorney fee awards of one-third of a common settlement fund are the rule, rather than the exception.  Here, Class Counsel agrees that they will seek no more than one third of the settlement amount in fees.  This is consistent with common practice, consistent with Ninth Circuit practice (which permits deviations from the presumptive award of 25% where the result and the effort support the deviation), consistent with analogous California law approving the percentage of the fund method to award fees from a common fund, *Laffitte v. Robert Half Intern. Inc.*, 1 Cal. 5th 480, 503 (2016), and not inappropriate in light of the many hundreds of hours expended by attorneys and paralegals performing work for Plaintiff before and after the filing of this matter.

31.     I anticipate that Class Counsel will spend an additional 150 hours on this matter, appearing at the hearing of preliminary approval, answering class member calls, working with the administrator to finalize documents in mailing format, conferring with counsel over any notice issues, drafting the final approval motion and motion for fees and costs, appearing at the final approval

hearing, and resolving any post-approval issues that may arise, and appearing at a final accounting hearing.  We anticipate that the uncompensated lodestar of Class Counsel, will appropriately support the requested fees.  Setareh Law Group has also incurred costs in this matter that will be detailed at the time final approval is sought.

## THE CONTRIBUTION OF PLAINTIFF AND THE REASONABLENESS OF THE REQUESTED INCENTIVE AWARD

32.     Here, Plaintiff seeks an Enhancement Payments that may not exceed $10,000.  This amount is very reasonable given the risks undertaken by Plaintiff his involvement in the Action. Taking the risk of filing a lawsuit against an employer deserves recognition, especially in light of the settlement achieved by Plaintiff.  Additionally, Plaintiff was actively involved in the litigation and settlement negotiations of this Action, expending considerable effort in advancing the interests of the Class.  Plaintiff provided information to counsel before the filing of this matter; he reviewed documents; he assisted with mediation (which included conferring with counsel during the preparation of Plaintiff's mediation brief and attendance at the mediation itself); and regularly conferred with his counsel regarding the case whenever questions arose. I estimate that Plaintiff contributed dozens of hours of his time to the prosecution of this matter.  Plaintiff's declaration will confirm his involvement.[3]

## THE THIRD-PARTY ADMINISTRATOR

33.     The parties have agreed that administration will be handled by KCC, LLC. In counsel's experience as class counsel in similar wage-and-hour actions with a similar number of employees, KCC, LLC is fully capable of administering the Settlement at a competitive and reasonable cost and should be approved by the Court to administer the Settlement notice process.

---

[3] At the time of preparation of this Declaration, our office was anticipating the return of Plaintiff's signed declaration but had not yet received it.

CLASS CERTIFICATION

34.     The class is ascertainable by objective criteria.  The Settlement Class Members means: any and all individuals employed by the CBS Defendants at CEVA Freight, LLC, CEVA Logistics U.S., Inc. and/or any other location of CEVA, CEVA's parents or any CEVA-related entity operating in California during the Class Period (April 17, 2011 through the date of preliminary approval of this Settlement by the Court).  Excluded from the definition of "Class" or "Class Member" are any individuals directly hired by any CEVA-related entity, including CEVA Freight, LLC and CEVA Logistics U.S., Inc. for the period of time that the individuals were employed directly by any CEVA related entity, including CEVA Freight, LLC and CEVA Logistics U.S., Inc.  (Stipulation, ¶¶ 1.16, 1.17.)

35.     The class sufficiently numerous.  Based upon CBS Defendants' records, there are approximately 4,407 Settlement Class Members.  Plaintiff's counsel believes that the data is reliable; it is supported by comprehensive data supplied by CBS Defendants.  I anticipate that the final number may vary slightly because of updates to the Settlement Class member counts and additional efforts to ensure that the Settlement Class list does not contain duplicate entries.

36.     Plaintiff is typical of the Settlement Class.  Plaintiff is a former employee of Defendant. Plaintiff worked during the class period.  Plaintiff's claims are typical of the Settlement Class proposed in this settlement.  Like other class members, Plaintiff was a non-exempt employee who worked for CBS Defendants in California and was subject to the same policies regarding meal and rest breaks and security procedures as the class members. No unique defenses applicable to Plaintiff have been identified that do not also exist as to other Settlement Class members.

37.     Common *issues* exist and predominate.  Here, a limited set of employment practices are at issue, including, for example: (1) whether CEVA facility security policies and procedures resulted in legally deficient meal periods and rest breaks for Class Members; (2) whether CEVA facility security policies and procedures resulted in uncompensated time under the employer's control; (3) whether, as a result of these issues, CBS Defendants violated the itemized wage statement provisions of Labor Code section 226 by not providing accurate information as to wages; and (4) whether the CBS Defendants' policies and practices violated California Business & Professions Code sections 17200 *et seq.*. The

factual and legal issues are the same for all of the identified class members, including Plaintiff.

38.     My Declaration, in Paragraphs above, summarizes the firm's experience that establishes its adequacy to represent the settlement Class.  Plaintiff's counsel has no known conflicts of interest with absent Settlement Class Members.  Plaintiff has demonstrated, through his participation in this action, his willingness to serve as a representative for the Class.  Plaintiff has no known conflict of interest with absent Settlement Class Members and has agreed to place the class's interests above his own.  Plaintiff's actions also demonstrate his adequacy.

39.     By consolidating approximately 4,407 potential individual actions into one proceeding, this Court's use of the class action device enables it to manage this litigation in a manner that serves the economics of time, effort and expense for the litigants and the judicial system.  Absent class treatment, similarly-situated employees with small but potentially meritorious claims for damages would, as a practical matter, have no means of redress because of the time, effort and expense required to prosecute individual actions.  Moreover, in the context of settlement, superiority concerns are almost non-existent, since case management is controlled and a methodology for trial need not be identified.


<u>EXHIBITS</u>

40.     As noted above, a true and correct copy of the STIPULATION AND AGREEMENT TO SETTLE CLASS ACTION AND LIMITED RELEASE is attached hereto as Exhibit "1."  The Stipulation includes the internally referenced Exhibits attached thereto.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed this 19th day of September 2017, at Beverly Hills, California.

_____
H. Scott Leviant, "Declarant"

# EXHIBIT "1"

## STIPULATION AND AGREEMENT TO SETTLE CLASS ACTION AND LIMITED RELEASE

### EARL FRONDA V. STAFFMARK HOLDINGS, INC. ET AL.

### (United States District Court, Northern District of California)

### Case No. 3:15-CV-02315- MEJ

IT IS HEREBY STIPULATED AND AGREED by and among the undersigned Parties, subject to the approval of the Court, that the settlement of this action as between the undersigned Parties shall be effectuated upon and subject to the following terms and conditions. Capitalized terms used herein shall have the meanings set forth in Article I or elsewhere in this Stipulation and Agreement to Settle Class Action and Limited Release ("Agreement").

This Agreement is made by and between Defendants, CBS Personnel Services, LLC and Staffmark Holdings, Inc. (the "CBS Defendants," defined below, at Section 1.1(b)(5)); Plaintiff, Earl Fronda; the individuals defined below as the "Class" and/or "Class Members," and the individuals and law firms defined below as "Class Counsel" and "Defense Counsel."

The Parties agree that the case known as *Earl Fronda v. Staffmark Holdings, Inc. et al*, United States District Court, Northern District of California, Case No. 3:15-CV-02315-MEJ (hereinafter the "Litigation") shall be, and hereby is, ended, settled, resolved, and concluded as to the CBS Defendants only (and, where applicable, as to Class Members' claims against the Released Parties, defined below), by agreement of CBS Defendants to pay the maximum amount of five million six hundred thousand dollars ($5,600,000.00), which is inclusive of all damages, wages, penalties, restitution, interest, costs, and attorney's fees, with the exception of CBS Defendants' portion of payroll taxes associated with payment of wages, upon the terms and conditions of this Agreement and for the consideration set forth herein, including but not limited to a limited release and waiver of all claims against CBS Defendants by the Class, Class Counsel, and Plaintiff as set forth herein. In no event shall CBS Defendants be required to pay more than five million six hundred thousand dollars ($5,600,000.00), except for the payment of the employer's portion of payroll taxes associated with the payment of any monies classified as wages under this Agreement.

### ARTICLE I
### Definitions.

1.1   <u>Definitions.</u>

(a)   The following terms are used in this Agreement. These terms are described in the sections listed below. The terms are listed in alphabetical order for ease of reference.

(1)   "Administration Costs" – Section 1.1(b)(20)

(2)   "Agreement," "Settlement Agreement," or "Stipulation and Agreement" – Section 1.1(b)(1)

(3)     "Carson Location" – Section 1.1(b)(15)

(4)     "Class" or "Class Members" – Section 1.1(b)(4)

(5)     "Class List" – Section 1.1(b)(14)

(6)     "Class Member Claims" – Section 1.1(b)(11)

(7)     "Class Counsel" – Section 1.1(b)(6)

(8)      "Class Member Released Claims" – Section 1.1(b)(32)

(9)     "Class Period" – Section 1.1(b)(12)

(10)    "Court" – Section 1.1(b)(9)

(11)    "CBS Defendants" – Section 1.1(b)(5)

(12)    "Defense Counsel" or "Counsel for CBS Defendants" – Section 1.1(b)(7)

(13)    "Effective Date" – Section 1.1(b)(30)

(14)    "Enhancement Award" – Section 1.1(b)(28)

(15)    "Final Fairness and Approval Hearing" – Section 1.1(b)(23)

(16)    "Final Order and Judgment" – Section 1.1(b)(24)

(17)    "Individual Class Member Settlement Amount" – Section 1.1(b)(29)

(18)    "Litigation" – Section 1.1(b)(10)

(19)     "Net Settlement Sum" – Section 1.1(b)(27)

(20)     "Notice of Class Settlement" – Section 1.1(b)(18)

(21)    "Participating Class Members" – Section 1.1(b)(22)

(22)    "Parties" – Section 1.1(b)(8)

(23)    "Plaintiff" – Section 1.1(b)(3)

(24)    "Preliminary Order Approving Class Action Settlement" – Section 1.1(b)(13)

(25)    "Qualified Settlement Fund" – Section 1.1(b)(26)

(26)    "Released Parties" – Section 1.1(b)(31)

(27)    "Request To Be Excluded" – Section 1.1(b)(21)

(28)   "Settlement" – Section 1.1(b)(2)

(29)   "Settlement Administrator" – Section 1.1(b)(17)

(30)   "Settlement Sum" – Section 1.1(b)(25)

(31)   "Summary Sheet" – Section 1.1(b)(19)

(32)   "Torrance Location" – Section 1.1(b)(16)

(b)   Unless otherwise defined herein, the following terms used in this Agreement shall have the meanings ascribed to them below:

(1)   "Agreement," "Settlement Agreement," or "Stipulation and Agreement" means this Stipulation and Agreement to Settle Class Action and Limited Release.

(2)   "Settlement" means the disposition of this Litigation as to CBS Defendants and all related claims against CBS Defendants as effectuated by this Agreement.

(3)   "Plaintiff" is Earl Fronda.

(4)   "Class" or "Class Members" means any and all individuals employed by CBS Defendants at CEVA Freight, LLC, CEVA Logistics U.S., Inc. and/or any other location of CEVA, CEVA's parents or any CEVA-related entity operating in California during the Class Period. Expressly excluded from the definition of "Class" or "Class Member" are any individuals directly hired by any CEVA-related entity, including CEVA Freight, LLC and CEVA Logistics U.S., Inc. for the period of time that the individuals were employed directly by any CEVA related entity, including CEVA Freight, LLC and CEVA Logistics U.S., Inc.

(5)   "CBS Defendants" refers to Staffmark Holdings, Inc. and CBS Personnel Services, LLC.

(6)   "Class Counsel" is counsel for the Class Members:

Shaun Setareh, SBN 204514
H. Scott Leviant, SBN 200834
Setareh Law Group
9454 Wilshire Blvd., Suite 907
Beverly Hills, Ca 90212
Telephone: (310) 888-7771
Fax: (310) 888-0109

(7)   "Defense Counsel" or "Counsel for CBS Defendants" is:

- 3 -

Barbara S. Van Ligten, SBN 132217
Susan M. Steward, SBN 224805
Atkinson, Andelson, Loya, Ruud & Romo
12800 Center Court Drive, Suite 300
Cerritos, California 90703-9364
Telephone: (562) 653-3200
Fax: (562) 653-3333

(8)     "Parties" refers to CBS Defendants, Plaintiffs, Class Members, Class Counsel, and Defense Counsel.

