UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EARL FRONDA,

    Plaintiff,

v.

STAFFMARK HOLDINGS, INC., et al.,

    Defendants.

Case No. 15-cv-02315-MEJ

**ORDER RE: MOTION FOR
PRELIMINARY APPROVAL OF
SETTLEMENT**

Re: Dkt. No. 86

## INTRODUCTION

Plaintiff Earl Fronda and Defendants CBS Personnel Services, LLC and Staffmark Holdings (together, the "CBS Defendants") have reached a tentative settlement in this wage and hour putative class action. Pending before the Court is Plaintiff's Motion for Preliminary Approval. Mot., Dkt. No. 86. Plaintiff asks the Court to (1) preliminarily approve the proposed settlement, (2) certify for settlement purposes a settlement class, (3) appoint Plaintiff as class representative, (4) appoint class counsel and settlement administrator, (5) direct the dissemination of the notice of settlement to the class, and (6) schedule a final approval hearing and hearing on class counsel's motion for attorneys' fees and incentive award. The CBS Defendants do not oppose theses requests. *See* Statement of Non-Opposition, Dkt. No. 87. The Court held a hearing on the matter on November 16, 2017.

Having considered the parties' arguments, the relevant legal authority, and the record in this case, the Court **GRANTS** Plaintiff's Motion for the following reasons.

## BACKGROUND

Plaintiff was jointly employed by Staffmark, CBS Personnel, and CEVA Logistics U.S., Inc. Third Am. Compl. ("TAC") ¶ 3, Dkt. No. 57; *see id.* ¶ 13. On April 17, 2015, Plaintiff

initiated this litigation in Alameda County Superior Court, naming as Defendants Staffmark, CEVA, and Amazon.com LLC. *See* Notice of Removal, Ex. A (Compl.), Dkt. No. 1; *see also id.*, Ex. B (First Am. Compl.). CEVA removed the action to this Court on May 22, 2015. *See* Notice of Removal. Amazon.com was dismissed on June 12, 2015. Dkt. No. 28. Plaintiff filed his Second Amended Complaint on July 13, 2015. Second Am. Compl., Dkt. No. 34. On October 9, 2015, CBS Personnel was added as a Defendant. Dkt. No. 52.

Plaintiff filed the operative TAC on December 27, 2015. *See* TAC. Plaintiff asserts eight claims based on California state law: (1) Failure to Provide Meal Periods, (2) Failure to Provide Rest Periods, (3) Failure to Pay Hourly Wages, (4) Failure to Provide Accurate Written Wage Statements, (5) Failure to Timely Pay All Final Wages, (6) Failure to Pay Wages without Discount, (7) Unfair Competition, and (8) Civil Penalties under the Private Attorneys General Act ("PAGA"). *Id.* ¶¶ 23-124. The Court has jurisdiction over the matter pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). *Id.* ¶ 2.

Plaintiff and the CBS Defendants participated in private mediation on January 4, 2017 and April 26, 2017. Leviant Decl. ¶ 8, Dkt. No. 86-1. This proposed Settlement is the result; however, it

> does not resolve the matter as to Defendant CEVA LOGISTICS, U.S., INC., though it does resolve claims by the settlement Class against any joint employers of the CBS Defendants, including CEVA Freight, LLC and CEVA Logistics U.S., Inc., to the extent that any of the claims settled as to the CBS Defendants would apply to any CEVA defendant.

Mot. at 3.[1]

## SETTLEMENT TERMS

The Court summarizes the key terms of the Settlement below.

---

[1] In advance of the hearing, the Court asked Plaintiff how he intended to proceed against CEVA Logistics in light of this exclusion. Dkt. No. 89 ¶ 6. During the hearing, Counsel for Plaintiff explained he may seek to substitute another plaintiff to pursue claims against CEVA, and represented that CEVA nonetheless was obtaining significant benefits under the proposed Settlement; Counsel for CEVA represented that CEVA does not object to the proposed Settlement. Nov. 16, 2017 Oral Argument at 10:06-10:12.

**A.      Settlement Class and Class Period**

The Settlement Class is defined as "any and all individuals employed by the CBS Defendants at CEVA Freight, LLC, CEVA Logistics U.S., Inc. and/or any other location of CEVA, CEVA's parents or any CEVA-related entity operating in California during the Class Period." Leviant Decl., Ex. 1 § 1.1(b)(4) (Settlement). The Class Period is defined as April 17, 2011 through the date the Court preliminarily approves the Settlement. *Id.* § 1.1(b)(12).

**B.      Distribution of Settlement Payments**

The Settling Defendants agree to pay a maximum Settlement Sum of $5,600,000. *Id.* §§ 1.1(b)(25), 3.6(a). This figure includes (1) payments to Class Members, (2) Class Counsel's attorneys' fees and costs, (3) administration costs, (4) any enhancement award to Plaintiff, and (5) payment to the California Labor and Workforce Development Agency ("LWDA"). *Id.* § 1.1(b)(25).

The Net Settlement Sum represents the Settlement Sum less attorneys' fees and costs, administration costs, an enhancement award, and the LWDA payment. *Id.* §§ 1.1(b)(27), 3.6(b)(1)(A)-(E). Participating Class Members shall be paid a proportionate share of the Net Settlement Sum. *Id.* § 3.6(b)(2)(A). The Settlement Administrator shall calculate the Individual Class Member Settlement Amount – the amount of the Net Settlement Sum allocated to each participating Class Member – in the following manner: the Net Settlement Sum shall be divided by the total number of weeks worked for the CBS Defendants by all participating Class Members at any CEVA location in California. *Id.* §§ 1.1(b)(29), 3.6(b)(2)(B). This number will be multiplied by the number of weeks worked by each Class Member. *Id.* The Settlement Administrator shall determine the number of weeks worked by each Class Member by (1) first multiplying the number of weeks worked at the Carson Location and the Torrance Location by two, then (2) adding this number to the number of weeks worked by the Class Member during the Class Period at all CEVA locations in California other than the Carson and Torrance Locations.[2]

---

[2] The Carson Location refers to the CEVA location on Bishop Avenue in Carson, California; the Torrance Location refers to the CEVA location on Western Avenue in Torrance, California. Settlement Agreement §§ 1.1(b)(15)-(16).

*Id.* § 3.6(b)(2)(B).