(9)     "Court" means the United States District Court, Northern District of California, where the Litigation is now pending.

(10)    "Litigation" means the matter currently pending in the United States District Court, Northern District of California, entitled *Earl Fronda v. Staffmark Holdings, Inc., CEVA Logistics, U.S.A., Inc. and Does 1-50,* Case No. 3:15-CV-02315-MEJ.

(11)    "Class Member Claims" are the following claims asserted against CBS Defendants which are included in the Litigation: (1) Failure to Provide Meal Periods; (2) Failure to Provide Rest Periods; (3) Failure to Pay Hourly Wages; (4) Failure to Provide Accurate Itemized Wage Statements; (5) Failure to Pay Waiting Time Penalties and Wages; (6) Failure to Pay Wages Without Discount; (7) Unfair Business Practices that relate to any of these claims; and (8) Civil Penalties under the Private Attorney Generals Act ("PAGA").

(12)    "Class Period" is the period for the Class Member Claims, which is the period of April 17, 2011 through the date of preliminary approval of this Settlement by the Court.

(13)    "Preliminary Order Approving Class Action Settlement" refers to the Order of the Court wherein the Court preliminarily approves the class action settlement set forth in this Agreement, certifies the Class for settlement purposes only, approves the Notice of Class Settlement and Summary Sheet, and sets a Final Fairness and Approval Hearing.

(14)    "Class List" is the list of all Class Members that CBS Defendants will provide to the Settlement Administrator pursuant to section 3.3(a) of this Agreement.

(15)    "Carson Location" refers to the CEVA location located on Bishop Avenue in Carson, California.

(16)    "Torrance Location" refers to the CEVA location located on Western Avenue in Torrance, California.

- 4 -

(17)   "Settlement Administrator" means the firm of KCC, LLC, which the Parties have agreed will be responsible for the following: (i) mailing the Notice of Class Settlement and Summary Sheet to Class Members; (ii) calculating the amounts due to each Participating Class Member pursuant to the Settlement; (iii) notifying the Parties and making recommendations to the Court regarding any disputes regarding claims by Participating Class Members; (iv) reporting to the Parties and the Court as set forth in the Agreement; (v) establishing a Qualified Settlement Fund associated with this Agreement; (vi) making all payments required by this Agreement from the Qualified Settlement Fund; and (vii) issuing all tax related documents associated with the payments under this Agreement.   Any correspondence sent to the Settlement Administrator should be addressed as follows:  Patrick J. Ivie  Senior Executive Vice President, KCC LLC, 2335 Alaska Avenue, El Segundo, CA 90245, or such other mailing address that KCC subsequently establishes for this Settlement.  A case administrator will be designated by KCC for e-mail communications regarding administration.

(18)   "Notice of Class Settlement" shall mean the Notice of Conditional Certification of Class and Preliminary Approval of Proposed Settlement attached as Exhibit "A."  It is the notice approved by the Parties and subject to Court approval which the Settlement Administrator will mail to each Class Member explaining the terms of this Agreement and the settlement process.

(19)   "Summary Sheet" is the form that will be prepared by the Settlement Administrator and sent to each Class Member that sets forth the number of weeks the Class Member worked as a temporary employee for Defendants at a CEVA location in California during the Class Period.  A copy of the form for the Summary Sheet, which has been agreed to by the Parties, is attached hereto as Exhibit "B".

(20)   "Administration Costs" shall mean all costs incurred by the Settlement Administrator in administrating this Settlement, including, but not limited to address verification measures; mailing of Notice of Class Settlement and Summary Sheet; calculation, preparation and issuance of Individual Settlement Payments to Class Members; administration of any uncashed checks; preparation and issuance of checks to Class Counsel for cost and attorneys' fees; preparation and issuance of checks for Enhancement Awards to Plaintiff; preparation of issuance of check to California's Labor Workforce and Development Agency ("LWDA"); and the preparation and issuance of all tax related documents.

(21)   "Request To Be Excluded" refers to a letter setting forth the name, present address and a simple statement by a Class Member electing to be excluded from the settlement of the Class Member Claims.

(22)   "Participating Class Members" means those Class Members who do not file a valid and timely Request to Be Excluded from the Class pursuant to section 3.4(a) of this Agreement.

(23)   "Final Fairness and Approval Hearing" refers to the hearing which will be held by the Court wherein the Court enters a final order certifying the Class for settlement purposes only, approving this Agreement, and entering a judgment dismissing the Litigation as to CBS Defendants with prejudice.

(24)   "Final Order and Judgment" refers to the order of the Court granting final approval of this Agreement as to Participating Class Members and entering a judgment approving this Agreement on substantially the terms provided herein or as the same may be modified by written agreement of the Parties.

(25)   "Settlement Sum" refers to the amount of five million six hundred thousand dollars ($5,600,000.00) which, except as provided below, is the maximum payment CBS Defendants shall be required to make toward the Settlement of this Litigation for all damages, wages, penalties, restitution, interest, costs, enhancement awards, administration costs, payments to the California Labor and Workforce Development Agency, and attorney's fees.  The only payment that CBS Defendants are required to make outside the Settlement Sum in connection with this Settlement is the reimbursement to the Settlement Administrator for the costs incurred by the Settlement Administrator in paying the employer's share of the payroll tax costs which must be remitted in connection with settlement payments made under section 3.6(c)(2)(E)(i)(II) of this Agreement.

(26)   "Qualified Settlement Fund" shall refer to the bank account established by the Settlement Administrator from which all payments required under this Agreement shall be made, with the exception of the employer's share of payroll taxes associated with the payment of wages under this Agreement. The Qualified Settlement Fund shall be established as follows: (1) The Settlement Administrator shall establish a Qualified Settlement Fund with its own bank account for purposes of the administration of this Agreement; and (2) No later than five (5) days after the Effective Date of this Agreement, CBS Defendants shall issue a wire transfer to the Qualified Settlement Fund in the amount of the Settlement Sum, five million six hundred thousand dollars ($5,600,000.00).

(27)   "Net Settlement Sum" is the Settlement Sum of five million six hundred thousand dollars ($5,600,000.00) less Class Counsel's attorneys' fees and litigation costs, any Administration Costs, any Enhancement Award to the Plaintiff, and the payment to the California LWDA.  The Net Settlement Sum shall be the fund out of which Individual Settlement Payments shall

- 6 -

be made to Participating Class Members under section 3.6(b) of this Agreement.

(28)  "Enhancement Award" is the monetary amount not to exceed ten thousand dollars ($10,000.00) which will be paid under section 3.6(f) of this Agreement to Plaintiff for his assistance in the Litigation, subject to Court approval.

(29)  "Individual Class Member Settlement Amount" is the amount of the Net Settlement Sum which is allocated to each individual Participating Class Member.

(30)  "Effective Date" means the date on which the settlement embodied in this Agreement becomes effective.   The Settlement embodied in this Agreement shall become effective when all of the following have occurred: (a) this Agreement has been executed by all Parties; (b) The Court has given preliminary approval to the Settlement set forth in this Agreement; (c) notice has been given to the Class Members providing them with an opportunity to opt out of the Settlement; (d) the Court has held a Final Fairness and Approval Hearing and entered a Final Order and Judgment certifying the Class for settlement purposes only, dismissing the Litigation as to CBS Defendants with prejudice, and approving this Agreement; and (e) the Court has dismissed the Litigation and all claims and causes of action therein as to CBS Defendants with prejudice.

(31)  "Released Parties" means CBS Defendants, their past and present divisions, affiliates, affiliated entities, related entities, parents, subsidiaries, predecessors, successors, joint ventures, assigns, and their respective shareholders, owners, officers, directors, employees, agents, trustees, attorneys, managers, operators, insurers, representatives, administrators, fiduciaries, beneficiaries, subrogees, executors, partners, privies, representatives, consultants, and attorneys. To the extent Class Member Released Claims also include any claims against CEVA Logistics U.S. Inc., CEVA Freight LLC and/or any other CEVA entity, CEVA Logistics U.S. Inc., CEVA Freight LLC, and/or any other CEVA entity are also "Released Parties."

(32)  "Class Member Released Claims" means any and all claims, rights, demands, liabilities, and causes of action of every nature and description, known and unknown, in law or in equity, as alleged in the Complaint and any Amended Complaint in this Litigation or at the mediations conducted in this matter on January 4, 2017 and April 26, 2017, arising from or related to the following claims against any and all of the CBS Defendants: (1) Failure to Provide Meal Periods; (2) Failure to Provide Rest Periods; (3) Failure to Pay Hourly Wages; (4) Failure to Provide Accurate Itemized Wage Statements; (5) Failure to Pay Waiting Time Penalties and Wages; (6) Failure to Pay Wages Without Discount;

(7) Unfair Business Practices that relate to any of these claims; and (8) Civil Penalties under the Private Attorney Generals Act ("PAGA"). Class Member Released Claims shall also mean any other claims, whether known or unknown, suspected or unsuspected, that were or could have been alleged or asserted based upon the legal and factual allegations in this matter and related to a Class Member's employment as a temporary employee of CBS Defendants at a CEVA location during the Class Period, including all claims that were or could have been brought under the California Labor Code, the applicable Industrial Wage Commission Wage Orders, the Fair Labor Standards Act, Business and Professions Code section 17200 as it relates to the underlying Labor Code claims referenced above, and the Private Attorneys General Act as it relates to the underlying Labor Code claims referenced above, including any damages, restitution, interest, waiting time penalties, penalties, punitive damages, attorneys' fees, costs, or any other form of relief whatsoever, during the Class Period. Class Member Released Claims will also include any claims against CEVA Logistics U.S. Inc., CEVA Freight LLC and/or any other CEVA entity to the extent that any of the released claims as to CBS Defendants would apply to CEVA Logistics U.S. Inc., CEVA Freight LLC and/or any other CEVA entity.

## ARTICLE II
### Background.

2.1   Background.

(a)   On April 17, 2015, Plaintiff filed a complaint in the Alameda County Superior Court entitled *Earl Fronda v. Staffmark Holdings, Inc., CEVA Logistics U.S., Inc., Amazon.com LLC and Does 1 through 50, inclusive,* Alameda County Superior Court Case No. RG15766849.  The Litigation was brought by Plaintiff on behalf of the above-referenced Class Members and other putative class members directly employed by CEVA but not included in this proposed settlement.  The following causes of action were asserted in the Complaint: (1) Failure to Provide Meal Periods; (2) Failure to Pay Hourly Wages; (3) Failure to Provide Accurate Written Wage Statements; (4) Failure to Timely Pay All Final Wages; (5) Failure to Pay Wages Without Discount; and (6) Unfair Competition.

(b)   On May 19, 2015, Plaintiff filed a First Amended Complaint containing the following causes of action: (1) Failure to Provide Meal Periods; (2) Failure to Pay Hourly Wages; (3) Failure to Provide Accurate Written Wage Statements; (4) Failure to Timely Pay All Final Wages; (5) Failure to Pay Wages Without Discount; (6) Unfair Competition; and (7) Civil Penalties Under the Private Attorneys General Act.

(c)   On May 22, 2015, Defendant, CEVA Logistics U.S. Inc., removed this action to the federal District Court of California, Northern District, where it was assigned Case No.  3:15-CV-02315- MEJ.

(d)     On June 12, 2015, pursuant to stipulation, an Order was entered dismissing Defendant, Amazon.com LLC as a defendant in this action.

(e)     On July 13, 2015, Plaintiff filed a Second Amended Complaint, setting forth the following causes of action: (1) Failure to Provide Meal Periods; (2) Failure to Provide Rest Breaks; (3) Failure to Pay Hourly Wages; (4) Failure to Provide Accurate Written Wage Statements; (5) Failure to Timely Pay All Final Wages; (6) Failure to Pay Wages Without Discount; (7) Unfair Competition; and (8) Civil Penalties Under the Private Attorneys General Act.

(f)     On October 19, 2015, an Order was entered adding Defendant CBS Personnel Services LLC as a defendant in this action.

(g)     On December 27, 2015, Plaintiff filed a Third Amended Complaint, setting forth the following causes of action: (1) Failure to Provide Meal Periods; (2) Failure to Provide Rest Breaks; (3) Failure to Pay Hourly Wages; (4) Failure to Provide Accurate Written Wage Statements; (5) Failure to Timely Pay All Final Wages; (6) Failure to Pay Wages Without Discount; (7) Unfair Competition; and (8) Civil Penalties Under the Private Attorneys General Act.