Class Members may dispute the Settlement Administrator's determination of the number of weeks he or she worked for the CBS Defendants by sending a letter to the Settlement Administrator within 30 days of the initial mailing of class notice. *Id.* § 3.4(c). The Class Member must state the number of weeks he or she believes are correct and include documentation in support thereof. *Id.* The Settlement Administrator shall review the relevant records and documentation and make a recommendation to the Court on all disputed claims. *Id.* The Settlement Administrator shall also send written notice of its decision on the disputed claim to the Class Member, Class Counsel, and the CBS Defendants' counsel no later than 10 days before the final fairness hearing. *Id.* The Court shall decide any disputed claims at that hearing, and the Court's decision will be final. *Id.*

No later than 45 days following the Effective Date of the Settlement, the Settlement Administrator will issue checks made payable to each participating Class Member for each Class Member's Individual Class Member Settlement Amount. *Id.* §§ 3.6(c)(2)(E), (c)(3). Class Members will receive two checks. *Id.* § 3.6(c)(2)(E)(i). The first check will be for two-thirds of the Individual Class Member Settlement Amount and will represent payment of penalties and interest. *Id.* § 3.6(c)(2)(E)(i)(I). The second check will be for the remaining one-third of the Individual Class Member Settlement Amount, representing payment for the alleged unpaid wages. *Id.* § 3.6(c)(2)(E)(i)(II).[3]

If checks remain uncashed after 90 days, the Settlement Administrator shall send a reminder postcard to those Class Members with unpaid checks, advising them to cash the check or to request a replacement. *Id.* § 3.6(c)(4). A similar postcard will be sent to Class Members who have not cashed their checks after 150 days. *Id.* Uncashed checks will be voided after 180 days. *Id.* Funds from uncashed checks will be redistributed as follows: 25% will be paid to the California State Equal Access Fund, 25% will be paid to the California State Treasury for deposit

---

[3] At the hearing, Plaintiff's Counsel explained that issuing two checks better enables the Settlement Administrator to process the payroll deductions and make the accounting clear to Class Members.

1  in the Trial Court Improvement and Modernization Fund, and 50% will be paid to Legal Aid at

2  Work as a cy pres recipient. *Id.*

3  **C.    Objections and Opt Outs**

4         Class Members may request exclusion from or object to the Settlement. *Id.* §§ 3.4(a)-(b).

5  To be excluded from the Settlement, Class Members must send a request for exclusion to the

6  Settlement Administrator within 30 days of the initial mailing of the Class Notice. *Id.* § 3.4(a)(1).

7  The request must include the Class Member's name, address, and statement electing to be

8  excluded from the Settlement. *Id.* § 1.1(b)(21).

9         In addition, the Settlement gives the CBS Defendants the right to rescind the Settlement in

10  the event that more than 10% of Class Members request exclusion from the Settlement. *Id.* § 6.3.

11        Class Members may also object to the Settlement by sending a written notice of objection

12  that states the basis therefor. *Id.* § 3.6(b)(2). Class Members must send any objections to the

13  Court and the parties within 30 days of the date of the initial mailing of the Class Notice. *Id.*

14  **D.    Attorneys' Fees and Costs**

15        The Settlement provides for all Class Counsel's attorneys' fees and costs to be paid from

16  the Settlement Sum. *Id.* § 3.6(e). Class Counsel will seek up to one-third of the Settlement Fund,

17  that is, $1,866,666.67. *Id.* The CBS Defendants agree not to object to this request. *Id.* However,

18  the Settlement also provides that "if the attorneys' fees and costs incurred by Class Counsel are

19  more than [$1,866,666.67], the difference shall come from the Settlement Sum." *Id.* At the

20  hearing, Plaintiff's Counsel, H. Scott Leviant, confirmed that Counsel would ask for no more than

21  one-third of the Settlement Sum in fees and costs. Nov. 16, 2017 Oral Argument at 9:56-57 ("The

22  intention of all the parties is that Plaintiff's Counsel would ask than no more than one-third of the

23  total settlement in fees and costs. There is no intention and there will be no request for more than

24  one-third."); *see* Proposed Order at 3 ("Class Counsel will not seek an amount greater than

25  $1,866,666.67 for Attorney's Fees and Costs." (citing Settlement § 3.6(e)), Dkt. No. 91; *id.*, Ex.

26  1(Am. Notice) at ECF p.17.

27  **E.    Enhancement Award**

28        Enhancement awards shall be deducted from the Settlement Sum. Settlement § 3.6(f).

Plaintiff shall seek an enhancement award of no more than $10,000.  *Id.*

**F.**     **LWDA Payment**

The Settlement provides for $100,000 as payment for the PAGA claims.  *Id.* § 3.6(g).
Pursuant to California Labor Code section 2699(i), $75,000 shall be paid to the LWDA.  *Id.*

**G.**     **Settlement Administrator and Administration Costs**

The Settlement Administrator shall (1) mail class notices to Class Members; (2) calculate
the amounts due to each Class Member; (3) notify the parties and make recommendations to the
Court regarding any disputes brought by Class Members; (4) make all payments required by the
Settlement; and (5) issue all tax-related documents associated with payments under the Settlement.
*Id.* § 1.1(b)(17).  The parties agree KCC, LLC shall be the Settlement Administrator.  *Id.*; Leviant
Decl. ¶ 33.

The Settlement allocates up to $25,000 in administration costs, to be paid from the
Settlement Sum; however, "the Parties agree to work together to reduce this amount."  Settlement
§ 3.6(d).  Administration costs mean all costs incurred by the Settlement Administrator in
administering the Settlement, including address verification measures; mailing of class notice;
calculation, preparation, and issuance of Individual Settlement Payments; administration of any
uncashed checks; and preparation and issuance of checks for other payments.  *Id.* § 1.1(b)(20).  In
the event administration costs exceed $25,000, the amount in excess shall also be paid from the
Settlement Sum, subject to Court approval.  *Id.* § 3.6(d).

**H.**     **Released Claims and Parties**

In exchange for benefits under the Settlement, Class Members release

> any and all claims, rights, demands, liabilities, and causes of action
> of every nature and description, known or unknown, in law or in
> equity, as alleged in the Complaint and any Amended Complaint in
> this Litigation or at the mediations conducted in this matter on
> January 4, 2017 and April 26, 2017, arising from or related to the
> following claims against any and all of the CBS Defendants: (1)
> Failure to Provide Meal Periods; (2) Failure to Provide Rest Breaks;
> (3) Failure to Pay Hourly Wages; (4) Failure to Provide Accurate
> Itemized Wage Statements; (5) Failure to Pay Waiting Time
> Penalties and Wages; (6) Failure to Pay Wages Without Discount;
> (7) Unfair Business Practices that relate to any of those claims; and
> (8) Civil Penalties under the Private Attorney[s] General[] Act
> ("PAGA").