(h)     CBS Defendants filed an Answer to the Third Amended Complaint, wherein CBS Defendants denied the allegations contained in the Third Amended Complaint.

(i)     Through the Litigation, Plaintiff and the Class sought damages, wages, penalties, restitution, disgorgement, punitive and exemplary damages, costs, interest and attorneys' fees.  CBS Defendants deny the allegations asserted in the Litigation and assert that they have no liability for any of Plaintiff's or the Class Members' claims under any statute, wage order, rule, regulation, common law, or equitable theory.

(j)     On January 4, 2017, mediation was held between the Parties with mediator, Hon. Edward A. Infante (Ret.).  The mediation included discussion and examination of the Parties' respective positions on the legal and factual issues raised in the Litigation.  The matter was not resolved that day.  Instead, Judge Infante continued to communicate with the Parties, and a second mediation was scheduled.  A second day of mediation was held on April 26, 2017 between the Parties with Judge Infante acting as mediator.  The mediation included discussion and examination of the Parties' respective positions on the legal and factual issues raised in the Litigation.  After the two days of mediation, which included arms' length negotiations, the Parties agreed to settle this matter for the Settlement Sum of five million six hundred thousand dollars ($5,600,000.00).  The Parties reached this Settlement after conducting both formal and informal discovery and investigation.

(k)     Plaintiff and Class Counsel concluded, after taking into account the sharply disputed factual and legal issues involved in this Litigation, the risks attending further prosecution, the discovery and investigation conducted to date, and the

substantial benefits received and to be received pursuant to the compromise and settlement of the Litigation, that settlement on the terms hereinafter set forth is in the best interests of Plaintiff and the Class.

(l)    Plaintiff and Class Counsel are mindful of the problems of proof they face, many of which were discussed during the mediation.  As such, Class Counsel believes that the Settlement reached is fair to the Class and confers substantial benefits on the Class, providing all Class Members with recoveries in the near term.  Based on their evaluation, Class Counsel determined that the settlement set forth in this Agreement is in the best interest of the Class.

(m)    Similarly, CBS Defendants concluded that there were benefits associated with settling.  Thus, after taking into account the sharply disputed factual and legal issues involved in the Litigation, the risks attending further defense, the expense and burden of protracted Litigation, and their desire to put the controversy to rest, CBS Defendants believe that settlement on the terms hereinafter set forth is in the best interests of CBS Defendants.

(n)    This Settlement contemplates (a) entry of an Order approving certification of settlement class for settlement purposes only; (b) entry of an Order approving Class Counsel as counsel for the Plaintiff and Class Members in this matter; (c) entry of a final Order approving settlement of this class action as to these CBS Defendants; (d) dismissal of the Litigation on the merits with prejudice as to the CBS Defendants; and (e) discharge of all Parties and their respective counsel from liability for any and all of the Class Member Released Claims.

## ARTICLE III
## Approval and Implementation of Settlement.

3.1    <u>Cooperation</u>.

The Parties will cooperate in obtaining, through a joint motion, a Preliminary Order Approving Class Action Settlement from the Court approving the Class for settlement purposes only.  The Parties agree to use their best efforts to expedite the preparation and submission of the settlement documents.  The Parties further agree to fully cooperate in the drafting and/or filing of any further documents or filings reasonably necessary to be prepared or filed, to take all steps that may be requested by the Court relating to, or that are otherwise necessary to the approval and implementation of this Agreement and shall otherwise use their respective best efforts to obtain the Court's certification of the Class for settlement purposes only, as well as Court approval of and implementation of this Agreement including, but not limited to CAFA compliance.

3.2    <u>Preliminary Approval</u>.

The Parties will seek to obtain the Court's preliminary approval of the Settlement as directed by the Court.  Class Counsel and Defense Counsel will jointly lodge this Agreement and a proposed Notice of Class Settlement (Exhibit "A") and Summary Sheet (Exhibit "B") with the Court for its preliminary approval.  The Court's preliminary approval of this Agreement shall be

embodied in an Order granting preliminary approval of the Class Action Settlement, certifying the Class for settlement purposes only, approving Class Counsel as counsel for the Plaintiff and Class Members in this matter, approving the Notice of Class Settlement and Summary Sheet, setting a Final Fairness and Approval Hearing, and providing for notice of the class action and proposed Settlement ("Preliminary Order Approving Class Action Settlement").

3.3     Notice to Class Members.

Notice shall be provided to Class Members in the following manner:

(a)     No later than thirty (30) days after the entry of the Court's Preliminary Order Approving Class Action Settlement, CBS Defendants shall provide the Settlement Administrator with a list of all Class Members ("Class List"). The Class List shall state the last known home address and social security number for each Class Member. The Class List shall also denote the number of weeks worked by each Class Member during the Class Period at the Carson Location and Torrance Location. The Class List shall also denote the number of weeks worked by each Class Member at any CEVA location in California during the Class Period other than the Carson Location and/or the Torrance Location.

(1)     CBS Defendants will use their best efforts to ensure that every Class Member who worked for CBS Defendants during the Class Period is included on the Class List. An inadvertent failure to include an individual who should have been included as a Class Member shall not constitute a breach of this Agreement.

(b)     No later than five (5) days after the provision of the Class List by CBS Defendants to the Settlement Administrator, CBS Defendants shall file with the Court and provide Class Counsel with a declaration attesting to the forwarding of an accurate Class List to the Settlement Administrator.

(c)     No later than sixty (60) days after the Court's Preliminary Order Approving Class Action Settlement, the Settlement Administrator shall mail the Notice of Class Settlement and Summary Sheet to each Class Member.

(d)     If any Notice of Class Action Settlement and Summary Sheet is returned to the Settlement Administrator as undeliverable, the Settlement Administrator shall perform a National Change of Address ("NCOA") search in relation to the Class Member for whom the Notice of Class Action Settlement and Summary Sheet is returned. Within fifteen (15) days of the return of the Notice of Class Action Settlement and Summary Sheet, the Settlement Administrator shall mail by U.S. Mail a new Notice of Class Action Settlement and Summary Sheet to the Class Member at any additional address for the Class Member which is discovered through the NCOA search.

(e)     All costs of the mailing of the Notice of Class Settlement and Summary Sheet, whether foreseen or not, shall be part of the Administration Costs.

(f)     No later than twenty (20) days after the date of mailing of the Notice of Class Action Settlement and Summary Sheet as described in section 3.3(c), the Settlement Administrator shall provide Defense Counsel and Class Counsel with a declaration attesting to completion of the notice process, which shall be filed with the Court by Class Counsel no later than seven (7) days after receipt of the declaration.

(g)     Compliance with these procedures shall constitute due and sufficient notice to Class Members of this Settlement and shall satisfy the requirement of due process.  Nothing else shall be required of, or done by, the Parties, Class Counsel, and Defense Counsel to provide notice of the proposed Settlement.

3.4     <u>Responses to Notices</u>.

(a)     Request To Be Excluded.

(1)     Any Class Member who does not wish to participate in the Settlement as set forth in this Agreement and in the Notice of Class Settlement, shall send a Request To Be Excluded to the Settlement Administrator within thirty (30) days of the date of the initial mailing of the Notice of Class Settlement and Summary Sheet.

(2)     Any Class member who submits a valid and timely filed Request to Be Excluded from the Settlement and the Request to Be Excluded is approved by the Court, shall be excluded from this Settlement.

(3)     Those Class Members who submit valid and timely Requests To Be Excluded will not be entitled to file an objection related to any of the terms or conditions of this Agreement.  Class Members who fail to submit any timely and valid Request To Be Excluded shall be bound by all terms of the Agreement and shall be considered Participating Class Members.

(b)     Objections to Settlement.

(1)     Plaintiff may not object to this Agreement and/or the approval of this Settlement.

(2)     Any Class Member wishing to object to this Agreement and/or the approval of this Settlement shall inform the Court and the Parties in writing of his or her intent to object within thirty (30) days of the date of the initial mailing of the Notice of Class Settlement and Summary Sheet. The objection must state the ground for the objection.

(3)     Any Class Member who fails to file such a written statement of his or her intentions to object shall be foreclosed from making any objection to this Settlement.

- 12 -

(4)     Counsel for the Parties may file a response to any objection submitted by objecting Class Members.

(c)     Dispute Regarding Number of Weeks Worked.

If a Class Member disputes the number of weeks he/she worked for CBS Defendants at the Carson Location and/or the Torrance Location and/or any other CEVA location in California during the Class Period as stated in the Summary Sheet, the Class Member must send a letter to the Settlement Administrator disputing the number of weeks worked within thirty (30) days of the initial mailing of the Notice of Class Settlement and Summary Sheet.  The Class Member must state the number of weeks he/she believes are correct and include documentation to support his or her challenge.  Upon timely receipt of a letter disputing the number of weeks worked, the Settlement Administrator, in consultation with counsel for the settling Parties, will review the pertinent records and any documents provided by the Class Member and CBS Defendants showing the weeks worked by the Class Member and make a recommendation to the Court on all disputed claims.  The Settlement Administrator shall send written notice of its decision on any such claim to the Class Member, Class Counsel, and CBS Defendants' Counsel no later than ten (10) days prior to the Final Fairness and Approval Hearing.  The Court will decide any disputed claims at the Final Fairness and Approval Hearing.  The Court's decision will be final.

(d)     Individuals Not Identified on Class List.

If a person not identified on the Class List seeks inclusion in the Class, the Settlement Administrator shall independently review all submitted documentation and verify whether an individual is a qualified claimant entitled to a settlement payment, as determined by this Agreement.  All claims to be included in the Class must be made prior to the time that payment is made to the Class Members under section 3.6(c)(2)(E) so that all Class Members due any money under that section can be paid at the same time.  Any claim to be included in the Class which is made after payment is made under section 3.6(c)(2)(E) will be rejected. The Settlement Administrator shall report, in summary or narrative form, the substance of its findings.

3.5     <u>Final Fairness and Approval Hearing/Appeal</u>

(a)     Final Fairness and Approval Hearing

On the date set forth in the Preliminary Order Approving Class Action Settlement and Notice of Class Settlement, which shall be approximately one hundred and twenty (120) days after the initial mailing of the Notice of Class Settlement, a Final Fairness and Approval Hearing shall be held before the Court in order to (1) review this Agreement and determine whether the Court should give its final approval,  and (2) consider any timely objections made pursuant to section 3.4 of this Agreement and all responses by the Parties to these objections.  At the Final Fairness and Approval Hearing, the Parties shall ask the Court to give final approval to this Agreement and shall submit to the Court a proposed Final Order and Judgment approving the Settlement and entering judgment as to CBS Defendants according to this Agreement.

(b)     Waiver of Right to Appeal

Provided the Final Order and Judgment is consistent with the terms and conditions of this Agreement, all Participating Class Members hereby waive any and all rights to appeal from the Final Order and Judgment, including all rights to any post-Final Order and Judgment proceeding and appellate proceeding, such as a motion to vacate or set aside the Final Order and Judgment, a motion for a new trial, and any extraordinary writ, and the Final Order and Judgment shall become final and not-appealable at the time it is entered.  This waiver does not include any waiver of the right to oppose any appeal, appellate proceedings, or post-Final Order and Judgment proceedings.

(c)     Vacating, Reversal or Material Modification of Final Order and Judgment on Appeal or Review

If, after a notice of appeal or a petition for a writ or any other motion, petition, or application, the reviewing court vacates, reverses or modifies the Final Order and Judgment such that there is a material modification to the Settlement and the Court's decision is not completely reversed, and the Final Order and Judgment is not fully affirmed by a higher court, Plaintiff and CBS Defendants shall each have the right, but not the obligation, to void the Settlement, which the Party must do by giving written notice to the other Parties, the final reviewing Court, and the Court no later than ten (10) days after the final reviewing Court's decision vacating, reversing or materially modifying the Final Order and Judgment becomes final and non-appealable.  The Parties shall only have the right to void that portion of the Settlement, i.e. the settlement of the Class Member Claims, which is vacated, reversed or modified.  A vacation, reversal, or modification of the Court's award of the Enhancement Awards or Class Counsel's fees or costs shall not constitute a vacation, reversal or material modification of the Final Order and Judgment within the meaning of this section.

3.6    Settlement Payment Procedures.

(a)     Settlement Sum.