1   *Id.* § 1.1(b)(32); *see id.*, Art. V. Class Members further release

2           any other claims, whether known or known, suspected or
3   unsuspected, that were or could have alleged or asserted based upon
    the legal and factual allegations in this matter and related to a Class
4   Member's employment as a temporary employee of CBS
    Defendants at a CEVA location during the Class Period, including
5   all claims that were or could have been brought under the California
    Labor Code, the applicable Industrial Wage Commission Wage
6   Orders, the Fair Labor Standards Act, Business and Professions
    Code section 17200 as it relates to the underlying Labor Code
7   claims . . . and the Private Attorneys General Act as it relates to the
    underlying Labor Code violations . . . . , including any damages,
8   restitution, interest waiting time penalties, penalties, punitive
    damages, attorneys' fees, costs, or any other form of relief
9   whatsoever, during the Class Period.

10  *Id.* § 1.1(b)(32). Class Member Released Claims "also include any claims against CEVA

11  Logistics U.S. Inc., CEVA Freight LLC and/or any other CEVA entity to the extent that any of the

12  released claims as to CBS Defendants would apply to" those CEVA entities. *Id.*

13        Released parties are defined as

14          CBS Defendants, their past and present divisions, affiliated entities,
15  related entities, parents, subsidiaries, predecessors, successors, joint
    ventures, assigns, and their respective shareholders, owners,
16  officers, directors, employees, agents, trustees, attorneys, managers,
    operators, insurers, representatives, administrators, fiduciaries,
17  beneficiaries, subrogees, executors, partners, privies,
    representatives, consultants, and attorneys.

18  *Id.* § 1.1(b)(31). In addition, "[t]o the extent Class Member Released Claims also include any

19  claims against CEVA Logistics U.S. Inc., CEVA Freight LLC and/or any other CEVA entity,"

20  those entities shall also be Released Parties. *Id.*

21        The back of each check issued to Class Members shall state

22          My signature hereon constitutes a full and complete release by me of
23  Staffmark Holdings, Inc. and CBS Personnel Services LLC and all
    "Released Parties" as described in the Stipulation and Agreement to
24  Settle Class Action and Limited Release for all claims alleged in or
    arising out of the Litigation known as *Fronda v. Staffmark Holdings,*
25  *Inc. et al.*, Case No. 3:15-cv-02315-MEJ, including, but not limited
    to, all "Class Member Released Claims" as described more fully in
26  the Stipulation and Notice to the Class.

27  *Id.* § 3.6(c)(E)(ii).

28

                                              7

## I.     Future Disputes

Disputes regarding the implementation or interpretation of the Settlement shall be submitted to the mediator.  *Id.* § 6.12.  Any disputes concerning the Settlement Administrator's ability and need to perform its duties shall be first referred to the mediator, then to the Court, if necessary.  *Id.*  The Court shall retain jurisdiction over the terms and conditions of the Settlement.

## LEGAL STANDARD

The Ninth Circuit maintains "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (internal quotation marks omitted).  Federal Rule of Civil Procedure 23(e) nonetheless requires courts to approve any class action settlement.  "[S]ettlement class actions present unique due process concerns for absent class members[.]"  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see Allen*, 787 F.3d at 1223 ("[T]he district court has a fiduciary duty to look after the interests of those absent class members.").  Where parties reach a settlement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

Preliminary approval of a class action settlement requires a two-step inquiry.  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 672727, at *12 (N.D. Cal. Feb. 16, 2017).  First, courts must determine if a class exists.  *Staton*, 327 F.3d at 952.  "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Second, courts consider "whether a proposed settlement is fundamentally fair, adequate, and reasonable."  *Hanlon*, 150 F.3d at 1026.  Where the parties settle prior to class certification, the Ninth Circuit requires "a more probing inquiry than may normally be required under Rule 23(e)."  *Id.*  At the preliminary approval stage, courts must "determine whether the settlement falls 'within the range of possible approval.'"  *Booth v. Strategic Realty Tr., Inc.*, 2015 WL 3957746, at *6 (N.D. Cal. June 28, 2015) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal.

2007)).

Finally, courts examine "the settlement taken as a whole, rather than the individual component parts . . . for overall fairness." *Hanlon*, 150 F.3d at 1026. Courts cannot "delete, modify or substitute certain provisions. [ ] The settlement must stand or fall in its entirety." *Id.* (internal quotation marks and citation omitted).

## CLASS CERTIFICATION

Class certification is a two-step process. *See Amchem Prods.*, 521 U.S. at 613. Plaintiff must first satisfy Rule 23(a)'s four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4). "[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied[.]" *Wal-Mart Stores*, 564 U.S. at 350-51 (internal quotation marks omitted).

If Plaintiff satisfies Rule 23(a)'s requirements, he must then demonstrate a class action may be maintained under Rule 23(b)(1), (2), or (3). *See Amchem Prods.*, 521 U.S. at 613. Plaintiff moves for certification under Rule 23(b)(3), which is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

**A.     Rule 23(a)**

    1.     <u>Numerosity</u>

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). Plaintiff estimates there are approximately 4,407 Class Members. Leviant Decl. ¶ 35.

Given the size of the class, joinder is impracticable. *See Betorina v. Randstad US, L.P.*, 2017 WL 1278758, at *3 (N.D. Cal. Apr. 6, 2017) ("Generally, 40 or more members will satisfy the numerosity requirement." (citing *Collins v. Cargill Mean Sols. Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011)); *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)); *Edwards v. Nat'l Milk Producers Fed'n*, 2014 WL 4643639, at *4 (N.D. Cal. Sept. 16, 2014) ("Although there is no absolute minimum number of plaintiffs necessary to demonstrate that the putative class is so numerous so as to render joinder impracticable, joinder has been deemed

1 | impracticable in cases involving as few as 25 class members[.]" (internal quotation marks and
2 | edits omitted)).