The total and all-inclusive Settlement Sum shall be five million six hundred thousand dollars ($5,600,000.00).  No later than five (5) days after the Effective Date of this Agreement, CBS Defendants shall cause a wire transfer to the Qualified Settlement Fund in the amount of the Settlement Sum, five million six hundred thousand dollars ($5,600,000.00).  All settlement amounts to be paid to Plaintiff, Participating Class Members, Class Counsel, the Settlement Administrator, and the California Labor and Workforce Development Agency shall be paid from this Qualified Settlement Fund.  The only payment CBS Defendants are required to make outside the Settlement Sum is the reimbursement to the Settlement Administrator of the employer payroll tax costs which must be remitted in connection with settlement payments made under section 3.6(c)(2)(E)(i)(II) of this Agreement.

(b)     Calculation of Payments to Participating Class Members From the Settlement Sum.

(1)     The Settlement Administrator shall determine the amount of the Net Settlement Sum.  The Net Settlement Sum will be determined by

- 14 -

deducting the following amounts from the Settlement Sum of five million six hundred thousand dollars ($5,600,000.00):

(A)    The litigation costs to Class Counsel as approved by the Court pursuant to section 3.6(e) of the Agreement;

(B)    Attorney's fees to Class Counsel as approved by the Court pursuant to section 3.6(e) of this Agreement;

(C)    The seventy-five thousand dollar ($75,000.00) payment to the California Labor and Workforce Development Agency pursuant to section 3.6(g) of this Agreement;

(D)    The Administration Costs of up to twenty-five thousand dollars ($25,000.00), or a greater amount if the amount exceeds twenty-five thousand dollars ($25,000.00), as approved by the Court pursuant to section 3.6(d) of this Agreement; and

(E)    The Enhancement Award to the Plaintiff as approved by the Court pursuant to section 3.6(f) of this Agreement.

(2)    The Net Settlement Sum shall be allocated to the Participating Class Members as follows:

(A)    Each Participating Class Member shall be paid his/her proportionate share of the Net Settlement Sum.

(B)    The proportionate share due to each Participating Class Member shall be determined by dividing the Net Settlement Sum by the total number of weeks worked for CBS Defendants by all Participating Class Members during the Class Period at any CEVA location in California. This number will be multiplied by the number of weeks worked by each Class Member, which will be determined by multiplying the number of weeks worked at the Carson Location and Torrance Location by two (2) and adding this number to the number of weeks worked by the Class Member during the Class Period at all CEVA locations in California other than the Carson Location and the Torrance Location. The amount due to each Participating Class Member under this section is referred to as the Individual Class Member Settlement Amount.

(3)    The Individual Class Member Settlement Amount to each Class Member will be allocated as follows: one-third to wages, one-third to penalties, and one-third to interest. The Parties specifically agree and acknowledge that the amounts allocated as payment for penalties and wages was decided upon by Plaintiff and his counsel, and not upon any advice, counsel, or demand by CBS Defendants and/or its agents with respect to the allocation herein. Plaintiff represents that this allocation is

- 15 -

fair and reasonable under the facts of this case. Plaintiff further acknowledges that CBS Defendants are relying solely on his representation in this regard and on the request by Plaintiff with respect to this allocation.

(4)    The Parties recognize and agree that the various claims raised by the Class are extremely difficult to quantify with certainty for any given time period, or at all. CBS Defendants deny class-wide liability for all such claims. Assuming liability, the claims are subject to several different calculations and formulae and the uncertainty as to the applicable standards regarding de minimus time and the uncertainty as to whether Class Members spent time in security lines which resulted in them not being provided meal and rest periods. The Parties also recognize and agree that it would be difficult to quantify the amount of overtime worked by any Class Member. The Parties hereby agree that the formula for allocating the settlement payments to Class Members provided herein is reasonable and that the settlement payments provided herein are designed to provide a fair settlement to the Class Members, despite the uncertainties associated with the amounts alleged to be owed to each Class Member.

(c)    Payments from the Settlement Sum

(1)    Not later than thirty (30) days following the Effective Date of this Agreement, the Settlement Administrator will prepare a spreadsheet that indicates the amount each Class Member is entitled to receive from the Net Settlement Sum. The Settlement Administrator will send the spreadsheet which sets forth the amount that the Settlement Administrator must pay each Class Member from the Net Settlement Sum to Class Counsel and Defense Counsel. Names, social security numbers, and addresses of Class Members will not be provided in the list provided to Class Counsel.

(2)    Not later than forty-five (45) days following the Effective Date of the Settlement the Settlement Administrator will issue the following checks from the Qualified Settlement Fund:

(A)    A check made payable to Setareh Law Group for costs and attorney's fees in the sum approved by the Court. The Settlement Administrator shall forward this check to Setareh Law Group;

(B)    A check made payable to KCC, LLC for Administration Costs in the sum approved by the Court. The Settlement Administrator shall retain this check;

(C)    A check made payable to Plaintiff for an Enhancement Award in the sum approved by the Court. The Settlement Administrator shall forward this check to Setareh Law Group;

- 16 -

(D)    A check in the amount of seventy-five thousand dollars ($75,000.00) made payable to the California Labor and Workforce Development Agency.  The Settlement Administrator shall forward this check to the California Labor and Workforce Development Agency; and

(E)    Checks made payable to each Participating Class Member for payment of each Participating Class Member's Individual Class Member Settlement Amount in the amounts reflected on the spreadsheet provided by the Settlement Administrator under section 3.6(c)(1) of this Agreement.

    (i)    It is understood and agreed that the Individual Class Member Settlement Amount due to each Participating Class Member shall be paid in the form of two checks to each Participating Class Member.

        (I)    The first check will be for two-thirds of the Individual Class Member Settlement Amount due to each Participating Class Member under section 3.6(b)(2)(B) of this Agreement, which shall represent payment of penalties and interest.  This payment will not be subject to the withholding of local, state and federal taxes.  The Settlement Administrator will issue an IRS Form 1099 to each Class Member in relation to this payment.  This amount shall be paid entirely out of the Net Settlement Sum.

        (II)    The second check will be for one-third of the Individual Class Member Settlement Amount due to each Participating Class Member under section 3.6(b)(2)(B) of this Agreement, which shall represent payment for alleged unpaid wages.  This payment shall be subject to the withholding of all applicable local, state, and federal taxes.  Applicable payroll taxes and/or contributions will be deducted from the amount paid to the Class Members.  These amounts shall be paid entirely out of the Net Settlement Sum.  The Settlement Administrator will issue an IRS Form W-2 to each Class Member in relation to this payment.  The Settlement Administrator will pay the employer's share of the payroll taxes associated with these payments separate and apart from the Qualified Settlement Fund and Settlement Sum.  CBS Defendants will reimburse the Settlement

Administrator for the amount the Settlement Administrator pays for the employer's share of payroll taxes associated with the payments to Class Members contemplated by this section of the Agreement.

(ii)    The back of each check issued to the Participating Class Members will state, "My signature hereon constitutes a full and complete release by me of Staffmark Holdings, Inc. and CBS Personnel Services LLC and all "Released Parties" as described in the Stipulation and Agreement to Settle Class Action and Limited Release for all claims alleged in or arising out of the Litigation known as *Fronda v. Staffmark Holdings, Inc. et al.*, Case No. 3:15-CV-02315-MEJ, including, but not limited to, all "Class Member Released Claims" as described more fully in the Stipulation and Notice to the Class."

(3)    The Settlement Administrator will mail the settlement checks to the Participating Class Members no later than forty-five (45) days following the Effective Date of this Agreement.

(4)    If checks remain uncashed after ninety (90) days, a reminder postcard will be sent to those Class Members with uncashed checks, advising them to cash the check or request a replacement check.  If checks remain uncashed after 150 days, a similar postcard will be sent to those Class Members with uncashed checks.  At 180 days, all uncashed checks will be voided, and the funds representing the amount of voided checks will be paid as follows:  25% of the funds will be paid to the California State Equal Access Fund, 25% of the funds will be paid to the California State Treasury for deposit in the Trial Court Improvement and Modernization Fund, and 50% to  Legal Aid at Work (https://legalaidatwork.org/), a non-profit organization supporting low wage earners with employment issues, which is a cy pres distribution which has been agreed to by the Parties as directly related to the goals reflected by the statutes and regulations underlying the Class Member Claims in this litigation and consistent with recent changes to California law governing cy pres distributions.

(d)    Administration Costs.

The Administration Costs of up to twenty-five thousand dollars ($25,000.00) shall be paid from the Settlement Sum.  The Parties agree to work together to reduce this amount.  If the Administration Costs exceed twenty-five thousand dollars ($25,000.00), the amount in excess of twenty-five thousand dollars ($25,000.00) which is approved by the Court shall also be paid from the Settlement Sum.

(e)    Attorney's Fees and Costs.

- 18 -

All Class Counsels' Attorney's Fees and Costs shall be paid from the Settlement Sum. Plaintiff and Class Counsel represent that Class Counsel are the only attorneys who have provided services for Plaintiff and the Class Members in this action. The Parties agree that only the firm designated as Class Counsel in this Agreement and approved by the Court can submit an application for attorney's fees in this matter and/or receive any attorney's fees under this Agreement. Class Counsel will request the payment of up to one-third of the Settlement Sum or one million eight hundred and sixty-six thousand, six hundred and sixty-six dollars and sixty-seven cents ($1,866,666.67) as Class Counsel's Attorneys' Fees and Costs. CBS Defendants agree they will not object to this request. If the attorney's fees and costs incurred by Class Counsel are more than one million eight hundred and sixty-six thousand, six hundred and sixty-six dollars and sixty-seven cents ($1,866,666.67), the difference shall come from the Settlement Sum. The Parties have already shared the costs of mediator Judge Infante, and said mediation fees shall not come out of the Settlement Sum, except to the extent that the Court approves reimbursement of said fees as litigation costs to Class Counsel from the Settlement Fund.

(f)    Enhancements.

Class Counsel will request the payment of an Enhancement Award to named Plaintiff in the sum of no more than ten thousand dollars ($10,000.00). CBS Defendants agree they will not object to this request. Any and all Enhancement Awards shall be deducted from the Settlement Sum.

Because it is the intent of the Parties that the Enhancement Award represents payment to the Plaintiff for his service to the Class Members, and not wages, the payment shall be reported by the Settlement Administrator on IRS Form 1099 to Plaintiff, which Form 1099 shall be provided to the Plaintiff and any applicable governmental authorities, and no taxes will be withheld from the Enhancement Award. Although it is the contemplation of the Parties that the Enhancement Award does not represent wages, the Internal Revenue Service, the California Franchise Tax Board, or some other taxing authority may take the position that some or all of the Enhancement Award constitutes wages for income tax and withholding purposes. Plaintiff agrees to assume the responsibility of remitting to any relevant taxing authority the amounts required by law, if any, to be withheld by CBS Defendants from the Enhancement Award under this Agreement. In addition, Plaintiff shall hold CBS Defendants and the Released Parties harmless and indemnify CBS Defendants and the Released Parties for all taxes, interest, penalties and costs, including attorneys' fees, incurred by CBS Defendants and/or the Released Parties by reason of any claims relating to the non-withholding of taxes from the Enhancement Award.

(g)    Payment to the Labor and Workforce Development Agency.

Subject to the Court approval and confirmation by the Court, the Parties have allocated one hundred thousand dollars ($100,000.00) of the Settlement Sum as payment for the claims under PAGA, and in accordance with the requirements of the Labor Code section 2699(i), the amount of seventy-five thousand dollars ($75,000.00) shall be paid to the Labor and Workforce Development Agency.

(h)    No Additional Contribution by CBS Defendants.

- 19 -

Other than the reimbursement to the Settlement Administrator for the payment of the employer's share of payroll taxes associated with the payment of wages to the Class Members as provided in section 3.6(2)(E)(i)(II) of this Agreement, CBS Defendants' monetary obligation under this Agreement is limited to the amount defined as the Settlement Sum. CBS Defendants may not be called upon or required to contribute additional monies above the Settlement Sum and the reimbursement for payment of the employer's share of the payroll taxes under any circumstances. All costs and expenses arising out of or in connection with the performance of this Agreement shall be paid from the Settlement Sum, unless expressly provided otherwise herein.