3 |     2. <u>Commonality</u>

4 |     Rule 23(a)(2) requires the existence of "questions of law or fact common to the class[.]"
5 | Fed. R. Civ. P. 23(a)(2). This Rule is "construed permissively. All questions of fact and law need
6 | not be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. "[F]or purposes of Rule 23(a)(2)
7 | even a single common question will do." *Wal-Mart Stores*, 564 U.S. at 359 (internal quotation
8 | marks and brackets omitted); *see Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (it is not
9 | necessary "that every question in the case, or even a preponderance of questions, is capable of
10 | class wide resolution. So long as there is even a single common question, a would-be class can
11 | satisfy the commonality requirement of Rule 23(a)(2)." (internal quotation marks omitted)).
12 | "Commonality requires the plaintiff to demonstrate that the class members have suffered the same
13 | injury" but "[t]his does not mean merely that they have all suffered a violation of the same
14 | provision of law." *Wal-Mart Stores*, 564 U.S. at 349-50 (internal quotation marks omitted).
15 | Rather, "[t]hat common contention . . . must be of such a nature that it is capable of classwide
16 | resolution—which means that determination of its truth or falsity will resolve an issue that is
17 | central to the validity of each one of the claims in one stroke." *Id.* "Whether a question will drive
18 | the resolution of the litigation necessarily depends on the nature of the underlying legal claims that
19 | the class members have raised." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014);
20 | *see Parsons*, 754 F.3d at 676 ("[C]ommonality cannot be determined without a precise
21 | understanding of the nature of the underlying claims.").

22 |     Plaintiff identifies the following interests that are common to Class Members:

23 |         whether facility security policies and procedures resulted in legally
24 |         deficient meal periods and rest breaks for Class Members; whether
        security policies and procedures resulted in uncompensated time
25 |         under the employer's control; whether, as a result of these issues, the
        CBS Defendants violated the itemized wage statement provisions of
26 |         Labor Code § 226 by not providing accurate information as to
        wages; and whether the CBS Defendant's policies and practices
27 |         violated California Business & Professions Code sections 17200 et
        seq.

28 | Mot. at 9. These questions of law and fact pertain to the CBS Defendants' employment practices

and policies. If these practices and policies are unlawful, each Class Member will have been injured by the CBS Defendants' conduct. Moreover, if the Court were to find the practices and policies unlawful, such a determination would resolve claims on a class-wide basis. Accordingly, the Court finds Rule 23(a)(2) is satisfied.

### 3. Typicality

Rule 23(a)(3) requires the representative partie's claims or defenses be "typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). This "serves to ensure that 'the interest of the named representative aligns with the interests of the class.'" *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "[R]epresentative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons*, 754 F.3d at 685 (internal quotation marks omitted). "'Measures of typicality include whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (quoting *Torres*, 835 F.3d at 1141) (internal quotation marks omitted).

Like other Class Members, Plaintiff worked for the CBS Defendants during the Class Period and in a warehouse position that is at issue in this litigation and included in the Class. *See* Fronda Decl. ¶ 2, Dkt. No. 86-3. As such, Plaintiff was subject to the same allegedly unlawful employment practices and policies as other Class Members. Plaintiff raises the same claims as other Class Members; he does not assert any individual claims or defenses. The Court therefore finds Plaintiff satisfies Rule 23(a)(3).

### 4. Adequacy of Representation

Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "In making this determination, courts must consider two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031

United States District Court
Northern District of California

(9th Cir. 2012) (internal quotation marks omitted). "This requirement is rooted in due-process concerns—'absent class members must be afforded adequate representation before entry of a judgment which binds them.'" *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quoting *Hanlon*, 150 F.3d at 1020).

Nothing in the record indicates Plaintiff has a conflict of interest or antagonism with Class Members. On the contrary, Plaintiff has actively worked to prosecute this action on behalf of the Class. He has engaged in ongoing communications with his Counsel, including providing Counsel with background information, assisting with responses to written discovery, participating in two days of mediation, and reviewing the Settlement Agreement. Fronda Decl. ¶¶ 5-10. Accordingly, the Court finds Plaintiff adequately represents the Class' interests. Rule 23(a)(4) is satisfied.

5.  <u>Summary</u>

The Court finds Plaintiff satisfies Rule 23(a)'s requirements.

**B.    Rule 23(b)(3)**

Plaintiff seek to certify the Settlement Class under Rule 23(b)(3), which requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court finds Plaintiff shows certification under Rule 23(b)(3) is appropriate.

"Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). The Rule 23(b)(3) "analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Hanlon*, 150 F.3d at 1022. Rather, "[t]he 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Prods.*, 521 U.S. at 623). "Common issues predominate over individual issues when the common issues represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015), *cert. dismissed sub nom. First*

12

1  *Am. Fin. Corp. v. Edwards*, 136 S. Ct. 1533 (2016) (internal quotation marks omitted).  "[T]he

2  factors relevant to assessing superiority include '(A) the class members' interests in individually

3  controlling the prosecution or defense of separate actions; (B) the extent and nature of any

4  litigation concerning the controversy already begun by or against class members; (C) the

5  desirability or undesirability of concentrating the litigation of the claims in the particular forum;

6  and (D) the likely difficulties in managing a class action.'"  *Wolin v. Jaguar Land Rover N. Am.*,

7  *LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting Fed. R. Civ. P. 23(b)(3)(A)-(D)).

8  Plaintiff argues the following issues predominate over individual differences between

9  Class Members: (1) whether CEVA facility security policies and procedures resulted in legally

10  deficient meal periods and rest breaks, as well as uncompensated time under the employer's

11  control; (2) whether the CBS Defendants violated the itemized wage statement provisions of

12  California Labor Code section 226 by not providing accurate information about wages; and (3)

13  whether the CBS Defendants' practices and policies violate California's Unfair Competition Law,

14  Cal. Bus. & Prof. Code § 17200.  Mot. at 10.  These common questions regarding meal and rest

15  periods and wage statements predominate over any individual differences, for instance, how the

16  CBS Defendants implemented the security screenings at each of its facilities.  In addition, given

17  the size of the Class, the Court can more efficiently resolve whether such practices and policies

18  violate the applicable laws through a class action than on a case-by-case basis.  *See* Fed. R. Civ. P.

19  23(b)(3) (requiring a finding "that a class action is superior to other available methods for fairly

20  and efficiently adjudicating the controversy").

21  **C.     Summary**

22  Based on the above analysis, the Court finds Plaintiff satisfies Rule 23(a) and (b)(3).

23  Accordingly, the Court certifies for settlement purposes the Class as defined in section 1.1(b)(12)

24  of the Settlement.

25  **PRELIMINARY FAIRNESS DETERMINATION**

26  The Court next considers the Settlement to determine whether it is "fair, reasonable, and

27  adequate."  Fed. R. Civ. P. 23(e)(2).  The Ninth Circuit has identified eight factors courts should

28  consider in evaluating whether a class action settlement is fair, adequate, and reasonable:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation omitted). But where, as here, "the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton*, 327 F.3d at 952. As noted, settlements negotiated prior to class certification "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth*, 654 F.3d at 946. This "more exacting review . . . ensure[s] that class representatives and their counsel do not secure a disproportionate benefit 'at the expense of the unnamed plaintiffs who class counsel had a duty to represent.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1027).

"Collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth*, 654 F.3d at 947. Subtle signs of collusion include

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and
> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.* (internal quotation marks and citations omitted).

"[T]he preliminary approval stage [i]s an 'initial evaluation' of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties." *In re High-Tech Emp. Antitrust Litig.*, 2013 WL 6328811, at *1 (N.D. Cal.

14

Oct. 30, 2013). A full analysis of the fairness factors is therefore unnecessary at this time; indeed, "some of these 'fairness' factors cannot be fully assessed until the Court conducts the final approval hearing[.]" *Lusby v. Gamestop Inc.*, 297 F.R.D. 400, 412 (N.D. Cal. 2013). At this stage, "[p]reliminary approval of a settlement and notice to the class is appropriate if '[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval.'" *Johnson v. Quantum Learning Network, Inc.*, 2016 WL 4529607, at *1 (N.D. Cal. Aug. 30, 2016) (quoting *In re Tableware*, 484 F. Supp. 2d at 1079) (first brackets added). Ultimately, the "decision to approve or reject a settlement is committed to the sound discretion of the trial judge[.]" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000) (internal quotation marks omitted).

## A. Settlement Process

The Court first considers "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). A settlement is entitled to "[a]n initial presumption of fairness . . . if the settlement is recommended by class counsel after arm's-length bargaining." *Id.* (internal quotation marks omitted).

The Court is satisfied the Settlement is the product of serious, informed, non-collusive negotiations. The parties negotiated the Settlement under the guidance of a mediator. Settlement § 2.1(j); Mot. at 4; Leviant Decl. ¶ 8. The use of a mediator, though not dispositive, supports a finding that the Settlement is not the product of collusion. *In re Bluetooth*, 654 F.3d at 948; *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012).

"For the parties 'to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value.'" *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *8 (N.D. Cal. Oct. 27, 2015) (quoting *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007)). The parties conducted discovery before engaging in settlement negotiations. Mot. at 14. That discovery included interrogatories and requests for production propounded on all Defendants. *Id.* Defendants – the

15

United States District Court
Northern District of California

1   CBS Defendants as well as CEVA – produced thousands of pages of discovery, including video

2   footage.  *Id.*  Plaintiff was therefore able to consider the information obtained during discovery, as

3   well as data about class composition, to fully evaluate the Settlement.  Mot. at 14; *see* Leviant

4   Decl. ¶ 9.  The Court accordingly finds this factor favors preliminary approval.

5   **B.        Presence of Obvious Deficiencies**

6           The Court next considers whether the Settlement contains obvious deficiencies.  The Court

7   finds none at this point.

8           The first *Bluetooth* red flag is whether Class Counsel receive a disproportionate

9   distribution of the settlement, or whether the class receives no monetary distribution but class

10  counsel are amply rewarded.  654 F.3d at 947.  The Ninth Circuit has "established twenty-five

11  percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-

12  recovery approach."  *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

13          The Settlement designates up to $1,866,666.67 for Class Counsel's attorneys' fees and

14  costs, which represents one-third of the Net Settlement Sum.  Settlement § 3.6(e).  While this

15  figure is higher than the benchmark amount, such a percentage is not uncommon in wage and hour

16  class action settlements such as this.  *See Ruch v. AM Retail Grp., Inc.*, 2016 WL 1161453, at *12

17  (N.D. Cal. Mar. 24, 2016) (finding as reasonable fee award totaling no more than 30% of the

18  settlement amount in wage and hour class action settlement); *Wren v. RGIS Inventory Specialists*,

19  2011 WL 1230826, at *28 (N.D. Cal. Apr. 1, 2011), *supplemented*, 2011 WL 1838562 (N.D. Cal.

20  May 13, 2011) (approving attorneys' fees of 42% of common fund in wage and hour class action);

21  *Hightower v. JPMorgan Chase Bank, N.A.*, 2015 WL 9664959, at *11 (C.D. Cal. Aug. 4, 2015)

22  ("[A]n award of 30% is consistent with awards granted in similar complex [wage and hour]

23  litigation.").  At this point, the Court finds the proposed attorneys' fees do not suggest the

24  presence of collusion.

25          The second *Bluetooth* factor asks whether the parties negotiated a 'clear sailing' agreement

26  for the payment of attorneys' fees separate and apart from class funds.  654 F.3d at 947.  A clear

27  sailing agreement "is one where the party paying the fee agrees not to contest the amount to be

28  awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling."

16

*Schuchardt v. Law Office of Rory W. Clark*, 2016 WL 232435, at *9 (N.D. Cal. Jan. 20, 2016) (internal quotation marks omitted). Concerns about collusion due to the existence of a clear sailing provision are reduced where the agreement lacks a reversionary or "kicker provision." *In re Bluetooth*, 654 F.3d at 947 ("indicia of possible implicit collusion" includes "a 'kicker': all [attorneys'] fees not awarded would revert to defendants rather than be added to the cy pres fund or otherwise benefit the class"). The CBS Defendants agree not to object to Class Counsel's request for attorneys' fees and costs up to $1,866,666.67. Settlement § 3.6(e).

Although the Settlement contains a clear sailing agreement, any concerns about collusion are ameliorated by the fact that any unawarded attorneys' fees and costs shall not revert to the CBS Defendants. *See id.* § 1.1(b)(27) (defining Net Settlement Sum as Settlement Sum less attorneys' fees and other costs); Nov. 16, 2017 Oral Argument at 9:58 ("[T]his is a nonreversionary settlement. . . . The Net Settlement Sum is everything the Court doesn't award in the other category.").

The final *Bluetooth* factor considers whether the Settlement provides for un-awarded settlement funds to revert to the CBS Defendants instead of Class Members. 654 F.3d at 947. The Settlement requires the Settlement Administrator to send two reminder postcards to Class Members who do not cash their settlement checks. Settlement § 3.6(c)(2)(E)(4). Funds from uncashed settlement checks will not revert to the CBS Defendants. Rather, the Settlement provides that funds from checks voided after 180 days shall be distributed to the California State Equal Access Fund, the California State Treasury for deposit in the Trial Court Improvement and Modernization Fund, and Legal Aid at Work. *Id.* Because unclaimed funds will not revert to the CBS Defendants, this factor does not suggest collusion.