## ARTICLE IV
## Limitations On Use Of This Settlement.

4.1     No Admission.

Neither the acceptance nor the performance by CBS Defendants of the terms of this Agreement nor any of the related negotiations or proceedings is or shall be claimed to be, construed as, or deemed to be an admission by CBS Defendants of the truth of any of the allegations in the Litigation, the representative character of the Litigation, the validity of any of the claims that were or could have been asserted by Plaintiff and/or the Class Members in the Litigation, or of any liability or guilt of CBS Defendants.

4.2     Non-Evidentiary Use.

Neither this Agreement nor any of its terms shall be offered or used as evidence by any of the Parties, Class Members, or their respective counsel in the Litigation or in any other action or proceeding; provided, however, this shall not prevent this Agreement from being used, offered, or received in evidence in any proceeding to enforce, construe, or finalize this Agreement.

4.3     No Collateral Attack.

This Agreement shall not be subject to collateral attack by any Class Member or any recipient of a Notice of Class Settlement after the Final Order and Judgment is entered.

4.4     Nullification.

(a)     If (1) the Court should for any reason fail to certify the class of Class Members for settlement; or (2) the Court should for any reason fail to approve the settlement of the Class Member Claims in the form agreed to by the Parties and, instead, requires material changes to its terms; or (3) the Court should for any reason fail to enter the Final Order and Judgment as to the CBS Defendants; or (4) the Final Order and Judgment relating to the CBS Defendants is reversed, modified, or declared or rendered void; or (5) the Court should for any reason fail to dismiss the Third Amended Complaint in the Litigation as to CBS Defendants on the merits with prejudice, then (a) this Agreement shall be considered null and void as to the CBS Defendants, (b) neither this Agreement nor any of the related negotiations or proceedings shall be of any force or effect as to the Litigation, (c) all Parties to this Agreement shall stand in the same position in the Litigation,

without prejudice, as if the Agreement had been neither entered into nor filed with the Court, (d) if the Settlement Sum has been deposited into the Qualified Settlement Fund established by the Settlement Administrator, any money remaining in the Qualified Settlement Fund, less any settlement Administration Costs, shall be returned to CBS Defendants; and (e) Class Counsel, Plaintiff and the Class Members shall make repayment of any disbursements they received from the Qualified Settlement Fund in relation to the release of Class Member Claims and the entire Settlement Sum relating to payment of the Class Members for the release of Class Member Claims shall remain the sole property of CBS Defendants.

(b)      In the event of a timely appeal from the Final Order and Judgment, the Final Order and Judgment shall be stayed, and the Settlement Sum shall not be distributed pending the completion of the appeal.

### ARTICLE V
### Limited Release and Waiver of Claims.

It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge disputes and claims arising from or related to the Litigation as to CBS Defendants. Upon entry of the Final Order and Judgment as to CBS Defendants, Plaintiff and each and every Class Member shall be bound by this Agreement and shall have recourse exclusively to the benefits, rights, and remedies provided hereunder.

Plaintiff and each and every Class Member shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally, and forever released, relinquished, and discharged each and all of the Released Parties from any and all claims (including unknown claims) arising out of or relating to the Complaint or any Amended Complaint in the Litigation, the Class Member Claims, and/or the Class Member Released Claims. This forever enjoins and bars Plaintiff and Class Members from asserting, instituting or prosecuting in any capacity before any court or governmental agency any action or proceeding against Defendants that involves or asserts any of the Class Member Released Claims. This includes alleged violations of Labor Code sections 201, 202, 203, 204, 206, 210, 215, 218.5, 226, 226.3, 226.7, 227.3, 558, 1174, 1174.5, 1194, 1194.1, 1194.2, 2699, 2699.3, 2699.5 and 2802, the Industrial Welfare Commission's Wage Orders based on the claims alleged in the Litigation or that arise out of or relate to the facts alleged in the Litigation, and claims based on or arising under the Labor Code and the Business and Professions Code.

In addition, with respect to the released claims, Plaintiff hereby waives all rights and benefits afforded by **Section 1542 of the Civil Code of the State of California**, and does so understanding the significance of that waiver. With respect to the Class Member Released Claims, each Class Member shall be deemed to have expressly waived and relinquished to the fullest extent permitted by law, the provisions, rights and benefits afforded by **Section 1542 of the Civil Code of the State of California. California Civil Code section 1542** provides:

> **A general release does not extend to claims which the creditor**
> **does not know or suspect to exist in his or her favor at the time**

**of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Plaintiff shall be deemed to have acknowledged that this Agreement is intended to include in its effect all Class Member Released Claims that he does not know or suspect to exist in his favor at the time of the final approval of this Agreement. Each of the Class Members shall be deemed to have acknowledged that this Agreement is intended to include in its effect all Class Member Released Claims that he or she does not know or suspect to exist in his or her favor at the time of the final approval of this Agreement.

Further, to the extent it is otherwise applicable, with respect to the Class Member Released Claims, Plaintiff and the Class Members shall be deemed to acknowledge and agree that California Labor Code section 206.5 is not applicable to the settlement of the Class Member Released Claims. That section provides in pertinent part as follows:

> No employer shall require the execution of any release of any claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of such wage has been made.

Plaintiff and the Class Members shall be deemed to acknowledge, agree, represent and warrant to the Released Parties, and each of them, that at all times relevant to their employment with any of the Released Parties, there is and has at all times been a genuine, reasonable and good faith dispute between the Class Members and the Released Parties with respect to whether the Class Members have been fully and properly paid all monies owed relating to their employment with Released Parties.

## ARTICLE VI
### Miscellaneous Provisions.

6.1    <u>Voluntariness</u>.

This Agreement is executed voluntarily and without duress or undue influence on the part of or on behalf of any of the Parties, or of any other person, firm, or other entity.

6.2    <u>Certification</u>.

The Parties hereby agree and stipulate to the certification of the Class. This Certification shall be for settlement purposes only.

6.3    <u>Opt-Outs</u>.

The Parties to this Agreement intend that the Class Settlement foreclose any further litigation between the Parties. CBS Defendants shall have the option, at their sole discretion, to rescind this Agreement as to the Litigation in the event more than ten percent (10%) of the Class Members submit a Request to Be Excluded from the settlement of the Litigation.

6.4     Other Actions.

Pending final approval of this settlement, Plaintiff and Class Members are enjoined from filing any claims with the California Division of Labor Standards and Enforcement or from initiating any other proceedings or claims related to the claims included in the Litigation.

6.5     Amendments.

The terms and provisions of this Agreement may be amended only by a written agreement that is both (a) signed by the Class Representatives, Class Counsel, Defense Counsel, and CBS Defendants who executed this Agreement and (b) approved by the Court.

6.6     Assignment.

None of the rights, commitments, or obligations recognized under this Agreement may be assigned by any Party, Class Member, Class Counsel, or Defense Counsel without the express written consent of each other Party and their respective counsel hereto.  The representations, warranties, covenants, and agreements contained in this Agreement are for the sole benefit of the Parties under this Agreement, and shall not be construed to confer any right or to avail any remedy to any other person.

6.7     Governing Law.

This Agreement shall be governed, construed, and interpreted, and the rights of the Parties shall be determined, in accordance with the laws of the State of California.

6.8     Entire Agreement.

This Agreement contains the entire understanding of the Parties hereto in respect of the subject matter contained herein.  This Agreement supersedes all prior agreements and understandings among the Parties hereto with respect to the settlement of the Litigation.

6.9     Waiver of Compliance.

Any failure of any Party, Defense Counsel, and/or Class Counsel hereto to comply with any obligation, covenant, agreement, or condition herein may be expressly waived in writing, to the extent permitted under applicable law, by the Party or Parties and their respective counsel hereto entitled to the benefit of such obligation, covenant, agreement, or condition.  A waiver or failure to insist upon strict compliance with any representation, warranty, covenant, agreement, or condition shall not operate as a waiver of, or estoppel with respect to, any subsequent or other failure.

6.10    Counterparts.

This Agreement, and any amendments hereto, may be executed in any number of counterparts and any Party and/or their respective counsel hereto may execute any such counterpart, each of which when executed and delivered shall be deemed to be an original and all of which counterparts taken together shall constitute but one and the same instrument.  It shall

not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts.

6.11   Attorney's Fees and Costs.

Neither Class Counsel nor any other attorneys acting for, or purporting to act for the Class, Class Members, or Plaintiff may recover or seek to recover any amounts for fees, costs, or disbursements from the Released Parties or the Settlement Sum except as expressly provided herein.

6.12   Dispute(s).

Should any dispute(s) arise among the Parties or their respective counsel regarding the implementation or interpretation of this Agreement, the Parties agree to submit any such dispute(s) to the mediator, Hon. Edward Infante (Ret.). Judge Infante will act as the arbiter of that dispute and his decision will be final and binding on the parties.

All disputes relating to the Settlement Administrator's ability and need to perform its duties shall be referred to the mediator, Judge Infante, and then to the Court, if necessary, which will have continuing jurisdiction over the terms and conditions of this Agreement.

The Parties agree that any costs associated with consulting Judge Infante will be paid one-half by CBS Defendants and one-half by Plaintiff.

6.13   Publicity.

The Parties agree to keep the terms of this Settlement and Agreement confidential through preliminary approval of the Settlement. The Parties agree that after preliminary approval of the Settlement, Class Counsel and any other attorneys acting for Class Members and/or Plaintiff shall not make any press releases or conduct any press conferences regarding the lawsuit or the settlement of the lawsuit with CBS Defendants, including the terms of the Settlement. However, the Parties acknowledge that the Settlement is not a confidential settlement.

6.14   No Reemployment.

Plaintiff will not seek or obtain employment or work with CBS Defendants or the Released Parties.

6.15   Construction.

The Parties agree that the terms and conditions of this Agreement are the result of lengthy, intensive, arm's length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or his, her or its counsel participated in the drafting of the Agreement.

6.16    Binding.

This Agreement shall bind and inure to the benefit of the Parties hereto and to their respective successors, assigns, legatees, heirs, and personal representatives.

6.17    Signatories.

It is agreed that because of the large number of Class Members, it is impossible or impracticable to have each Class Member execute this Agreement. The Notice of Class Settlement, Exhibit "A" hereto, will advise all Class Members of the nature of the Settlement and shall have the same force and effect as if this Agreement were executed by each Class Member.

6.18    Continuing Jurisdiction.

The Parties agree that upon the occurrence of the Effective Date, this Agreement shall be enforceable by the Court and the Court shall retain exclusive and continuing equity jurisdiction of this Litigation over all Parties to interpret and enforce the terms, conditions and obligation of the Agreement.

**IN WITNESS WHEREOF**, the Parties have executed this Stipulation and Agreement to Settle Class Action and Limited Release on the date set forth.

**APPROVED AND ACCEPTED.**

Dated: _____, 2017            STAFFMARK HOLDINGS, INC.

                                       By_____

Dated: _____, 2017            CBS PERSONNEL SERVICES, LLC

                                       By_____

Dated: 9/11/2017 _____, 2017      DocuSigned by:
                                       By_____
                                          95A96D3B3B7F46A...
                                          EARL FRONDA
                                       Plaintiff, Class Representative

- 25 -

6.16    Binding.

This Agreement shall bind and inure to the benefit of the Parties hereto and to their respective successors, assigns, legatees, heirs, and personal representatives.

6.17    Signatories.

It is agreed that because of the large number of Class Members, it is impossible or impracticable to have each Class Member execute this Agreement.  The Notice of Class Settlement, Exhibit "A" hereto, will advise all Class Members of the nature of the Settlement and shall have the same force and effect as if this Agreement were executed by each Class Member.

6.18    Continuing Jurisdiction.

The Parties agree that upon the occurrence of the Effective Date, this Agreement shall be enforceable by the Court and the Court shall retain exclusive and continuing equity jurisdiction of this Litigation over all Parties to interpret and enforce the terms, conditions and obligation of the Agreement

**IN WITNESS WHEREOF,** the Parties have executed this Stipulation and Agreement to Settle Class Action and Limited Release on the date set forth.

**APPROVED AND ACCEPTED.**

Dated: _9/14_____, 2017          STAFFMARK HOLDINGS, INC.