## C.    Preferential Treatment

The third factor asks whether the Settlement affords preferential treatment to any Class Member.

The Settlement calculates each Class Member's recovery based on the number of weeks worked. However, the Settlement values weeks worked at the Carson Location and the Torrance Location differently from other California CEVA locations. *See* Settlement § 3.6(b)(2)(B).

Specifically, the Settlement multiplies the number of weeks worked at the Carson and Torrance Locations by two; the number of weeks worked at other California CEVA locations is not doubled. Plaintiff's Counsel explained this reflects the more extensive security screenings at the Carson and Torrance facilities. Nov. 16, 2017 Oral Argument at 9:58 ("Carson and Torrance have the most extensive security access point facilities."). As a result, "the Torrance and Carson facilities had the most extensive delays, whereas at other facilities, the security was much more streamlined." *Id.* at 9:59. By allocating extra workweeks to the Carson and Torrance Locations, the Settlement approximates the impact of the tighter security on uncompensated time. *Id.* at 10:00. The Settlement does not afford preferential treatment to Class Members who worked at these two locations; rather, it adjusts for the additional time Class Members spent going through security procedures at the Carson and Torrance Locations.

The Settlement also provides an enhancement award of $10,000 to Plaintiff. Settlement § 3.6(f). Service or incentive "awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). "Many courts in the Ninth Circuit have . . . held that a $5,000 incentive award is 'presumptively reasonable.'" *Gaudin v. Saxon Mortg. Servs., Inc.*, 2015 WL 7454183, at *10 (N.D. Cal. Nov. 23, 2015) (collecting cases). "[D]istrict courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe*, 715 F.3d at 1164.

"To determine the reasonableness of a requested incentive payment, courts consider the proportionality between the incentive payment and the range of class members' settlement awards." *Willner v. Manpower Inc.*, 2015 WL 3863625, at *9 (N.D. Cal. June 22, 2015). Where there is a "very large differential in the amount of damage awards between the named and unnamed class members[,]" such differential record must be supported by the record. *Staton*, 327 F.3d at 978.

The requested $10,000 enhancement falls within the range of service awards granted in this

district, albeit on the high side. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) ("Incentive awards typically range from $2,000 to $10,000." (collecting cases)). Indeed, "[c]ourts in this Circuit routinely grant requests for an award over $5,000 where the particular circumstances warrant such an award." *Nelson v. Avon Prods., Inc.*, 2017 WL 733145, at *7 (N.D. Cal. Feb. 24, 2017); *Alvarez v. Farmers Ins. Exch.*, 2017 WL 2214585, at *1 (N.D. Cal. Jan. 18, 2017) (awarding $10,000 service awards to named plaintiffs in wage and hour class action and finding such amount proportional to average recovery ranging from $956.18 to $4,253.45). The Court notes that $10,000 is significantly greater than Class Members' expected average recovery of $1,270. *See* Leviant Decl. ¶ 16. Nevertheless, it amounts to less than 1% of the Settlement Sum. *See Moore v. PetSmart, Inc.*, 2015 WL 5439000, at *14 (N.D. Cal. Aug. 4, 2015), *appeal dismissed* (July 27, 2016) (awarding service awards totaling $35,000 among five named plaintiffs, which amounted to less than 1% of total settlement fund).

Plaintiff declares he has "devoted a substantial amount of [] time, both before this lawsuit was filed and also during its litigation to ensure a fair result for the employee class." Fronda Decl. ¶ 4; *see id.* ¶ 11 ("I believe I have provided dozens of hours of my time during the course of this litigation to ensure a good outcome for the best interests of the class."). As explained above, this includes communicating and providing and reviewing information with counsel, assisting in providing written discovery, participating in mediation, and reviewing the Settlement. *Id.* ¶¶ 5-10. Plaintiff does not indicate whether he has suffered or risked harm to his employment prospects and does not otherwise provide justification for deviating from the presumptively reasonable $5,000 service award. *See* Fronda Decl.; *see, e.g.*, *Nelson*, 2017 WL 733145, at *6-7 (finding $10,000 service award appropriate where plaintiff sat for an all-day deposition, searched for relevant documentation, reviewed documents and settlement papers, attended the mediation and subsequent negotiations, and aided counsel with negotiation efforts, and where plaintiff "suffered some risk to her professional reputation by participating in this action as lead plaintiff"); *Moore*, 2015 WL 5439000, at *13 (awarding $10,000 service awards to named plaintiffs who actively participated in litigation and "incurred the additional risk of fearing retaliation by" the defendant). Courts have awarded less than $10,000 in service awards to named plaintiffs who have performed more work

on the litigation than Plaintiff's "dozens of hours." *See, e.g.*, *Willner*, 2015 WL 3863625, at *9 (reducing service award from $11,000 to $7,500 where class members' recovery ranged from $605.02 to $4,105.33 and where plaintiff spent 54 hours prosecuting action over four years, including sitting for a day-long deposition, responding to written discovery requests, assisting with initial disclosures, completing declarations, assisting with preparation for mediation, and evaluating proposed settlement); *Lopez v. Bank of Am., N.A.*, 2015 WL 5064085, at *8-9 (N.D. Cal. Aug. 27, 2015), *appeal dismissed* (Feb. 17, 2016), *appeal dismissed* (Feb. 22, 2016) (decreasing incentive award from requested $10,000 to $5,000 where (1) two named plaintiffs spent 80 and 100 hours working on litigation, but did not testify, sit for deposition, or participate in any of the four mediations; (2) $10,000 was 48 times greater than average payout to class members; and (3) incentive award would be paid from settlement fund); *Burden v. SelectQuote Ins. Servs.*, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013) (finding $5,000, rather than requested $10,000, an appropriate service award where named plaintiff "was deposed twice, attended three settlement conferences, and spent a total of 80 hours on this case" and where $10,000 was "nearly three times the largest amount paid to any class member").

Given Plaintiff's participation in this litigation and as the proposed award is not outside the range of service awards, the Court at this point finds the $10,000 enhancement award does not preclude preliminary approval.

**D.    Range of Possible Approval**

Finally, the Court must consider whether the proposed Settlement falls within the range of possible approval. In making this determination, courts preview the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*In re Bluetooth*, 654 F.3d at 946.