                                 By _____


Dated: _9/14____. 2017           CBS PERSONNEL SERVICES, LLC

                                 By _____



Dated: _____. 2017

                                 By _____
                                      EARL FRONDA
                                 Plaintiff, Class Representative

- 25 -

**APPROVED AS TO FORM AND
ATTORNEY OBLIGATIONS ONLY**

Dated: _____ 9-8 _____, 2017

SETAREH LAW GROUP

By_____
    Shaun Setareh
Attorneys for Plaintiff, Earl Fronda, Class
Counsel

Dated: _____ 9-19 _____, 2017

ATKINSON, ANDELSON, LOYA, RUUD &
ROMO

By_____
    Barbara S. Van Ligten/Susan M. Steward
Attorneys for Defendants, STAFFMARK
HOLDINGS, INC. and CBS PERSONNEL
SERVICES, LLC

**APPROVED AS TO FORM AND
ATTORNEY OBLIGATIONS ONLY**

Dated: ___9-8___, 2017

Dated: _____, 2017

SETAREH LAW GROUP

By_____
    Shaun Setareh
Attorneys for Plaintiff, Earl Fronda, Class
Counsel

ATKINSON, ANDELSON, LOYA, RUUD &
ROMO

By_____
    Barbara S. Van Ligten/Susan M. Steward
Attorneys for Defendants, STAFFMARK
HOLDINGS, INC. and CBS PERSONNEL
SERVICES, LLC

# EXHIBIT

# A

# As a current or former employee of Staffmark Holdings, Inc. or CBS Personnel Services, LLC in California who worked at a CEVA location from April 17, 2011 to present, you are entitled to receive a payment from a class action settlement

*A United States District Court has authorized this notice. This is not a solicitation from a lawyer.*

- A former employee of CBS Personnel Services, LLC sued Staffmark Holdings, Inc. and CBS Personnel Services, LLC ("CBS Defendants"), alleging that the CBS Defendants failed to properly compensate him and other employees while working at a CEVA Freight, LLC or CEVA Logistics U.S., Inc. location (jointly, "CEVA").

- The CBS Defendants and Plaintiff in the action entitled *Earl Fronda v. Staffmark Holdings, Inc., CEVA Logistics, U.S.A. Inc. and Does 1-50,* United States District Court, Northern District, Case No. 3:15-CV-02315-MEJ, have reached a proposed class action Settlement and it has been granted Preliminary Approval by the Court.

- A settlement will provide $5,600,000.00 (the "Settlement Sum") to resolve claims of the roughly 4,500 current and former employees of the CBS Defendants, for work performed for the CBS Defendants at any CEVA location from April 17, 2011 to ____ [Date of Preliminary Approval] (the agreement to resolve the case is referred to as the "Settlement"). If you received this Notice you have been determined to be a Class Member who can participate in the Settlement.

- The amount of each Class Member's payment will be based on weeks worked at a CEVA location. Your specific, gross payment amount will be approximately <merge payment amount>, less relevant withholdings.

- The proposed Settlement resolves claims that the CBS Defendants did not properly pay employees, failed to provide meal and rest periods, failed to provide accurate wage statements, and engaged in unfair business practices; it avoids risks from continuing the lawsuit; it pays money to employees like you; and, it releases the CBS Defendants from liability.

- This Settlement does not settle the claims against CEVA, except to the extent that any of the claims settled as to the CBS Defendants would apply to CEVA.

- The CBS Defendants deny any wrongdoing and admit to having done nothing wrong by settling this matter.

- Attorneys approved by the Court to serve as Class Counsel will ask the Court for $1,866,666.67 (33 and 1/3%) of the Settlement Sum as their attorney fees and, in addition, for reimbursement of expenses.

- Your legal rights are affected whether you act or not. Read this notice carefully.

| Your Legal Rights and Options in this Lawsuit | |
| --- | --- |
| **DO NOTHING AND AUTOMATICALLY RECEIVE A PAYMENT** | **Stay in this lawsuit. Receive a payment.**<br>You do not have to do anything. You **do not** have to submit a claim form. You will receive your share of the settlement if it is approved. |
| **ASK TO BE EXCLUDED** | **Get out of this lawsuit. Get no payment. Keep rights.**<br>If you do not want to be a part of the settlement and do not want to receive a settlement payment, you must exclude yourself by [NOTICE RESPONSE DEADLINE]. Instructions on how to do this are below. |
| **OBJECT** | If you want to object to the settlement, you must do so by [NOTICE RESPONSE DEADLINE]. Instructions on how to do this appear below. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |

- These rights and options—**and the deadlines to exercise them**—are all explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and after appeals, if any, are resolved. Please be patient.

- **Any questions? Read on.**

## TABLE OF CONTENTS: WHAT THIS NOTICE CONTAINS

Table of Contents: What this Notice Contains................................................................2

I.    Basic Information ........................................................................................3
      1.    Why did I get this notice?...........................................................3
      2.    What is this lawsuit about?.........................................................3
      3.    What is a class action and who is involved? .............................3
      4.    How does the settlement process work?....................................3

II.   The Claims in the Lawsuit ..........................................................................4
      5.    What does the lawsuit complain about? ....................................4
      6.    How do the CBS Defendants answer?........................................4
      7.    Is there any money available now?.............................................4
      8.    Are there other cases alleging similar claims against the CBS Defendants? .........4

III.  Who is the Class?.......................................................................................4
      9.    How do I know if I am a class member?.....................................4
      10.   I'm still not sure if I am a class member....................................5

IV.   The Settlement Benefits – What you receive ...............................................5
      11.   What does the Settlement provide?...........................................5
      12.   What can I get from the Settlement? .........................................5
      13.   Is My Settlement Payment Taxed? .............................................6
      14.   Can I receive a copy of the Settlement Agreement? ..................6
      15.   If the Settlement receives final approval, when will I receive my share of the Settlement?...........6
      16.   What happens if I do nothing at all?..........................................6
      17.   How can I receive my portion of the settlement money? ..........6
      18.   What if my address has changed? ..............................................7
      19.   What if I disagree with the total work weeks worked? ..............7
      20.   What am I giving up to get a payment and stay in the class?....7

V.    Excluding yourself from the Settlement ......................................................8
      21.   Why would I ask to be excluded?...............................................8
      22.   How do I ask to be excluded from the Class? ...........................9

VI.   The Lawyers Representing You.....................................................................9
      23.   Do I have a lawyer in this case? ................................................9
      24.   How will the Lawyers and Settlement Administrator be paid? ..9

VII.  Objecting to the Settlement ......................................................................10
      25.   Why might I object to the Settlement?.....................................10
      26.   How do I object to the Settlement?..........................................10
      27.   What is the difference between objecting and excluding? ........10

VIII. The Court's Fairness Hearing ....................................................................11
      28.   May I attend the hearing?.........................................................11

IX.   Additional Information ..............................................................................11
      29.   Are there more details about the Settlement?..........................11
      30.   Am I protected against retaliation or discrimination if I exercise my rights?...................11
      31.   What if the Settlement is not approved?...................................12
      32.   Approval of the Settlement is not an opinion on the merits of the case. ..........................12

## I.   BASIC INFORMATION

| 1. | Why did I get this notice? |
|---|---|

This notice relates to a lawsuit entitled *Earl Fronda v. Staffmark Holdings, Inc., CEVA Logistics, U.S.A. Inc. and Does 1-50*, United States District Court, Northern District, Case No. 3:15-CV-02315-MEJ.  The lawsuit is pending in the United States District Court for the Northern District of California.  The lawsuit was filed by a former employee of the CBS Defendants named Earl Fronda.  Mr. Fronda argued that the CBS Defendants failed to properly compensate him and other employees in California during a specified period for work performed at CEVA locations, failed to provide meal and rest periods, failed to provide accurate wage statements, and engaged in unfair business practices.  This notice will refer to Mr. Fronda as Plaintiff.  You have received this notice because you are or were employed by the CBS Defendants in California and worked at a CEVA location.

| 2. | What is this lawsuit about? |
|---|---|

Mr. Fronda asserts several claims against the CBS Defendants under various laws, including the California Labor Code, the California Business and Professions Code, and the Private Attorney General Act ("PAGA") in connection with the compensation of Class Members.  He claims that the CBS Defendants failed to provide meal periods, failed to provide rest periods, failed to pay all hourly wages, failed to provide accurate itemized wage statements, failed to pay waiting time penalties and wages, failed to pay wages without discount, and engaged in unfair business practices that relate to these claims.  Mr. Fronda also seeks related civil penalties under PAGA.  Mr. Fronda sought to bring the action on behalf of all current and former employees of the CBS Defendants in California who worked at any CEVA location on or after April 17, 2011.  The CBS Defendants have reviewed the claims in this lawsuit in detail, and they deny them.  Although the CBS Defendants believe that they have always compensated employees properly and have very strong arguments to prevail in this litigation, they have chosen to work with Mr. Fronda and his lawyers to resolve this matter to avoid the expense and disruption of litigation and instead provide for essentially automatic payments to Class Members, as described in this notice.

| 3. | What is a class action and who is involved? |
|---|---|

In a "class action," one or more persons called a "Named Plaintiff" (in this case, the Plaintiff listed above, Mr. Fronda) files a lawsuit on behalf of a group of people with similar claims against the same company (this group of people is referred to as the "Class" or "Class Members").  The company sued (in this case the CBS Defendants) is called the Defendant.  One court resolves the issues for everyone in the Class—except for those people who choose to exclude themselves from the Class.

| 4. | How does the settlement process work? |
|---|---|

In this case, the Named Plaintiff and the Defendant decided to resolve their differences by settling this case rather than going to trial.  Because this is a "class action," however, the law says their proposed Settlement must be approved by the Court before it becomes final.

So far, the Court has granted *preliminary* approval of the Settlement which means that the proposed Settlement appears to the Court to be fair, adequate, and reasonable.  In making this assessment, the Court looked at things such as the amount of money Defendant might have had to pay Class Members if the Class had won the lawsuit versus the chances that Defendant might have won, as well as other factors including the benefit of a current settlement that ensures the distribution of some funds to Class Members without the risks, expense, delay and efforts associated with further litigation and potential appeals.

In granting preliminary approval of the Settlement, the Court ordered that this Notice be sent to everyone in the affected "Class."   This is because you – as a member of that Class – have some decisions to make before the Court decides whether to grant final approval of the Settlement.

You need to decide if you want to participate in the Settlement and receive payments (as explained in Section IV of this Notice) or be excluded from the Settlement (as explained in Section V).   You need to decide if you want to object to the terms of the Settlement (as explained in Section VII) and/or go to the Final Approval (or "Fairness") Hearing (as explained in Section VIII).  The deadlines for doing each of these things are explained in each Section. You also need to understand what happens if you do nothing (explained in Section IV).

After all Class Members have had an opportunity to exercise their options, the Court will hold a hearing (*see* Section IV and VIII below) on whether to grant final approval of the Settlement.

## II.   THE CLAIMS IN THE LAWSUIT

| 5.        What does the lawsuit complain about? |
| --- |

Mr. Fronda's lawsuit asserts several claims against the CBS Defendants and CEVA Logistics, U.S., Inc. under various laws, including the California Labor Code, the California Business and Professions Code, and PAGA.  He claims that the CBS Defendants failed to provide meal periods, failed to provide rest periods, failed to pay all hourly wages, failed to provide accurate itemized wage statements, failed to pay waiting time penalties and wages, failed to pay wages without discount, and engaged in unfair business practices that relate to these claims. Mr. Fronda also seeks related civil penalties under PAGA.

| 6.        How do the CBS Defendants answer? |
| --- |

The CBS Defendants strenuously contend that they have compensated employees properly, provided meal and rest periods, provided accurate wage statements and did not engage in unfair business practices.  Nevertheless, the CBS Defendants highly value their employees, and instead of spending additional resources on litigation, they have agreed to make payments to employees in California without requiring them to submit a claim or prove that they were improperly compensated.

| 7.        Is there any money available now? |
| --- |

No.  No monies are available right now.   The settlement process is not yet complete, and no monies will be paid until that process has been completed.

Specifically, if the Court grants final approval of the Settlement, any Class Member who "objected" to the Settlement will have an opportunity to appeal the Court's decision.  Such appeal could delay payment of Settlement monies or could even result in the entire Settlement being set aside.  However, once the time for filing such appeals has expired, and assuming any appeals that are filed are ultimately resolved in favor of the Settlement, then all those Class Members who did not exclude themselves (explained in Sections IV and V) will be sent payments from the Settlement monies in exchange for giving up their rights to pursue legal claims against the CBS Defendants related to how Class Members were compensated.

| 8.        Are there other cases alleging similar claims against the CBS Defendants? |
| --- |

At this time, the Plaintiff is unaware of any similar lawsuits against the CBS Defendants.