1.     <u>Strength of Plaintiff's Case; Risk, Expense, Complexity, and Likely Duration of Further Litigation; and Risk of Maintaining Class Action Status</u>

Plaintiff believes his case is viable through trial; however, Plaintiff acknowledges that litigating this case is not without risks. Leviant Decl. ¶ 15. Plaintiff recognizes that (1) he may not be able to establish liability for the allegedly unpaid straight time or overtime wages; (2) the employment practices and policies he challenges may not support class certification, a class-wide liability finding, or class-wide awards under California Labor Code sections 203 and 206(e); (3) the individual differences between Class Members could be "construed as pertaining to liability, and not solely to damages"; (4) class treatment could be deemed improper as to one or more claims except for settlement purposes; (5) there could be an appeal; and (6) some claims may be deemed de minimis under California law. *Id.* ¶¶ 14-15; Mot. at 14-15. Plaintiff's Counsel represents the "CBS Defendants intended to aggressively challenge Plaintiff's case at the certification stage." Leviant Decl. ¶ 15. In light of the potential risks of continued litigation, the Court finds these factors favor preliminary approval.

2.     <u>Amount Offered in Settlement</u>

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Harris*, 2011 WL 1627973, at *9 (internal quotation marks omitted).

Plaintiff estimates that each Class Member will receive an average of $1,270 before deducting taxes, fees, and other costs. Leviant Decl. ¶ 16. Plaintiff also estimates that exposure for off-the-clock work spent in security check stations during the Class Period is approximately $1.2 million. *Id.* ¶ 18. "With risk factor discounts for certification and liability proof, the value of that claim is estimated by Plaintiff's counsel to be approximately $400,000." *Id.* Exposure for meal period violations over the Class Period is an estimated $3.2 million. *Id.* "With risk factor discounts for certification and liability proof, the value of that claim is estimated by Plaintiff's counsel to be approximately $1,000,000." *Id.* Mr. Leviant further declares that "[a] similar valuation applies to the rest period claim." *Id.* Risk-adjusted valuations for all claims results in a

total value between $5 million and $7 million. *Id.* Thus, a $5.6 million settlement falls within Plaintiff's "carefully constructed estimate of the current fair value of the case." *Id.* ¶ 17. This factor therefore favors preliminary approval.

### 3. Extent of Discovery Completed and Stage of the Proceedings; Experience and Views of Counsel

As noted, Plaintiff propounded interrogatories and requests for production on all Defendants prior to settlement negotiations. Plaintiff received thousands of pages of formal discovery, data about class composition, and video footage. Leviant Decl. ¶ 14. This allowed Counsel to adequately evaluate the Settlement. *Id.* ("We have engaged in the necessary investigation in this case that made it possible for us to exercise informed judgment in those aspects of the settlement process in which we were involved. Settlement occurred only after discovery commenced.").

In addition, Plaintiff's Counsel are experienced class action attorneys. Mr. Leviant has litigated class actions since 1997, experience which includes prosecuting approximately 20 appeals. *Id.* ¶¶ 25(a), (c). Mr. Leviant has been the lead appellate author of several wage and hour cases before the Ninth Circuit and California Supreme Court and has written several articles and columns on issues related to class actions. *Id.* ¶¶ 25(d)-(f). Shaun Setareh has been lead or co-lead counsel in numerous wage and hour, consumer, and antitrust class action cases. Setareh Decl. ¶ 6, Dkt. No. 86-2. Many of Mr. Setareh's cases concerned alleged failures to provide meals and/or rest periods, failures to pay wages, failure to provide accurate wage statements, and failures to provide timely final wage payments. *Id.* ¶ 7.

Mr. Leviant declares "[t]his Settlement provides a benefit to the Class Members that is very reasonable in light of the[] particular risks" described above. Leviant Decl. ¶ 15; *see id.* ¶ 16 ("In light of the uncertainties of protracted litigation and the state of the law regarding the legal positions of the Parties, the settlement amount reflects the best feasible recovery for the Settlement Class Members.").

Accordingly, the Court finds these factors favor preliminary approval.

1        4.          <u>Presence of a Governmental Participant; Reaction of Class Members</u>

2           No government entity participated in negotiating the Settlement.  In addition, Class

3    Members have not been notified of the Settlement and therefore have not had an opportunity to

4    react to it.  These factors are therefore neutral.

5        5.          <u>Summary</u>

6           On balance, the Court finds the Settlement falls within the range of possible approval.

7    **E.**       **Preliminary Fairness Summary**

8           Based on the foregoing, the Court preliminarily finds the proposed Settlement is fair,

9    adequate, and reasonable and in the best interests of Class Members.

10                           **CLASS COUNSEL**

11          "[A] court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1).  In

12   making the appointment, the Court must consider

13              (i) the work counsel has done in identifying or investigating
                potential claims in the action;

14              (ii) counsel's experience in handling class actions, other complex
                litigation, and the types of claims asserted in the action;

15              (iii) counsel's knowledge of the applicable law; and
                (iv) the resources that counsel will commit to representing the

16              class[.]

17   Fed. R. Civ. P. 23(g)(1)(A).

18          As discussed above, Plaintiff's Counsel has litigated numerous class action cases,

19   including several wage and hour class actions.  *See* Leviant Decl. ¶¶ 22-23, 25; Setareh Decl. ¶¶ 6-

20   7.  Plaintiff's Counsel litigated many of those cases through class certification, final approval, and

21   appeals.  *See id.* (both).  In addition, Counsel's firm, Seterah Law Group LLP, has been engaged

22   in the practice of employment and labor law for approximately a decade.  Leviant Decl. ¶ 21.  The

23   firm has settled approximately 100 cases and has been appointed lead or co-lead counsel by state

24   and federal courts.  *Id.*; *see* Setareh Decl. ¶¶ 4, 8.  The Court finds Mr. Leviant and Mr. Setareh

25   have the requisite experience, knowledge, and resources to represent Class Members.  Nothing in

26   the record indicates counsel have not and will not continue to vigorously litigate this action.  The

27   Court therefore appoints Mr. Leviant and Mr. Setareh of The Seterah Law Group as Class Counsel

28   for settlement purposes.

**A.     Method of Providing Notice**

Rule 23(e) provides that "the court may direct appropriate notice to the class" certified under Rule 23(b)(2). Fed. R. Civ. P. 23(e)(2)(A). Notice is mandatory for any class certified under Rule 23(b)(3): "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(e)(2)(B). "[T]he express language and intent of Rule 23(c)(2) leave no doubt that individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974).