## III.   WHO IS THE CLASS?

You need to decide whether you are affected by this lawsuit.

| 9.        How do I know if I am a class member? |
| --- |

The class is defined as follows:

All individuals employed by Staffmark Holdings, Inc. and CBS Personnel Services, LLC at CEVA Freight, LLC, CEVA Logistics U.S., Inc. and/or any other location of CEVA, CEVA's parents, or any CEVA-related entity operating in California from April 17, 2011 through [date of preliminary approval]

| 10. | I'm still not sure if I am a class member. |

If you are still not sure whether you are a Class Member, you can ask for free help. You can call Class Counsel, which is the law firm of Setareh Law Group, LLC, at (310) 888-7771.

## IV.   THE SETTLEMENT BENEFITS – WHAT YOU RECEIVE

| 11. | What does the Settlement provide? |

On behalf of the Class, Mr. Fronda has reached a voluntary settlement agreement with the CBS Defendants. The total maximum amount of the settlement is $5,600,000. This amount is referred to as the "Settlement Sum." This amount will cover payments to participating class members as well as (i) Mr. Fronda's attorney fees and costs, (ii) court costs, (iii) an enhancement payment to Mr. Fronda of up to $10,000, (iv) the costs of administering the settlement, and (v) a required payment to the California Labor and Workforce Development Agency of $75,000.

Neither the CBS Defendants nor its employees have admitted any liability or wrongdoing. The Court has granted preliminary approval of the settlement, and the Court has directed the parties to send this Notice.

**As set forth in greater detail in the Release of Claims section below, class members who do not opt out of the settlement will give up any claims against the CBS Defendants relating to their compensation while working at CEVA locations, up through the entry of judgment.  Class members who opt out of the settlement will not give up their claims, but they will not receive any payment under this settlement.**

| 12. | What can I get from the Settlement? |

Class Members are not required to submit a claim. Instead, Class Members who do not opt out of the settlement will automatically receive payment from the CBS Defendants. The payments to class members will be calculated according to the number of weeks you actively worked at CEVA locations between April 17, 2011 and <insert date of preliminary approval order> (this period of time is referred to as the "Class Period"). Individuals who worked at the CEVA locations in Carson and Torrance will receive a larger portion of the settlement. Your estimated settlement payment is approximately $[MERGE], although that amount may fluctuate up or down during the settlement process. The amount of your payment may increase if some class members opt out of the settlement.

The payment any Class Member receives will be treated as follows: thirty-three percent (33%) of the payment you receive will be characterized as "penalties," which is not subject to withholding taxes, thirty-three percent (33%) of the payment you receive will be characterized as "interest," which is not subject to withholding taxes, and thirty-three (33%) of the payment you receive will be characterized as wages. The payment allocated to wages will be subject to withholding taxes. You will receive an itemized listing of the state and federal income taxes withheld from your settlement check in addition to an IRS Form W-2 from the Settlement Administrator in relation to the wage payment. You will receive an IRS Form 1099 from the Settlement Administrator in relation to the penalty and interest payment. Consult a tax professional if you have any questions about your tax situation.

Settlement checks that are not cashed within 180 days of issuance will be void. Whether or not you cash the settlement check, the settlement will be binding. Even if you do not cash your settlement check, you will be deemed to have waived irrevocably any right or claim to your settlement share and/or to appeal the approval of the settlement.

| 13. | **Is My Settlement Payment Taxed?** |

Yes. A portion of the payment you receive under the settlement will be subject to required wage withholdings and deductions. These amounts will be deducted from the payment you receive. The CBS Defendants will report thirty-three percent (33%) of any payment you receive to relevant government entities as a wage payment, and will report the remaining sixty-seven percent (67%) as a non-wage payment.

Each class member will be solely responsible for tax reporting of any payment received under this settlement and for paying any taxes associated with the payment. Neither the CBS Defendants, Mr. Fronda, nor his attorneys (referred to below as "Class Counsel") make any representations concerning the tax consequences of this settlement or your participation in it. If you have any questions about the tax consequences of the payments you may receive under the settlement, you should consult your tax advisor.

| 14. | **Can I receive a copy of the Settlement Agreement?** |

Yes. This Notice is only a summary of the basic terms of the Settlement. A full copy of the settlement agreement, which contains all of the terms of the proposed settlement and which is entitled the STIPULATION AND AGREEMENT TO SETTLE CLASS ACTION AND LIMITED RELEASE, as well as other public documents filed with regard to this matter, can be inspected in the Office of the Court Clerk (see below).

| 15. | **If the Settlement receives final approval, when will I receive my share of the Settlement?** |

The Court has scheduled a Final Approval Hearing on _____, 2018, at 10:00 a.m., in Courtroom B of the United States District Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, at which time the Court will determine: (1) whether the proposed Settlement should be approved as fair, reasonable and adequate to Class Members; and (2) whether the requests for the "Named Plaintiff'" Incentive Award, attorneys' fees and costs, and other reimbursements should be approved. If the Court approves the Settlement, an Order Granting Final Approval will be entered.

Once the Order Granting Final Approval is signed by the Court, and if there is no appeal of the Court's order, then checks will be mailed out to the Class Members within approximately 45 days. If an appeal is filed, then checks will not be mailed until all appeals are resolved in favor of the Settlement. Please be patient.

| 16. | **What happens if I do nothing at all?** |

By doing nothing, you still receive whatever payment you qualify for from the Settlement, though you lose your right to object to the terms of the Settlement. You also are bound by terms of the Settlement and lose your right to sue the CBS Defendants separately for the claims regarding underpayment of wages, failure to provide meal and rest breaks, failure to provide accurate wage statements, failure to pay waiting time penalties, failure to pay wages without discount, unfair business practices and claims for other penalties alleged in this case.

| 17. | **How can I receive my portion of the settlement money?** |

You automatically qualify to receive your payment if you do not request to be excluded (as explained in Section V). There is nothing extra you need to do. Unless you opt out of the settlement, the CBS Defendants will send the payment. Class members who take no action and remain in the class will give up any claims relating to their compensation, failure to provide meal and rest breaks, failure to provide accurate wage statements, failure to pay waiting time penalties, failure to pay wages without discount, unfair business practices and claims for other penalties against the CBS Defendants at any time up through the entry of judgment.

Class members who remain in the class will be represented by Mr. Fronda and Class Counsel. The lawyers acting as Class Counsel in this matter are the following:

Shaun Setareh, SBN 204514

H. Scott Leviant, SBN 200834
Setareh Law Group
9454 Wilshire Blvd., Suite 907
Beverly Hills, Ca 90212
Telephone: (310) 888-7771
Fax: (310) 888-0109

Class members who remain in the class may choose to retain their own attorneys.  Class members who choose this option will be responsible for their own attorneys' fees and costs.  Class members who do not opt out of the settlement may also object to the terms or nature of the settlement at or prior to the hearing on the settlement using the procedure set forth below.

| 18. | What if my address has changed? |
|-----|----------------------------------|

If this Notice was sent to you at your current address, you do not need to do anything further to receive any further notices concerning this case.  If you wish to change the name or address listed on the envelope in which this Notice was sent, please inform the Settlement Administrator of your new address.  It is up to you to maintain a current address with the Settlement Administrator so that if the Settlement is finally approved, your payment will go to the correct address.

| 19. | What if I disagree with the total work weeks worked? |
|-----|------------------------------------------------------|

The attached Data Summary Sheet sets forth the total amount of weeks you worked for the CBS Defendants at a CEVA location for the period of April 17, 2011 through _____ [the date of preliminary approval.]

If you do not dispute the information contained on the attached Data Summary Sheet, you do not have to do anything.  If you need to correct the contact information listed on the Data Summary Sheet, make the necessary changes, and return the Data Summary Sheet to the Settlement Administrator.  If you believe in good faith that the total amount of weeks worked, as shown on the Data Summary Sheet, is incorrect and you wish to challenge it, you must send a letter to the Settlement Administrator stating the reasons why you dispute the total amount of weeks worked and providing any supporting documents you may have.  The information you provide should include the amount of weeks you claim you worked for the CBS Defendants *at a CEVA location* in California from April 17, 2011 through _____ [the date of preliminary approval]  The letter disputing the amount of weeks worked and supporting documentation must be postmarked no later than [DATE thirty (30) days from the date of this notice].

If you sign and timely return a corrected Data Summary Sheet with a different amount of weeks worked, the Settlement Administrator shall consult with Class Counsel and counsel for the CBS Defendants, review any pertinent documents provided by you and the CBS Defendants regarding the amount of weeks worked, and make a recommendation to the Court as to any disputed claim.  The Settlement Administrator shall send notice of its decision on the disputed claim to you, Class Counsel, and counsel for the CBS Defendants no later than [DATE] which shall be at least ten (10) days prior to the Final Fairness and Approval Hearing which has been set for [DATE].  The Court shall decide any disputed claim at the Final Fairness and Approval Hearing, and this decision shall be a final decision.

| 20. | What am I giving up to get a payment and stay in the class? |
|-----|-------------------------------------------------------------|

If approved by the Court, the proposed settlement agreement will be binding on all members of the Class who do not request to be excluded from the settlement and will bar them from bringing any claims concerning the following: any and all claims, rights, demands, liabilities, and causes of action of every nature and description, known and unknown, in law or in equity, as alleged in the Complaint and any Amended Complaint in this Litigation or at the mediations conducted in this matter on January 4, 2017 and April 26, 2017, arising from or related to the following claims against any and all of the CBS Defendants: (1) Failure to Provide Meal Periods; (2)

Failure to Provide Rest Periods; (3) Failure to Pay Hourly Wages; (4) Failure to Provide Accurate Itemized Wage Statements; (5) Failure to Pay Waiting Time Penalties and Wages; (6) Failure to Pay Wages Without Discount; (7) Unfair Business Practices that relate to any of these claims; and (8) Civil Penalties under the Private Attorney Generals Act ("PAGA"). Class Member Released Claims shall also mean any other claims, whether known or unknown, suspected or unsuspected, that were or could have been alleged or asserted based upon the legal and factual allegations in this matter and related to a Class Member's employment as a temporary employee of the CBS Defendants at a CEVA location during the Class Period, including all claims that were or could have been brought under the California Labor Code, the applicable Industrial Wage Commission Wage Orders, the Fair Labor Standards Act, Business and Professions Code section 17200 as it relates to the underlying Labor Code claims referenced above, and the Private Attorneys General Act as it relates to the underlying Labor Code claims referenced above, including any damages, restitution, interest, waiting time penalties, penalties, punitive damages, attorneys' fees, costs, or any other form of relief whatsoever, during the Class Period. Class Member Released Claims will also include any claims against CEVA Logistics U.S. Inc., CEVA Freight LLC and/or any other CEVA entity to the extent that any of the released claims as to CBS Defendants would apply to CEVA Logistics U.S. Inc., CEVA Freight LLC and/or any other CEVA entity.  The released claims are referred to as the "Class Members' Released Claims."

The Class Members' Released Claims include all such claims as described above, whether known or unknown. Thus, even if a Class Member discovers facts in addition to or different from those that he or she now knows or believes to be true with respect to the subject matter of the Class Members' Released Claims, those claims will remain released and forever barred.

The Class Members also waive and relinquish the provisions, rights and benefits of section 1542 of the California Civil Code with respect to the Class Member Released Claims.  California Civil Code section 1542 states:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

**If you do not submit a timely Request for Exclusion, you will release all claims you may have had against the CBS Defendants and the other releasees which pertain or relate to the types of claims that were brought in the Litigation, you will lose the right to bring those claims yourself, and you will have no right to appeal.**

## V.   EXCLUDING YOURSELF FROM THE SETTLEMENT

If you want to keep the right to sue on your own (or continue to sue on your own if you already have a lawsuit on file) about the claims, then you must take certain affirmative steps to do so.  This is called "excluding yourself," also sometimes referred to as "opting out" of the Settlement Class.

| 21. | Why would I ask to be excluded? |
|-----|--------------------------------|

If you already have your own lawsuit against the CBS Defendants and want to continue with it, you need to ask to be excluded from the Class.  If you exclude yourself from the Class—which also means to remove yourself from the Class, and is sometimes called "opting-out" of the Class—you won't get any money or benefits from the proposed settlement of this lawsuit.

However, you may then be able to sue or continue to sue the CBS Defendants for purported misconduct by the CBS Defendants that occurred or occurs at any time.  If you exclude yourself, you will not be legally bound by the Court's judgments in this class action.