No later than 30 days after the Court preliminarily approves the Settlement, the CBS Defendants shall provide the Settlement Administrator with a Class List that identifies (1) the last known home address and social security of each Class Member, (2) the number of weeks each Class Member worked during the Class Period at the Carson Location and the Torrance Location, and (3) the number of weeks each Class Member worked at any CEVA location in California during the Class Period other than the Carson Location and/or the Torrance Location. Settlement § 3.3(a). The CBS Defendants shall file a declaration attesting they have provided an accurate Class List to the Settlement Administrator within five days of doing so. *Id.* § 3.3(b).

The Settlement Administrator shall mail the Notice of Class Settlement and Summary Sheet (together, "Notice") to Class Members within 60 days after the Court preliminarily approves the Settlement. *Id.* § 3.3(c). In the event any notices are returned as undeliverable, the Settlement Administrator shall perform a National Change of Address ("NCOA") search for the relevant Class Member. *Id.* § 3.3(d). The Settlement Administrator shall re-mail the Notice via U.S. Mail to the Class Member to any additional address discovered through the NCOA search. *Id.*

No later than 20 days after mailing the Notice, the Settlement Administrator shall provide Class Counsel and the CBS Defendants' counsel with a declaration attesting to the completion of the notice process. *Id.* § 3.3(f). Class Counsel shall file this declaration with the Court with 7 days of its receipt. *Id.*

The Court finds this method of mailed notice to be the best notice practicable in this case,

as it provides actual notice to all Class Members.  As such, the Court approves the method of notice as set forth in the Settlement.

**B.     Contents of Notice**

Rule 23(c)(2)(B) requires that

> the notice must clearly and concisely state in plain, easily understood language:
> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Notice satisfies these requirements.  The 12-page Notice of Class Action Settlement explains, in question and answer format, who is a Class Member, the nature of the litigation and the parties thereto, the benefits under the Settlement, how to obtain such benefits, how to object to or be excluded from the Settlement, and how to seek more information.  *See* Am. Notice.  The additional two-page Summary Sheet informs the recipient that he or she has been identified as a Class Member; lists the number of weeks the Class Member worked at the Carson Location, the Torrance Location, and any other CEVA location in California; and provides an estimate gross Class Member Payment.  *See id.*, Ex. B (Summary Sheet).  The Summary Sheet also sets forth instructions on how to dispute the calculation of workweeks and provides a disclaimer that the estimated payment may change without further notice.  *Id.*

**C.     Costs of Notice and Settlement Administration**

The Settlement provides that the Settlement Administrator will be paid from the Settlement Sum and allocates $25,000 in Administrative Costs, though the parties will attempt to reduce this amount.  Settlement § 3.6(d).  The $25,000 takes into account the costs of administering the Settlement, including address verification measures; mailing of class notice; calculation, preparation, and issuance of Individual Settlement Payments; administration of any uncashed checks; and preparation and issuance of checks for other payments.  *Id.* § 1.1(b)(2).  Unawarded

Administrative Costs shall be distributed to the Net Settlement Sum. *See id.* § 1.1(b)(27). If the Court approves Administrative Costs in excess of $25,000, any such excess costs shall be paid from the Settlement Sum. At this point, the Court finds the costs of notice are reasonable.

## CONCLUSION

Based on the foregoing the Court **GRANTS** the Motion for Preliminarily Approval and **ORDERS** the following:

1.     The proposed Settlement Class is conditionally certified pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) for settlement purposes. The Settlement Class is defined as "any and all individuals employed by the CBS Defendants at CEVA Freight, LLC, CEVA Logistics U.S., Inc. and/or any other location of CEVA, CEVA's parents or any CEVA-related entity operating in California during the Class Period." The Class Period is defined as April 17, 2011 through the date of this Order.

2.     The Settlement is preliminarily approved as fair, adequate, and reasonable pursuant to Federal Rule of Civil Procedure 23(e).

3.     The Settlement does not resolve claims against CEVA Logistics, U.S., Inc., though it does resolve claims by the Settlement Class against any joint employers of the CBS Defendants, including CEVA Freight, LLC and CEVA Logistics U.S., Inc., to the extent that any of the claims settled as to the CBS Defendants would apply to any CEVA defendant.

4.     For purposes of the Settlement, the Court appoints and designates Plaintiff Earl Fronda as class representative.

5.     For purposes of the Settlement, the Court appoints Shaun Setareh and H. Scott Leviant of the Setareh Law Group as Class Counsel for the Settlement Class.

6.     For purposes of the Settlement, the Court approves the proposed Class Notice plan as set forth in the Settlement.

7.     For purposes of the Settlement, the Court appoints KCC, LLC as the Settlement Administrator to perform the duties described in the Settlement.

8.     The CBS Defendants shall provide the Settlement Administrator with the Class List as defined by Settlement within 30 days of this Order, that is, by **December 27, 2017**. The CBS

1   Defendants shall file with the Court a declaration attesting to the forwarding of an accurate Class

2   List to the Settlement Administrator no later than **January 2, 2018**.

3          9.      The Settlement Administrator shall mail to each Class Member the approved Class

4   Notice and Summary Sheet within 60 days of this Order, that is, by **January 26, 2018**.

5         10.     The Settlement Administrator shall provide Class Counsel and Defense Counsel

6   with a declaration attesting to the completion of the notice process no later than 20 days after the

7   date of mailing the Notice and Summary Sheet, that is, by **February 15, 2018**.  Class Counsel

8   shall file this declaration with the Court within 7 days of its receipt, that is, by **February 22, 2018**.

9         11.     Class Members who wish to object shall submit their objections in the manner set

10  forth in the Settlement within 30 days after the initial mailing of the Class Notice, or by **February**

11  **26, 2018**.

12        12.     Class Members shall be bound to the Settlement unless they submit a timely and

13  valid written request to be excluded in the manner proscribed by the Settlement within 30 days

14  after the initial mailing of the Class Notice, that is, by **February 26, 2018**.

15        13.     No later than **March 22, 2018**, Plaintiff shall file a motion for final approval and

16  Class Counsel shall file a motion for attorneys' fees, costs, and service award.

17        14.     Class Members who wish to object to the motion for attorneys' fees, costs, and

18  service award may submit their objections no later than **April 26, 2018**.

19        15.     The Court shall hold a final fairness hearing on **May 31, 2018 at 10:00 a.m.** in

20  Courtroom B, 450 Golden Gate Avenue, San Francisco, California.  The Court will also hear the

21  motion for attorneys' fees, costs, and service award at that time.

22        **IT IS SO ORDERED.**

23

24  Dated: November 27, 2017

25  _____

26  MARIA-ELENA JAMES
    United States Magistrate Judge

27

28