If you start your own lawsuit against the CBS Defendants after you exclude yourself, you'll have to hire and pay your own lawyer for that lawsuit, and you'll have to prove your claims.

| 22. | How do I ask to be excluded from the Class? |
|---|---|

Class members may elect to "opt out" of the settlement and thus exclude themselves from this lawsuit and the associated settlement and judgment. Class members who opt out will NOT receive a payment and will remain free, subject to the statute of limitations and other similar restrictions, to bring claims against the CBS Defendants relating to the alleged violations described above.

If you do not wish to participate in the settlement you must request exclusion by sending to the Settlement Administrator a "Request to be Excluded" post-marked no later than [DATE] [thirty (30) days after the date of the mailing of this notice]. This deadline is final, and opt out requests that are not postmarked on or before that date will not be honored. If you request exclusion, you will receive no money from the settlement. If you wish to be excluded from the settlement of the Litigation, the exclusion request must state, "I wish to be excluded from the Class in the Litigation and I understand I will not receive any money from the settlement." Send the exclusion notice via first class mail to:

KCC, LLC
2335 Alaska Avenue
El Segundo, CA 90245
[INSERT TELEPHONE NUMBER AND EMAIL ADDRESS]

You must also send copies of your Request to be Excluded to Class Counsel and counsel for the CBS Defendants at the following addresses:

| Class Counsel: | Counsel for the CBS Defendants: |
|---|---|
| Shaun Setareh, SBN 204514 | Barbara S. Van Ligten |
| H. Scott Leviant, SBN 200834 | Susan M. Steward |
| Setareh Law Group | Atkinson, Andelson, Loya, Ruud and Romo |
| 9454 Wilshire Blvd., Suite 907 | 12800 Center Court Drive, Suite 300 |
| Beverly Hills, Ca 90212 | Cerritos, Ca 90703-9364 |

## VI.   THE LAWYERS REPRESENTING YOU

| 23. | Do I have a lawyer in this case? |
|---|---|

The Court approved the law firm of Setareh Law Group as Class Counsel, meaning they are the lawyers representing you and all Class Members in this case. Setareh Law Group is located at 9454 Wilshire Blvd., Suite 907, Beverly Hills, California 90212.

You do not need to hire your own lawyer because Class Counsel is working on your behalf. If you want to hire your own lawyer, you may do so at your own expense. For example, you can hire your own legal counsel to appear in Court for you if you want someone other than Class Counsel to speak for you.

| 24. | How will the Lawyers and Settlement Administrator be paid? |
|---|---|

The amount of attorneys' fees and costs awarded to the Class Counsel will be subject to Court approval. You will not have to pay these fees and expenses separately. If the Court grants Class Counsels' request, the fees and expenses will be deducted from the Settlement Sum.

Because Class Counsel have obtained a benefit for the Class, Class Counsel will request that the Court award them attorneys' fees and costs of $1,866,666.67, which is one-third of the Settlement Sum described above. Any amounts approved by the Court will constitute full payment for all legal fees of Class Counsel and their expenses incurred in the lawsuit, including any work they do in the future. The application for these fees and costs is on file with the Court, and it can be reviewed in the same manner as other court documents as set forth below.

The Settlement Administrator will be paid out of the Settlement Sum.

| 25. | What will the Named Plaintiff be paid? |
|---|---|

Plaintiff will receive his pro rata share of the Settlement.  In addition, subject to Court approval, Plaintiff will receive an additional $10,000.00 for his time and effort in assisting with this litigation.  In exchange for this payment, Plaintiff is waiving and releasing all claims he has against the CBS Defendants.

## VII.   OBJECTING TO THE SETTLEMENT

| 26. | Why might I object to the Settlement? |
|---|---|

If you disagree with any part of the Settlement, or think the proposed Settlement is somehow unfair, inadequate or unreasonable; or if you object to the amount of attorneys' fees, costs and expenses claimed by Class Counsel, and/or the enhancement award for the Named Plaintiff, you can say so and give reasons why you think the Court should not approve it.  That is an objection.  The Court will consider your views.  Objecting, however, does not affect your right to participate in the Settlement or to receive your individual Settlement payment, although if the Court were to agree with your objections it is possible that there would be no Settlement and that litigation would resume.

| 27. | How do I object to the Settlement? |
|---|---|

You may object to the terms of the settlement before final approval by: (1) Filing written objections with the Court; (2) Mailing a copy of the objection to the Settlement Administrator; and (3) Serving these objections on Class Counsel and Counsel for the CBS Defendants by [DATE thirty (30) days of the date of the initial mailing of the Notice of Class Settlement] at the addresses listed in this Notice at Sections V and IX.  If the Court overrules your objection, you will still remain in the class and release pertinent claims as set forth above in Section VI.

Objections not previously filed in writing in a timely manner will not be considered at the Final Fairness Hearing.  Any attorney who will represent an individual objecting to the settlement agreement must file a notice of appearance with the Court and serve counsel for all parties by [DATE - within thirty (30) days of the date of the initial mailing of the Notice of Class Settlement].  All objections or other correspondence must state the name and number of the case, which is *Earl Fronda v. Staffmark Holdings, Inc., et al*, United States District Court, Northern District, Case No. 3:15-CV-02315-MEJ.  The Court will rule on all objections at the Final Fairness and Approval Hearing.  However, if the Court rejects your objection, you will still be bound by the terms of the settlement.

Any Class Member who does not object in the manner provided above shall be deemed to have approved the settlement and to have waived any objections to the fairness or adequacy of the proposed settlement, the plan of distribution, costs of administration, the enhancement award, the costs to be paid to Class Counsel and the Settlement Administrator, Class Counsel's request for attorney's fees, or any other aspect of the settlement.

Keep in mind:  While the Court will consider your objections, there is no guarantee that the Court will agree with them or take any actions based on your objections.

| 28. | What is the difference between objecting and excluding? |
|---|---|

Objecting is simply telling the Court that you don't like something about the Settlement.  You can object only if you stay in the Class.  Excluding yourself is telling the Court that you don't want to be part of the Class.  If you exclude yourself, you have no basis to object because the case no longer affects you.

## VIII. THE COURT'S FAIRNESS HEARING

| 29. | May I attend the hearing? |
|-----|---------------------------|

Following a hearing on [INSERT DATE], the Court granted preliminary approval for the settlement of this lawsuit as a class and collective action and scheduled a hearing on final approval for [INSERT DATE]. This hearing will take place before the Honorable Maria Elena James in Courtroom B of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102. Class members can express their views on the settlement at or before this hearing but you are not required to do so, nor are you required to attend this hearing to receive payment or exercise other rights.

At this hearing, Class Counsel will present any timely written objections to the Court. Late written objections will not be valid.

Again, your attendance at this hearing is completely optional, and Class Members like you need not appear at this hearing or take any other action to receive payment.


## IX. ADDITIONAL INFORMATION

| 30. | Are there more details about the Settlement? |
|-----|----------------------------------------------|

This Notice does not fully describe this settlement. Members of the public, including but not limited to persons whose rights may be affected by the lawsuit, may inspect the files (including the full settlement agreement) through the Court Clerk at the following address: Office of the Clerk, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102. In addition, at this website [WEBSITE ADDRESS], you can obtain copies of the following documents: (a) the operative complaint in the lawsuit; (b) the operative answer to the complaint filed by the CBS Defendants in the lawsuit; (c) the complete settlement agreement; (d) the motion for preliminary approval; (e) the order granting preliminary approval and setting the <date> hearing on the settlement; and (f) Class Counsel's application for attorneys' fees and costs.

Any questions regarding this Notice and/or the Settlement should be directed to your Class Counsel at:

SETAREH LAW GROUP
SHAUN SETAREH
H. SCOTT LEVIANT
9454 Wilshire Boulevard, Suite 907, Beverly Hills, CA 90212
Telephone: (310) 888-7771
shaun@setarehlaw.com; scott@setarehlaw.com

or the Settlement Administrator at:

KCC, LLC
2335 Alaska Avenue
El Segundo, CA 90245
[INSERT TELEPHONE NUMBER AND EMAIL ADDRESS].

| 31. | Am I protected against retaliation or discrimination if I exercise my rights? |
|-----|------------------------------------------------------------------------------|

California law prohibits the CBS Defendants from retaliating in any way against you because you have exercised your right under California law to participate in this settlement.

| 32. | **What if the Settlement is not approved?** |
|---|---|

If the settlement agreement is not approved by the Court, or if any of its conditions are not satisfied, the conditional settlement will be voided, no money will be paid, and the case will revert to litigation. However, if that happens there is no assurance: (a) That any decision at trial would be in favor of class members; (b) That a favorable trial decision, if any, would be as favorable to the class members as this settlement; or (c) That any favorable trial decision would be upheld if an appeal was filed.

| 33. | **Approval of the Settlement is not an opinion on the merits of the case.** |
|---|---|

On _____, 2017, the Court preliminarily approved the settlement agreement, certified the class for settlement purposes only, and found that the agreement was fair and reasonable. However, the Court has expressed no opinion regarding the merits of Plaintiff's claims or the liability of the CBS Defendants.

**PLEASE DO NOT CALL OR WRITE THE COURT OR THE CBS DEFENDANTS WITH QUESTIONS REGARDING THIS ACTION.**  If you do have questions or want more information, please contact Class Counsel or the Settlement Administrator (at the address, e-mail address, or number listed above).

[FOOTER FOR EACH PAGE, ADD:  "Any Questions?  Call [Settlement Admin #]]

# EXHIBIT

# B

**DATA SUMMARY SHEET**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

*Earl Fronda v. Staffmark Holdings, Inc. et al.*
United States District Court, Case No. 3:15-CV-02315-MEJ

**Name**
**Address 1**
**Address 2**

You have been identified as an individual who is entitled to receive payment under the terms of the settlement in the *Earl Fronda v. Staffmark Holdings, Inc., et al,* Case No. 3:15-CV-02315-MEJ, pending in the United States District Court, Northern District of California. The purpose of this form is to confirm the information Staffmark Holdings, Inc. and CBS Personnel Services, LLC ("CBS Defendants") have on file for you. The below information will govern the calculation of the payment to you under the terms of the settlement in this action, as described in the **Notice of Proposed Class Action Settlement**, sent to you with this form. IF YOU DO NOT DISPUTE THE INFORMATION BELOW, NO RESPONSE OR FURTHER ACTION IS REQUIRED BY YOU. Your payment under the settlement will be calculated using the below information.

The records of the CBS Defendants reflect the following:

1.      From April 17, 2011 to [DATE], you worked a total of __ workweeks for the CBS Defendants at the CEVA Carson location, which is located at 18120 Bishop Avenue, Carson, California 90746.
2.      From April 17, 2011 to [DATE], you worked a total of __ workweeks for the CBS Defendants at one or more of
the CEVA Torrance locations, which are located at 19600 Western Avenue, Torrance, California 90501, 700 Van Ness Avenue, Torrance, California 90501, and 19270 Western Avenue, Torrance, California 90501.
3.      From April 17, 2011 to [DATE], you worked a total of __ workweeks for the CBS Defendants at any CEVA location in California other than the CEVA Carson location and/or the CEVA Torrance location(s).
4.      Your **estimated** gross Class Member Payment is:  $_____

**Procedure for Disputing Information**

**IF YOU WISH TO DISPUTE THE INFORMATION SET OUT ABOVE,** you must send a letter to the Settlement Administrator stating the reasons why you dispute the amount of workweeks and provide any supporting documentation that you have. The information you provide should include the amount of total workweeks you claim you worked for the CBS Defendants at the CEVA Carson location, CEVA Torrance location, and/or any other CEVA location in California from April 17, 2011 to [DATE].

Any disputes and supporting documentation must be postmarked by [DATE] and should be sent to the Settlement Administrator at the following address:

The Settlement Administrator will review your dispute and all supporting documentation you provide.  After carefully considering the information you submit, and the information from the CBS Defendants' records, the Settlement Administrator will make a determination about your dispute, and make a recommendation to the Court.  The Court will rule on this recommendation at the Final Fairness and Approval Hearing.  The Court's decision will be final and binding.

**PLEASE NOTE: The estimated payment contained herein may increase or decrease without further notice to you.  Failure to provide supporting documentation will result in rejection.  If you disagree with the records of the CBS Defendants you must file your dispute with the Settlement Administrator.  You should not contact anyone at the CBS Defendants.**